**JOHNSON & PHAM, LLP**
Christopher Q. Pham, SBN: 206697
        E-mail: cpham@johnsonpham.com
Nicole Drey Huerter, SBN: 250235
        E-mail: ndrey@johnsonpham.com
6355 Topanga Canyon Boulevard, Suite 326
Woodland Hills, California 91367
Telephone:   (818) 888-7540
Facsimile:    (818) 888-7544

**ALLEN DYER DOPPELT + GILCHRIST PA**
Robert H. Thornburg (*pro hac vice application forthcoming*)
        E-mail: RThornburg@AllenDyer.com
Cameron C. Murphy (*pro hac vice application forthcoming*)
        E-mail: CMurphy@AllenDyer.com
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone:   (305) 374-8303
Facsimile:    (305) 374-8306

Attorneys for Plaintiff
AMERICAN RIVER NUTRITION LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN RIVER NUTRITION, LLC, a Delaware limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>BEIJING GINGKO GROUP BIOLOGICAL TECHNOLOGY CO., LTD, a Chinese Limited Company; JIANGSU XIXIN VITAMIN CO., LTD., a Chinese Limited Company; JINKE GROUP USA INC. d/b/a BEIJING GINGKO GROUP NORTH AMERICA, | Case No.: 8:18-cv-02201<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**(1) INFRINGEMENT OF THE PATENT-IN-SUIT (U.S. PATENT NO. 6,350,453 B1) [35 U.S.C. § 271];**<br>**(2) BREACH OF CONTRACT (MARCH 2007 NDA) [MASSACHUSETTS COMMON LAW]; AND**<br>**(3) TRADE SECRET MISAPPROPRIATION UNDER** |

a California Corporation; and DOES 1-10, Inclusive,

            Defendants.

**MASSACHUSETTS LAW [MASS. GEN LAWS ANN. CH. 93]**

**DEMAND FOR JURY TRIAL**

Plaintiff American River Nutrition, LLC ("ARN"), hereby complains of Defendants Beijing Gingko Group Biological Technology Co., Ltd ("BGG China"), its related wholly owned subsidiary Jinke Group USA Inc., d/b/a Beijing Gingko Group North American ("BGG America") (both BGG China and BGG America are collectively herein referred to as "BGG") as well as dietary supplement maker Jiangsu Xixin Vitamin Co., Ltd. ("JXVC") (wherein BGG China, BGG America, and JXVC are collectively referred to as "Defendants") and DOES 1-10, and alleges as follows:

## PARTIES

1.     ARN was formed on May 22, 2018, as a Delaware limited liability company located at 980 South Street, Suffield, CT 06078. ARN is registered to do business in the State of Massachusetts where it maintains its research and manufacturing facilities located at 333 Venture Way, Hadley, MA 01035. ARN is the successor-in-interest to American River Nutrition, Inc ("ARI"). As addressed at www.AmericanRiverNutrition.com (the "ARN Website"), ARN specializes in the preparation, offer for sale and sale of tocotrienol nutritional products derived from "annatto" sourced from the *Bixa orellana* shrub, including its **DELTA GOLD®** line of Vitamin E supplements (hereinafter the "Patented Product").

2.     ARN owns, by a July 1, 2018 assignment from ARI, United States Patent No. 6,350,453 B1 issued by the United States Patent & Trademark Office ("USPTO") on February 26, 2002, entitled "Tocotrienols and Geranylgeraniol from *Bixa Orellana* Byproducts." *See* **Exhibit A** (the "Patent-in-Suit"). ARN recorded the assignment with the USPTO on September 14, 2018.

3. BGG China is a Chinese limited company located at Room 1706, Tower A, Building 1, Tianzuo International Center No. 12 Zhongguancun South Ave., Haidian District, Beijing, China. According to its website located at www.BGGWorld.com (the "BGG Website"), BGG China sources and then exports (for sale outside of China) dietary supplements, including those based on "organic fruit extracts, marine botanicals, natural vitamins, [and] herbal extracts[.]" *See* http://bggworld.com/about-bgg/company-profile/ (last viewed Dec 12, 2018). Of its nine "[k]ey products" BGG China admits it currently sells/exports "**TheraPrimE** (tocotrienols)" sourced from annatto. *Id.*

4. BGG also admits its "**TheraPrimE**<sup>TM</sup>" dietary supplement is a "form of natural Vitamin E" extracted from annatto ("Implicated Product"):

> BGG provides tocotrienols . . . from annatto. While the different suppliers of tocotrienols fight amongst themselves saying 'our tocotrienols from palm are the best' . . . BGG takes the high road and leaves this decision up to our customers. We are happy to recommend a specific tocotrienol for a specific application, or we can also provide all three sources for the "Ultimate Tocotrienol" product—a mixture of all the commercially produced sources.

> And it's not just this comprehensive offering allowing our customers to choose their source that separates BGG's tocotrienol offerings from other companies; we also are capable of providing industry-leading concentrations of tocotrienols. We offer tocotrienol oleoresin up to 90% pure while our competitors only provide their tocotrienols in the 50% – 70% pure range.

*See* http://bggworld.com/theraprime-alpha-tocopherols/ (last viewed Dec 12, 2018).

5. JXVC is a Chinese limited company located at No. 38, Cixi Road, Shuyang Economic Development Zone, Jiangsu Province, China 22360. JXVC "was founded in November, 2007 and is a professional manufacturer of natural vitamin E series products" including "mixed tocopherols." *See* https://www.figlobal.com/hieurope/exhibitors/jiangsu-xixin-vitamin-co-ltd (last

viewed Dec 9, 2018). Based on information obtained by ARN, JXVC sources, extracts and makes the Implicated Product for BGG China. Upon further information and belief, JXVC is owned and/or closely affiliated with BGG China.

6. JXVC utilizes "Annatto Extract" to create "[o]il derived from the seed of *Bixa Orellana*" to obtain 85 to 100 % annatto tocotrienol (with the remainder between 0 to 15% MCT Oil) which JXVC refers to as "Annatto Tocotrienols 70." *See* **Exhibit B**, March 2018 Standardized Information of Dietary Ingredients (SIDI) Report (Ver. 3). *Bixa orellana* (also known as "achiote") is the shrub which is a now known source of annatto – obtained from the waxy arils (seed outgrowth) that cover the *bixa orellana* seeds. *See* https://en.wikipedia.org/wiki/Bixa_orellana (last viewed Dec 12, 2018).

7. BGG America is a California corporation located at 18301 Von Karman Avenue, Suite 910, Irvine, CA 92612. Upon information and belief, BGG America is the wholly owned subsidiary of BGG China and is tasked with the importation, marketing, advertisement, sale, and distribution of dietary supplements sourced from BGG China, including the Implicated Product manufactured by JXVC in China.

8. BGG America is the owner of U.S. Trademark Registration 5,098,943 for the mark **TheraPrimE**, issued by the USPTO on December 13, 2016 in International Class 05 for "Natural Vitamin E" (the "**TheraPrimE** Registration"). According to the **TheraPrimE** Registration, BGG America first imported and sold the Implicated Product within the United States in January 2015.

9. According to BGG America's 2015 dated marketing information, their "industry-leading family of Vitamin E products called **TheraPrimE**[TM]" are "produced derived from . . . annatto" which allows for "industry leading concentrations of tocotrienols . . . [including] tocotrienol oleoresin up to 90% pure[.]" *See* **Exhibit C**, Tocotrienols: Vitamin E for the New Millennium.

10.     Prior to beginning their early 2015 sale of **TheraPrimeE**-branded annatto tocotrienol imported from BGG China, BGG America sourced natural Vitamin E supplements from ARI.   More specifically, BGG America had previously executed a Non-Disclosure Agreement with ARI (ARN's predecessor) on March 10, 2007, for purposes of determining how ARI sourced and manufactured annatto tocotrienol (including receiving samples for chemical evaluation).  *See* **Exhibit D** (hereinafter the "March 2007 NDA").

11.     Upon completing those evaluations under the March 2007 NDA, BGG sourced ARI's Patented Product (sourced and manufactured annatto tocotrienol) in April 2007.  *See* **Exhibit E**, April 9, 2007 Purchase Order No. JKGA6137.  BGG America stopped distributing the Patented Product, sourced from ARI, in 2008. *See* **Exhibit F**, March 7, 2018, Purchase Order JKGA8241.

12.     Upon information and belief, the March 7, 2018, Purchase Order (**Exhibit F**) constituted a "sample" under the March 2007 NDA that BGG America shipped to BGG China for testing.  These test results were then "disclosed" to JXVC, formed in November 2007, to develop the expertise to make annatto tocotrienol sourced from *Bixa orellana* byproducts.  Upon further information and belief, ARN believes that JXVC was formed specifically to develop a competing line of annatto tocotrienol – based upon the disclosure of samples obtained from ARI via **Exhibit E** and **Exhibit F**.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants herein named as DOES 1-10, inclusive, are unknown to Plaintiff. Plaintiff therefore sues Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will amend this pleading accordingly.

14.     Plaintiff further alleges that the named defendants and DOES 1-10, inclusive, sued herein by fictitious names, are jointly, severally, and concurrently liable and responsible upon the causes of action hereinafter set forth.

15.     Plaintiff is informed and believes and thereon alleges that at all times mentioned herein the named defendants and DOES 1-10, inclusive, and each of them, were the agents, servants, and employees of every other Defendant, and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service, or employment.

## JURISDICTION AND VENUE

16.     This Complaint states a cause of action for patent infringement arising under the laws of the United States, 35 U.S.C. § 100, et seq. - and more particularly, 35 U.S.C. §§ 271 and 281.  The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1131 and 1138(a).

17.     Upon information and belief, Defendants conduct business throughout the United States, including within this judicial district, and have committed the acts complaint of in this judicial district and elsewhere.

18.     Upon information and belief, Defendants conduct business at least in California, including in this judicial district, and have committed the acts complaint of in this judicial district and elsewhere.

19.     Venue is proper in this judicial district under 28 U.S.C. § 1400(b).

## ALLEGATIONS FOR ALL CLAIMS

### The Patent-in-Suit

20.     Tocotrienols are antioxidants believed to be useful in treatment of cardiovascular disease as well as cancer.  Certain types of tocotrienols (specifically *delta*-tocotrienols and *gamma*-tocotrienols) have been identified as effective suppressants of cholesterol activity.  Likewise, they have been found to help reduce lipoprotein plasma levels.

21.     Traditionally, tocopherols and tocotrienols were sourced from vegetable oils, such as rice bran, soybean, corn, and palm oils.  More recently, however, tocotrienols have been discovered in the seeds of the *Bixa orellana* shrub, which is native to tropical parts of America (generally grown between 15 to 20

degrees from the equator). Each source of tocotrienols generally contains more than a single tocol homolog.

22. Previously, it has been difficult to recover large yields of *delta*-tocotrienols and *gamma*-tocotrienols as tocotrienols are largely difficult to separate. Put another way, the isolation of specific tocotrienols from natural sources has proved challenging. As such, there has been a need in the art of preparing tocotrienols to allow for higher yields of specific homologs, specifically *delta*-tocotrienols and *gamma*-tocotrienols, for dietary and therapeutic use. Moreover, this has been especially true with regards to recovery based upon the seeds of the *Bixa Orellana* shrub.

23. Patent Application Serial No. 09/577,086 was filed on May 24, 2000, before the USPTO, listing Dr. Barrie Tan and John Foley as co-inventors (the "Application-in-Suit"). The Application-in-Suit was assigned to ARI.

24. The underlying technology teaches a byproduct solution of *Bixa Orellana* seed components, which is obtained as an oily material after removing the bulk annatto – whereby removal is achieved from aqueous extract or solvent extract of annatto seeds. Tocotrienol components are recovered from the extracts. As such, one of the inventions taught in the Application-in-Suit was a method of forming a tocotrienol composition, which may include volatizing solvent from a byproduct solution of *Bixa orellana* seed components to form thereby a tocotrienol composition.

25. On February 26, 2002, the USPTO issued the Patent-in-Suit based upon the Application-in-Suit.

26. Claim 1 of the Patent-in-Suit reads as follows:

A method of forming a tocotrienol composition, comprising the step of volatizing a solvent from a byproduct solution of *Bixa orellana* seed components to form thereby said tocotrienol composition.

27. Claim 6 of the Patent-in-Suit reads as follows:

The method of claim 1, therein the byproduct solution of *Bixa orellana* seed components includes a geranylgeraniol component.

28. Claim 7 of the Patent-in-Suit reads as follows:

The method of claim 1, further including the step of distilling the geranylgeraniol component to seperate thereby at least a portion of said geranylgeraniol component from said tocotrienol composition to form a geranylgeraniol distillate.

29. Claim 10 of the Patent-in-Suit reads as follows:

The method of claim 7, further including the step of distilling a tocotrienol component of said tocotrienol composition to form a tocotrienol distillate and a bottoms stream.

30. The Patent-in-Suit remains valid, enforceable and subsisting.

## March 2007 NDA

31. Approximately three months after the filing of the Application-in-Suit, ARI began offering the **DELTAGOLD®** line of Vitamin E supplements in late July 2000. ARI's brand quickly became a popular and industry leading source of annatto tocotrienols.

32. Based upon the teachings of the Patent-in-Suit, ARI was able to offer for sale annatto tocotrienol that was superior to other traditional forms of tocotrienol sourced from vegetable oil. Accordingly, BGG America approached ARI regarding an interest in becoming a distributor of ARI's now patented methods of making annatto tocotrienol – specifically ARI's ability to volatize a solvent from a byproduct solution of *Bixa Orellana* seed components.

33. Moreover, ARI was about to create an annatto tocotrienol with specific homologs, specifically amounts of *delta*-tocotrienols and *gamma*-tocotrienols, that provides improved therapeutic and dietary benefits.

34.    BGG America, under the knowledge that ARI's line of annatto tocotrienol was not only highly proprietary but also industry leading, approached ARI and discussed its desire to order annatto tocotrienol from ARI for testing and evaluation for potential sale.

35.    ARI required that BGG America execute a non-disclosure agreement (NDA) – which BGG America executed in March 2007.  *See* **Exhibit D**, March 2007 NDA.   BGG America agreed to be bound by ARI's confidentiality obligations to obtain samples of ARI's unique annatto tocotrienol and gain access to confidential information regarding the manner ARI makes its dietary supplement.

36.    Under the March 2007 NDA, ARI defined "Confidential Information" as any "proprietary and confidential information about business or activities" including "trade secrets, samples . . . and data" surrounding ARI's Vitamin E dietary supplement.   This certainly included the amounts, ratios, and yields of *delta*-tocotrienols and *gamma*-tocotrienols.

37.    BGG America agreed that "it will not disclose to any third Party or use any Confidential Information disclosed to it by [ARI] except when expressly permitted in writing by [ARI]."

38.    ARI's NDA further protected information that was gleaned from any analysis of samples provided regarding its annatto tocotrienol:

> "All analysis and evaluation is considered 'Confidential Information.'  If an analysis of a sample . . . is performed under this agreement, [BGG America] will make available to [ARI] the results of the analysis or evaluation[.]  The results of the analysis and evaluation shall be considered Confidential Information belonging to the Party that provides the samples for analysis[.]"

39.     ARI also required certain safeguards to protect against improper use or dissemination of information relating to its unique annatto tocotrienol. First, this included the specific obligation for BGG to: "promptly advise [ARI] in writing if it learns of any disclosure of proprietary information[.]" Next, ARI required BGG America to acknowledge how "the use or disclosure of proprietary information in a manner inconsistent with this Agreement will cause [ARI] irreparable damage, and that [ARI] shall have the right to equitable and injunctive relief to prevent the authorized use or disclosure, and to such damages that are occasioned by such unauthorized use or disclosure."

40.     The March 2007 NDA was executed and became effective and binding on March 10, 2007, between ARI and BGG America.

41.     BGG America never sought to terminate the March 2007 NDA and/or any of its obligations regarding use or treatment of "Confidential Information."

42.     BGG America's confidentiality obligations under the March 2007 NDA included restrictions regarding use and testing of samples of annatto tocotrienol received from ARI – including samples obtained per the issued April 9, 2007, Purchase Order (**Exhibit E**). As shown in **Exhibit E**, BGG purchased 15 kg of the implicated annatto tocotrienol with instructions to ship to the quantity of annatto tocotrienol to The Chinese Academy of Agricultural Science, No. 12, South Street of Zhongguancun, Hiadian District, Beijing. *See* www.caas.cn. While BGG America represented that it was simply testing the sample prior to entering a distribution relationship with ARI, it is now believed that BGG America shipped those samples for purposes of creating a competing line of annatto tocotrienols.

43.     BGG America ordered a second quantity of ARI's annatto tocotrienol – this time an additional 30 kg – on March 7, 2008. *See* **Exhibit F**. Again, it was shipped from ARI (in Massachusetts) to The Chinese Academy of Agricultural Science. Around the time BGG America ordered this second quantity (again under

the suggested purpose of forming a distribution relationship), JXVC was formed and began operations. Upon information and belief, portions of the March 7, 2008, order and/or the test results from The Chinese Academy of Agricultural Science were provided to JXVC. Upon further information and belief, testing and/or analysis of the 30 kg sample of ARI's Patent Product was done under the specific direction, oversight, and control of BGG China.

44. Despite providing both samples (as provided in **Exhibit E** and **Exhibit F**) to The Chinese Academy of Agricultural Science for testing and/or analysis, BGG America never fully "ma[d]e available to [ARI] the results of the analysis or evaluation, within thirty (30) days of completion of its analysis and evaluation."

45. Upon information and belief, BGG China and/or JXVC currently maintain portions of the samples provided in **Exhibit E** and **Exhibit F** and/or the underlying test results (and analysis) regarding both samples of ARN's annatto tocotrienol.

### Trade Secret Misappropriation

46. Between April 2007 and March 2008, BGG proffered that they were interested in forging a distribution relationship with ARI based upon its unique, proprietary, and patented line of annatto tocotrienols. Part of BGG's interest was based upon the unique homologs of tocotrienols that existed in ARI's **DELTAGOLD®** line of Vitamin E supplements. Specifically, the unique and specific amounts of *delta*-tocotrienols and *gamma*-tocotrienols that provided enhanced therapeutic and dietary benefits were of interest to BGG.

47. Under the March 2007 NDA, ARI provided not only the samples identified in **Exhibit E** and **Exhibit F** but also related confidential and proprietary information. Such exchanges of sensitive information, provided under the protections of the March 2007 NDA, occurred between March 2007 to August 2008, including exchanges through emails and related memorandum. Such

information included, but in no way is limited to, manufacturing techniques (including manufacturing flow information), extraction ratios, nutrition analysis, business strategies (including specific geographic areas of market interest), market information, and pricing (herein under collectively the "Trade Secrets").

48. The foregoing Trade Secrets were both confidential and proprietary to ARI – all of which was disclosed specifically under the protections of the March 2007 NDA.

49. Defendants, as shown by the foregoing, obtained ARI's Trade Secrets through improper means – namely, under the guise of a potential distribution relationship.

50. Defendants, knew or should have known, that the information constituted and qualified as trade secrets based upon the terms and conditions of the March 2007 NDA.

51. BGG was under a duty to maintain the secrecy of ARI's Trade Secrets or limit the use of those Trade Secrets obtained from ARI, including the two samples and the related business information provided during the April 2007 through March 2008 timeframe.

52. JXVC acquired the information from BGG under circumstances that likewise gave rise to a duty on behalf of BGG to maintain the secrecy of ARI's Trade Secrets and/or to limit the use of such Trade Secrets.

53. Nonetheless, Defendants obtained, used, and benefited from ARI's Trade Secrets, which in turn assisted Defendants in the design, development, and creation of what became Defendants' **TheraPrimE®** line of annatto tocotrienol.

54. Upon information and belief, **Exhibit E** and **Exhibit F** were used to help Defendants create a competitive line of annatto tocotrienol for import and later sale within the United States as a dietary supplement.

55. Defendants' **TheraPrimE** line of annatto tocotrienol maintains similar homologs of tocotrienols as found ARI's line of **DELTAGOLD®** line of

Vitamin E supplements. Based upon review of **Exhibit B** (BGG's SIDI Report) and Third Party November 13, 2018, independent testing of BGG's **TheraPrimeE®** has almost mirror amounts/percentages of *gamma* and *delta* tocotrienols (prepared by identical methods) compared to ARI's (and now ARN's) line of **DELTAGOLD®:**

| | **ARN** | **BGG** |
|---|---|---|
| Trademark | **DELTAGOLD®** | **TheraPrimeE®** |
| Processing Aid | RBO as carrier oil | MCT as carrier oil. *See* **Exhibit B**, Page 3 (MCT Oil is used between 0-15% Weight) and Page 9: |

**Ingredients Composition of**

**Annatto Tocotrienols 70**

**(D-TT-70)**

| Ingredients | Percentage |
|---|---|
| Annatto Extract | 85-100% |
| MCT Oil | 0-15% |
| Total | 100% |

| | **ARN** | **BGG** |
|---|---|---|
| | | *See also* **Exhibit C** (BGG Brochure) at Page 7 (confirming "Oil form") |
| Source of Tocotrienols | *Bixa Orellana* seed components | *See* **Exhibit B**, Page 3: "oil derived from the seed of *Bixa orellana*" from Peru. |
| Method of Extraction | Evaporative techniques / molecular distillation | Evaporative techniques / molecular distillation/ column chromatography *See* **Exhibit B**, Page 8 (flow chart) showing: |

| | | |
|---|---|---|
| | | **Flow Chart of Annatto Tocotrienols**<br><br>Raw Material<br>↓<br>Molecule Distillation<br>↓<br>Collecting<br>↓<br>Column Chromatography<br>↓<br>Evaporation<br>↓<br>Molecule Distillation |
| Process of volatizing a solvent from a byproduct solution of *Bixa orellana* seed components | Yes | Yes.<br><br>*See* **Exhibit B**, Page 4 (referring to use of Ethanol as solvent used with *Bixa Orellana* seed components). |
| Byproduct solution including a geranylgeraniol component | Yes | Yes |
| Distilling a geranylgeraniol component to form a geranylgeraniol distillate | Yes | Yes |
| *Gamma*-Tocotrienol | 58,557 mcg/g (per 3rd Party Testing) | 68,552 mcg/g (per 3rd Party Testing)<br><br>*See* **Exhibit C** (BGG Brochure) at Page 7:<br><br>• TheraPrimE™ Annatto Tocotrienols 70<br>o 70% minimum tocotrienol content<br>o Comprised of 84% - 92% delta-tocot-rienol<br>o Remainder of 8% - 16% gamma-tocot-rienol<br>o Oil form |

| | | |
|---|---|---|
| *Delta*- Tocotrienol | 642,325 mcg/g (per 3rd Party Testing) | 770,820 mcg/g (per 3rd Party Testing) |
| Total TocoTrienols | 700,992 mcg/g<br>70.1 % | 839,342 mcg/g<br>83.9 %<br><br>*See* **Exhibit B**, Pg 12: BGG has greater than 70.00%:<br><br>3. COMPOSITION/INFORMATION ON INGREDIENTS<br><br>Chemical name / % : *d*-alpha tocotrienol, *d*-beta tocotrienol, *d*-gamma tocotrienol, *d*-delta tocotrienol — >70.00% total tocotrienols |
| Shelf Life | Three Years | Two Years |
| Acid Value | NMT 5 ml/g | NMT 1 ml/g |
| Pricing | | $60 less per kg compared to ARN |

56. BGG America's foregoing acts constitute continuing acts which continue to cause damage to ARN (the successor to ARI) which remains ongoing.

57. All of the foregoing constitutes a breach of the March 2007 NDA, in that BGG America improperly disclosed and/or used confidential and proprietary information, including samples, to create Defendants' **TheraPrimeE®** line of annatto tocotrienol.

58. ARN (as the predecessor of ARI) continues to be harmed and damaged by Defendants' continuing use of this proprietary and confidential information about its annatto tocotrienol, including its unique blend of homologs of tocotrienols.

59. ARN has no adequate remedy in law regarding the foregoing acts.

60. Defendants' **TheraPrimeE®** line continues to be sold in direct competition with ARN's Patented Product.

# CLAIM I

## INFRINGEMENT OF THE PATENT-IN-SUIT AGAINST DEFENDANTS BEIJING GINGKO GROUP BIOLOGICAL TECHNOLOGY CO., LTD.; JIANGSU XIXIN VITAMIN CO., LTD.; JINKE GROUP USA INC. d/b/a BEIJING GINGKO GROUP NORTH AMERICA; AND DOES 1-10, INCLUSIVE

### (U.S. PATENT NO. 6,350,453 B1)

### [35 U.S.C. § 271]

61. ARN incorporates paragraphs 1 – 60 above of this Complaint.

62. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code directed to all Defendants.

63. Defendants manufacture, prepare, blend, import from China, and then later sell the **TheraPrimeE®** line of annatto tocotrienol within the United States.

64. According to **Exhibit C (**which was sourced from BGG America), the **TheraPrimeE®** line is a "form of natural Vitamin E . . . composed of eight distinct molecules . . . known as 'tocotrienols.'"  *See* **Exhibit C**, Page 4.  These include *delta*-Tocotrienols and *gamma*-Tocotrienols which "have proven antioxidant and anti-inflammatory activity as well as potential health benefits." *See id.*  BGG further states that its "tocotrienol products come from our industry-leading family of Vitamin E Products called TheraPrimeE$^{TM}$" where the "products derived . . . available from BGG North America" are "from annatto."  *See* **Exhibit C** at Page 5.

65. BGG admits their "Tocotrienols from annatto are very different; they have extremely low levels of tocopherols, and contain approximately 90% *delta*-tocotrienol and 10% *gamma*-tocotrienol."  *See* **Exhibit C** at Page 6.

66. Without authority, Defendants, through their agents, employees, and servants, are making, using, promoting, offering for sale, selling, supplying, and/or importing into the United States annatto tocotrienol dietary supplements and/or

related compounds (blends) that meet the elements and limitations of least Claims 1, 6, 7, and 10 of the Patent-in-Suit and are, with knowledge of the Patent-in-Suit, actively inducing others to do the same while knowing that the induced acts constitute infringement of the Patent-in-Suit.

67.     Moreover, with knowledge of the Patent-in-Suit, Defendants are providing annatto tocotrienol dietary supplements and/or related compounds that, alone or as material components in combination without components, infringe the Patent-in-Suit and thereby contribute to others' infringement of the Patent-in-Suit. Defendants are therefore infringing, actively inducing others to infringe, and/or contributing to others' infringement of one or more claims of the Patent-in-Suit, including, for example, Claims 1, 6, 7, and 10 of the Patent-in-Suit, in violation of 35 U.S.C. § 271, including subsections (a), (b), (c), and/or (f).

68.     This infringement is currently on-going.   The products relating to Defendants infringement include Defendants' **TheraPrimeE** line of annatto tocotrienol and its blends.

69.     Defendants' infringement of the Patent-in-Suit shall continue unless enjoined by this Court.

70.     Defendants' infringement of the Patent-in-Suit is irreparably harming ARN.

71.     Unless Defendants are enjoined from infringing the Patent-in-Suit, Plaintiff will continue to suffer irreparable injury for which it has no adequate remedy at law.

72.     Defendants continue to derive and receive advantages, gains, and profits from their infringement in an amount that is not presently known to ARN.

73.     ARN is being irreparably harmed and is entitled to injunctive relief as well as monetary relief in an amount to be determined at trial.

## CLAIM II

**BREACH OF CONTRACT AGAINST DEFENDANT JINKE GROUP USA**

**INC. d/b/a BEIJING GINGKO GROUP NORTH AMERICA**

**(MARCH 2007 NDA)**

**[MASSACHUSETTS COMMON LAW]**

74.     ARN incorporates paragraphs 1 – 60 above of this Complaint.

75.     This is a claim for breach of contract under the common law of the State of Massachusetts directed to BGG America only.

76.     The March 2007 NDA was negotiated, entered into, executed, and performed within the State of Massachusetts.

77.     As the assign of ARI, ARN has assumed all rights, obligations, and interest in the March 2007 NDA.

78.     At all times relevant, ARI (and later its assign ARN) have had full readiness, ability, and willingness to perform under the March 2007 NDA.

79.     As shown in **Exhibit E**, the April 9, 2007, Purchase Order (No. JKGA6137), BGG America paid $5,250.00 in exchange for 15 kg of ARI's annatto tocotrienol.  Moreover, BGG America, upon payment to ARI in Massachusetts, received and took possession of the 15 kg in Massachusetts.

80.     The same occurred regarding the March 7, 2008, Purchase Order (No. JKGA8241), namely that BGG America paid $21,000.00 in exchange for 30 kg of ARI's annatto tocotrienol.  BGG America paid the amount, as shown in **Exhibit F**, to ARI in Massachusetts and then received and took possession of the 30 kg in Massachusetts.

81.     BGG America took title of both of these amounts of ARI's annatto tocotrienol in Massachusetts and then had that material shipped directly to China.  As such, it was never sent by ARI to BGG America in California.

82.     Even though both orders of ARI's annatto tocotrienol were sent to The Chinese Academy of Agricultural Science for testing and/or analysis, BGG

America never fully provided any form of report and/or update as to what was done with both samples.

83.     BGG America specifically agreed "not disclose to any third party or use any Confidential Information disclosed to it by [ARI] except when expressly permitted in writing." BGG America also confirmed it would "take all reasonable measures to maintain the confidentiality of all Confidential Information of [ARI] in [BGG America's] possession or control."

84.     Despite providing both samples (as provided in **Exhibit E** and **Exhibit F**) to The Chinese Academy of Agricultural Science for testing and/or analysis, BGG America never fully "ma[d]e available to [ARI] the results of the analysis or evaluation, within thirty (30) days of completion of its analysis and evaluation."

85.     Moreover, any "communications (e.g. oral, by observation, analysis, evaluation) must be documented in writing" and provided by BGG America to ARI (now ARN through assignment of the NDA) regarding such testing / evaluation / use of the underlying samples of ARI's compounds.  However, documented communications were never fully provided by BGG America.

86.     Despite the clear and unambiguous provisions of the March 2007 NDA as provided above, BGG America has materially breached that agreement by:

- •     Disclosing and/or using Confidential Information (specifically, ARI's "business, financial, technical and other information" as well as trade secrets, samples, . . . and data") which was disclosed to BGG America and to others (including BGG China and/or JXVC);

- •     Failing to "take all reasonable measures to maintain the confidentiality of all Confidential Information" in BGG America's "possession or control";

- Failing to disclose any "communication (e.g., oral, by observation, analysis, evaluation)" regarding the foregoing testing and/or evaluations; and
- "us[ing] or disclos[ing] the Proprietary Information in a manner inconsistent with [the March 2007 NDA] such that 'the unauthorized use or disclosure'" caused damage to ARI (now ARN).

87.    The foregoing actions, omissions, and conduct by BGG America has all been calculated and designed to damage ARI (now ARN) regarding its manufacture, marketing, advertising, sale, and/or offer for sale of dietary supplements.

88.    BGG America's actions, omissions, and conduct were done knowing the restrictions and prohibitions set forth in the March 2007 NDA.

89.    BGG America has done nothing to mitigate the foregoing material breaches of the March 2007 NDA.

90.    ARN (as well as its predecessor ARI) did not know (nor should they have reasonably known) that ARN was being harmed by the foregoing material breaches by BGG America because:

- According to BGG America's representations made to the USPTO in Trademark Registration 5,098,943, BGG America started selling **TheraPrimE** in the United States in January 2015 (as such, ARI and/or ARN could not have secured samples for testing until the last 47 months);
- BGG America's initial literature regarding **TheraPrimE** was not publicly available until 2015 (*see* **Exhibit C** entitled "*Tocotrienols: Vitamin E for the New Millennium*"); and
- BGG America's SIDI report regarding its Annatto Tocotrienol 70 was only published recently in 2018.

91.     ARI (and now its assign ARN) has been substantially damaged by BGG America's material breaches of the March 2007 NDA.  In comparison, ARI (and now its assign ARN) has not materially breached in any form or fashion any of its obligations under the March 2007 NDA.

92.     ARN continues to be damaged based upon the foregoing acts which rise to the level of a continuing fraud upon ARN.

93.     Accordingly, ARN demands judgment against BGG America for damages based upon these acts of breach of contract as this Honorable Court may deem just under the circumstances.

## CLAIM III

## TRADE SECRET MISAPPROPRIATION UNDER MASSACHUSETTS LAW AGAINST DEFENDANTS BEIJING GINGKO GROUP BIOLOGICAL TECHNOLOGY CO., LTD. AND JINKE GROUP USA INC. d/b/a BEIJING GINGKO GROUP NORTH AMERICA

### [Mass. Gen Laws Ann. Ch. 93]

94.     ARN incorporates paragraphs 1 – 60 above of this Complaint.

95.     This is a misappropriation of trade secrets under the common law of the State of Massachusetts as well as Mass. Gen. Laws Ann. Ch. 93 against BGG American and BGG China.

96.     ARI developed and created certain valuable trade secrets, which include specifically identifiable formulas, blends, methods, techniques, processes, business strategies, and scientific / technical data regarding its proprietary line of annatto tocotrienol.

97.     After execution of the March 2007 NDA, ARI disclosed to BGG America (under strict confidence) certain business strategies regarding the market and potential value of annatto tocotrienol.  This included but was not limited to market information, internal pricing, sales pricing, etc.

98.     In addition, ARI disclosed related formulas, methods, techniques, and processes regarding the manner in which ARI made its annatto tocotrienol, including different extraction ratios, blending ratios, etc.

99.     The foregoing business strategies (as well as related formulas, blends, methods, techniques, and processes) collectively constitute ARI's trade secrets disclosed to BGG (as previously defined above as "Trade Secrets").

100.    Such Trade Secrets were specified or specifiable information which provided competitive economic advantage (actual or potential) due to not being generally known to, nor being readily ascertainable through proper means by, others who might obtain economic advantage from acquisition, disclosure, or use of such information.

101.    ARI, at all times relevant to the foregoing, used efforts that were reasonable under the circumstances to protect against the foregoing Trade Secrets being acquired, disclosed or used without its consent.

102.    ARN is the successor-in-interest to ARI, including ownership of the foregoing Trade Secrets.

103.    BGG America misappropriated, through improper means, the foregoing Trade Secrets of ARI (which it then in turn disclosed to BGG China). More specifically, such misappropriation occurred through misrepresentation and breach of a confidential relationship (via the March 2007 NDA) as well as unauthorized disclosure or use of such information (including through dissemination to BGG China).

104.    BGG America disclosed and/or used ARI's Trade Secrets without any form of express or implied consent.

105.    BGG China received the underlying Trade Secrets from BGG America knowing that BGG America obtained / acquired the information by improper means.

106.   BGG America and BGG China then used the Trade Secrets to develop, manufacture, market, offer for sale, and sell **TheraPrimE** for their own economic advantage to the detriment of ARN (and previously ARI).

107.   BGG America and BGG China continue to use and/or have access to ARN's Trade Secrets.

108.   ARN only recently discovered, through the exercise of reasonable diligence, the foregoing acts of misappropriation.

109.   Based upon the foregoing, ARN is entitled to an award of exemplary damages in an amount not to exceed twice the amount of actual loss caused by the misappropriation and the unjust enrichment cause by such misappropriation.  Such amounts shall be no less than a reasonable royalty of BGG's unauthorized use of the foregoing trade secrets.

110.   Based upon the foregoing, ARN is entitled to recover an award of reasonable attorneys' fees and costs based upon the foregoing willful and malicious activities by BGG America and BGG China.

111.   ARN has been irreparably harmed by the aforementioned conduct of BGG America and BGG China and will continue to suffer harm to its intellectual property, business reputation, and goodwill if injunctive relief is not awarded.

## PRAYER FOR RELIEF

AMERICAN RIVER NUTRITION LLC respectfully prays for:

A.    an order adjudging that Defendants have infringed the Patent-in-Suit;

B.    an order adjudging that BGG America breached the March 2007 NDA;

C.    an order adjudging that BGG America and BGG China misappropriated trade secrets;

D.    an order enjoining Defendants, as well as their officers, agents, representatives, servants, employees, contractors, and those in active concert and

participation, from misappropriating ARN's trade secrets as well as from infringing the Patent-in-Suit;

E.    an accounting of all gains, profits, and advantages derived by Defendants infringement of the Patent-in-Suit, breach of the March 2007 NDA, and/or misappropriation of trade secrets;

F.    an award of any and all available damages, including actual damages and/or a reasonable royalty, for Defendants' infringement of the Patent-in-Suit;

G.    an award of any and all available damages, including compensatory and/or punitive damages, against BGG America for breach of contract;

H.    an award of any and all available damages against BGG America and BGG China, including actual damages, unjust enrichment damages, and/or a reasonable royalty as well as exemplary damages, for misappropriation of trade secrets;

I.    an award of AMERICAN RIVER NUTRITION LLC's prejudgment and post-judgment interest and costs;

J.    an award to AMERICAN RIVER NUTRITION LLC of its attorneys' fees incurred in connection with this action; and

K.    such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff AMERICAN RIVER NUTRITION LLC respectfully demands a trial by jury in this action.

DATED: December 12, 2018         JOHNSON & PHAM, LLP

By: /s/ Nicole Drey Huerter
Christopher Q. Pham, Esq.
Nicole Drey Huerter, Esq.
Attorneys for Plaintiff
AMERICAN RIVER NUTRITION LLC