UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:18-cv-02201-JLS-JDE                                          Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
       et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                        Not Present

**PROCEEDINGS:**   **(IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 54)**

Before the Court is Defendants' Motion to Dismiss. (Mot., Doc. 54; Mem., Doc. 54-2.) Plaintiff opposed. (Opp., Doc. 62.) Defendants replied. (Reply, Doc. 63.) For the reasons given below, the Court DENIES the Motion.[1]

**I.     Background**

Plaintiff is the owner of United States Patent No. 6,350,453 B1 issued by the United States Patent & Trademark Office on February 26, 2002, entitled "Tocotrienols and Geranylgeraniol from *Bixa Orellana* Byproducts" (the "'453 Patent"). (First Amended Compl., Doc. 42 ¶ 2; '453 Patent, Doc. 42-1.) The '453 Patent claims a method for recovering tocotrienol and geranylgeraniol compounds from byproduct solutions of processing *Bixa orellana* seeds to extract annatto colorant. '453 Patent col. 2 ll. 8-25. As described in the '453 Patent, tocotrienol and geranylgeraniol compounds have known or suspected therapeutic effects. *Id.* col. 1 ll. 11-31, 54-66. Tocotrienol and geranylgeraniol compounds have been discovered to exist in the seeds of *Bixa orellana*, commonly known as the achiote tree. *Id.* col. 1 ll. 34-38, 51-54. The compounds also

---

[1] The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Accordingly, the hearing set for June 21, 2019, at 10:30 a.m., is VACATED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                         Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

exist naturally in other plants. *Id.* col. 1 ll. 32-34, 49-51. In such plant-based occurrences, however, tocotrienol and geranylgeraniol compounds are accompanied by other substances that mitigate the therapeutic effects of the tocotrienol and geranylgeraniol compounds and are difficult to remove. *Id.* col. 1 ll. 38-47, 66-67, col 2 ll. 1-3. "Therefore, a need exists to find a method for recovery of []tocotrienol[], and of geranylgeraniol, that minimizes or overcomes the [] problems" associated with extracting and isolating tocotrienol and geranylgeraniol compounds directly from plants. *Id.* col. 2 ll. 4-6. The '453 Patent purports to meet this need by applying certain methods of recovery—namely, solvent volatilization and distillation—to certain source material—namely, byproduct solutions of *Bixa orellana* seeds—to yield high concentrations of tocotrienol and geranylgeraniol compounds free from undesired compounds. *Id.* col. 2 ll. 8-58, col. 3 ll. 50-57. A "[b]yproduct solution[] of *Bixa orellana* seed[s]" is defined in the '453 Patent as "a solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves." *Id.* col. 3 ll. 54-58. It has been discovered that these byproduct solutions can contain high concentrations of tocotrienol and geranylgeraniol compounds. *Id.* col. 3 ll. 31-43. The '453 Patent contemplates that industrial dye manufacturing processes[2] create source material byproduct solutions, but it does not claim any process for creating one or more byproduct solutions to serve as the source material for the claimed process. Rather, the '453 Patent comprises a method for processing *any* such byproduct solution,

---

[2] "The seeds of *Bixa orellana* [] are the source of a reddish-orange colorant, known as annatto, that contains bixin and orelline, both of which are carotenoid pigments. The colorant is used commonly in foods, dyes and polishes. Typically, annatto is extracted from dehusked seeds in an aqueous caustic solution. The colorant is precipitated from aqueous caustic solution by addition of a suitable acid, such as sulfuric acid. The precipitated colorant is removed by filtration. Filtercake of precipitated annatto colorant is dried and milled to form a commercial product. An oily phase generally is separated from an aqueous caustic phase by centrifugation or by settling. Alternatively, the annatto colorant can be extracted from seeds in an organic solvent, such as hexane, acetone, or an alcohol. Miscella containing color and byproduct oil are allowed to cool sufficiently to precipitate the annatto colorant. The precipitate is separated as bottoms from the organic solvent. The oily phase from the caustic or organic extractions following separation of the annatto precipitate generally are discarded as byproducts." *Id.* col. 3 ll. 12-30.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                            Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
       et al.

___

however created, where such method is described by the following claims at issue (collectively, the "Claims"):

> 1. A method of forming a tocotrienol composition, comprising the step of volatilizing a solvent from a byproduct solution of *Bixa orellana* seed components to form thereby said tocotrienol composition.
>
> 6. The method of claim 1, therein the byproduct solution of *Bixa orellana* seed components includes a geranylgeraniol component.
>
> 7. The method of claim 1, further including the step of distilling the geranylgeraniol component to separate thereby at least a portion of said geranylgeraniol component from said tocotrienol composition to form a geranylgeraniol distillate.
>
> 10. The method of claim 7, further including the step of distilling a tocotrienol component of said tocotrienol composition to form a tocotrienol distillate and a bottoms stream.

*Id.* col. 8 ll. 3-38, 47-54, 59-61.

Plaintiff filed this suit on December 12, 2018. The operative First Amended Complaint brings two causes of action, both for patent infringement under 35 U.S.C. § 271 premised on allegations of Defendants' unauthorized practice of one or more of the Claims. (FAC. ¶¶ 30-55.) Defendant now moves to dismiss the First Amended Complaint. (Mot. at 2.)

## II. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Assoc.*, 629 F.3d 992, 998 (9th Cir. 2010). Yet, "courts 'are not bound to accept as true a legal conclusion couched as a

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                          Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A plaintiff must not merely allege conduct that is conceivable; "[w]hen a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks omitted). On a motion to dismiss a patent infringement claim, this means "all factual inferences drawn from the [patent] specification must be weighed in favor of [the patentee], the non-moving party." *Visual Memory LLC v. NVIDIA Corp*., 867 F.3d 1253, 1262 (Fed. Cir. 2017).

### III.   Discussion

Defendants argue that the Complaint does not state a claim for patent infringement because the asserted Claims are not patent eligible under 35 U.S.C. § 101 and are therefore invalid and unenforceable as a matter of law. (Mem. at 5.) To be sure, "[e]ligibility under § 101 is a question of law based on underlying facts that . . . may be resolved on a motion to dismiss where 'there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Natural Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1342 (Fed. Cir. 2019) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

####   A.   Patent Eligibility Framework

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "The Supreme Court has 'interpreted § 101 and its predecessors for more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                      Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
          et al.

than 150 years' to 'contain an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016) (quoting *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014)) (alterations omitted). "Although these exceptions are not required by the statutory text, they are consistent with the idea that certain discoveries 'are part of the storehouse of knowledge of all men' and are 'free to all men and reserved exclusively to none.'" *Kaneka Corp. v. Zhejiang Med. Co.*, No. CV1102389SJOSHSX, 2018 WL 2718036, at *6 (C.D. Cal. Apr. 5, 2018) (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)), *aff'd sub nom. Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, No. 2018-1892, 2019 WL 2082033 (Fed. Cir. May 13, 2019). Hence, in analyzing § 101, the Supreme Court distinguishes "between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal quotation marks and citations omitted).

In *Alice*, "[t]he Supreme Court [] established a two-step framework to determine subject matter eligibility under § 101." *Endo Pharm. Inc. v. Teva Pharm. USA, Inc.*, 919 F.3d 1347, 1352 (Fed. Cir. 2019). "Step one asks whether the claim is 'directed to one of [the] patent-ineligible concepts.'" *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1047 (quoting *Alice*, 134 S. Ct. at 2354). "If the answer is no, the inquiry is over: the claim falls within the ambit of § 101." *Id.*; *see also Endo Pharm.*, 919 F.3d at 1352 ("If the claims are not directed to a patent-ineligible concept at step one, [the Court] need not address step two of the inquiry.") (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016)). "If the answer is yes, the inquiry moves to step two, which asks whether, considered both individually and as an ordered combination, 'the additional elements transform the nature of the claim into a patent-eligible application.'" *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1047 (quoting *Alice*, 134 S. Ct. at 2354 (internal quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                                 Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

### B.     The '453 Patent

Regarding step one, Defendants argue that the Claims are invalid because they are "directed to obtaining naturally occurring compositions." (Mem. at 5.) "The Supreme Court has cautioned that 'too broad an interpretation of' ineligible subject matter 'could eviscerate patent law' because 'all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Endo Pharm.*, 919 F.3d at 1352-53 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)). "Accordingly, at step one, 'it is not enough to merely identify a patent-ineligible concept underlying the claim; [the Court] must determine whether that patent-ineligible concept is what the claim is "directed to."'" *Id.* at 1353 (quoting *Rapid Litig. Mgmt.*, 827 F.3d at 1050). "The step one 'directed to' inquiry focuses on the claim as a whole." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 750 (Fed. Cir. 2019). "To determine whether a claim is directed to an ineligible concept, [the Federal Circuit] ha[s] frequently considered whether the claimed advance improves upon a technological process or merely an ineligible concept, based on both the written description and the claims." *Id.* (collecting cases).

To support their argument that the '453 Patent is directed to patent-ineligible subject matter, Defendants rely heavily on *Ex parte Tan*, No. 2017-001177 (P.T.A.B. Mar. 6, 2018). (Mem. at 6-7; Reply at 4, 10.) There, the Patent Trial and Appeals Board affirmed the USPTO's rejection of patent claims "directed to a composition comprising annatto seed oil extract and plant oil extract." *Ex parte Tan* at 1.[3] Applying step one of the Supreme Court's test, the Board concluded that "the claimed invention combines isolated, but naturally occurring things, here two plant extracts, and does not change them other than by purification, isolation, or packaging." *Id.* at 6 (citing *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2117 (2013); *Funk Bros.*, 333 U.S. at 130-32). Hence, because "purifying or isolating a naturally occurring compound or molecule . . . without altering it in any way . . . is not patent-eligible," it did not matter

---

[3] Plaintiff was the real party in interest seeking to obtain the patent-at-issue in *Ex Parte Tan*. *Id.* at 1 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                            Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

that the claimed composition was ostensibly derived from a man-made, concentrated "extract" because "regardless of purity or isolation, the [claimed] composition is nevertheless a natural product." *Id.* at 6. Defendants contend that, like that in *Ex Parte Tan*, the Claims are "directed to" merely obtaining naturally occurring substances. (Mem. at 5-7; Reply at 6-7.)

There is a glaring difference, however, between the '453 Patent and the patent sought in *Ex Parte Tan*. Namely, the latter sought exclusive use of a *composition* derived from naturally occurring plant extracts, whereas the '453 Patent claims a *process* for deriving compositions from a certain source material. "Methods are generally eligible subject matter." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015). As the Federal Circuit described in *Rapid Litigation Management*, concluding that a method of cryopreservation of certain cells withstood the first *Alice* inquiry despite the end-product being unaltered naturally occurring material (*i.e.*, the preserved cells), "[i]t is the *process* of preservation that is patent eligible here, not necessarily the end product . . . [Otherwise], no one could ever get a patent on cryopreservation, or on any other innovative method that acts on something that is naturally occurring, simply because of the nature of the underlying subject matter. Section 101 is not so narrow." 827 F.3d at 1050; s*ee also Natural Alternatives*, 918 F.3d at 1345; *Kaneka Corp.*, 2018 WL 2718036, at *16 ("[T]he claims are 'directed to' a superior method of producing a certain end product . . . rather than to the inherent properties of certain [underlying] biological materials."). For process claims, it does not usually matter that the end product is patent-ineligible because such claims are directed to better ways of yielding the end product and not to the product itself.[4]

---

[4] Plaintiff argues that Claims cannot be "directed to" a naturally occurring substance because the source material input to the claimed process is an industrial byproduct that does not occur in nature. (Opp. at 14-16.) The '453 Patent, however, describes how tocotrienol and geranylgeraniol compounds are naturally present in *Bixa orellana* seeds *before* the seeds are processed into a byproduct. '453 Patent col. 1 ll. 34-38, 51-54. Thus, there is no dispute that the described tocotrienol and geranylgeraniol compounds are naturally occurring, and the Court's analysis concerning whether a process yielding those compounds is "directed to" a law of nature is unaffected by the fact that the '453 Patent contemplates processing such naturally occurring compounds only as they occur in an artificial setting, *i.e.*, in a certain class of industrial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                                Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

However, not *all* purported method claims are necessarily directed to patent-ineligible subject matter. Despite usual eligibility, method and process claims are nevertheless "'directed to' a patent-ineligible concept when they amounted to nothing more than observing or identifying the ineligible concept itself." *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1048. The mine-run of cases applying this exception concern claims for DNA screening and testing processes where the target of the patent is *information* about the DNA itself. *See id.* (collecting cases). Because "[t]he existence and location of []DNA is a natural phenomenon[,] identifying its presence [i]s merely claiming the natural phenomena itself," even where some process is described by which the detection may occur. *Id.* The methods in such detection cases are either explicitly or implicitly not improvements on the employed technology, instead serving only as incidental instruments to the respective patents' claimed improvements: the discovery of and ability to detect certain natural occurrences of biological markers. *See Athena*, 915 F.3d at 751. Therefore, "[a]lthough the claims in each of these cases employed method steps, the end result of the process, the essence of the whole, was a patent-ineligible concept." *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1048; *see also Roche Molecular Sys., Inc. v. CEPHEID*, 905 F.3d 1363, 1371 (Fed. Cir. 2018) ("[T]he method claims assert that if an investigator detects a signature nucleotide from a sample, she knows the sample contains MTB. This relationship between the signature nucleotides and MTB is a phenomenon that exists in nature apart from any human action, meaning the method claims are directed to a natural phenomenon, which itself is ineligible for patenting."); *Athena*, 915 F.3d at 752-53 ("Claiming a natural cause of an ailment and well-known means of observing it is not eligible for patent because such a claim in effect only encompasses the natural law itself."); *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 356 F. Supp. 3d 925, 933 (N.D. Cal. 2018) ("[T]he patents lay claim to test results obtained from the use of fetal DNA. This

---

byproducts. *See Athena*, 915 F.3d at 752 (noting that use of a man-made substance in a process otherwise directed to a naturally occurring substance does not necessarily render the process patent-eligible); *see also Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) ("a mathematical formula . . . is not itself patent-eligible subject matter, even if limited to a particular technological environment.") (citing *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)).

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                      Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
         et al.

use alone is insufficient to overcome the 'directed to' inquiry . . . [because] the claims are directed to a testable quantity of genetic information found in nature."); *Ariosa*, 788 F.3d at 1376 ("[T]he claims at issue, as informed by the specification, are generally directed to detecting the presence of a naturally occurring thing or a natural phenomenon, namely []DNA in maternal plasma or serum.").

      But courts apply this exception narrowly and are reluctant to extend it past descriptions of "processes" that merely describe ways to repeatedly discover the presence of a natural phenomenon.  *See, e.g.*, *Endo Pharm.*, 919 F.3d at 1356 ("[T]he claims here are directed to a *treatment* method, not a detection method."); *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1048. ("The end result of the [] patent claims is not simply an observation or detection of the ability of hepatocytes to survive multiple freeze-thaw cycles.  Rather, . . . the claims recite a *method of producing* a desired preparation of multi-cryopreserved hepatocytes." (internal quotation marks omitted)); *Kaneka Corp.*, 2018 WL 2718036, at *16 (holding that a process for producing a compound "on an industrial scale" is not "directed to" component bacteria's natural ability to produce that compound); *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1135-36 (Fed. Cir. 2018) (distinguishing a process for determining pharmaceutical doses based on the presence of genetic markers from a process of merely observing the presence of genetic markers). Where a process does not merely aim to *detect* a natural phenomenon, but rather *uses* the known presence of a natural phenomenon to achieve a greater end, the exception does not apply.  That is, "[a] superior method of producing a certain end product"—such as a process for marshaling a naturally occurring substance for industrial use—is "directed to" the process and not to the "inherent properties" of the underlying material.  *Kaneka Corp.*, 2018 WL 2718036, at *16.  "That one way of describing the process is to describe the natural ability of the subject matter to *undergo* the process does not make the claim 'directed to' that natural ability."  *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1049.  Surely, new technologies for mining gold, drilling for oil, or otherwise extracting natural substances from where they may be found, rely on the natural existence of those substances and those substances' natural abilities to be extracted from various source materials by various methods.  Just as surely, however, a new method of recovering or preserving those natural substances "for later use" from a certain source material—and not only for

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE						Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

the purpose of cataloguing their very existence in such source material—"is precisely the type of claim that is eligible for patenting." *Id.* (citing *Alice*, 134 S. Ct. at 2354); *see also Natural Alternatives*, 918 F.3d at 1346 ("The Supreme Court has also rejected the idea that claims to methods making use of natural products are equivalent to claims to the natural products themselves.").

Likewise, here, the Claims are not directed to a process for mere detection of a naturally occurring substance in a certain source material. Rather, "[t]hrough the recited steps, the patented invention achieves a better *way*" of obtaining a compound from that source material. *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1048 (emphasis added). At heart, the '453 Patent does not describe a method for isolating a compound within a *possible* source material to *observe* whether that compound does in fact exist within the source material. *Cf. Athena*, 915 F.3d at 751. It does not simply describe a method for determining whether a given byproduct solution contains tocotrienol or geranylgeraniol compounds. The '453 Patent instead describes a process for efficiently isolating those compounds from a *known* source material to *facilitate recovery* of the compound for commercial use. *See Kaneka Corp.*, 2018 WL 2718036, at *16-17. Application of this process provides for more than just the repeated discovery of tocotrienol or geranylgeraniol compounds in byproduct solutions; it allows someone to put that discovery to *use*. Therefore, in the context of the '453 Patent, the Claims are directed to an improvement in a patent-eligible compound-recovery process and not to the underlying compound itself. Thus, the Court concludes that the Claims are directed to patent-eligible subject matter.

This conclusion at step one should end the entire *Alice* inquiry. *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1047; *Endo Pharm.*, 919 F.3d at 1352. Nevertheless, under the headings in their briefs regarding "step one" of the *Alice* framework, Defendants spill much ink arguing that the volatilization and distillation techniques described by the Claims are well-known, standard techniques for extracting compounds, including tocotrienol and geranylgeraniol, from a variety of sources, including similar byproduct solutions. (Mem. at 7-9; Reply at 9.) But whether a patent *otherwise directed to patent-ineligible subject matter* sufficiently improves upon existing technological processes to "'transform the process into an inventive application' of the patent-ineligible concept" is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                            Date: June 20, 2019
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
          et al.

an inquiry quintessentially undertaken at *step two* of the *Alice* framework. *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1050 (quoting *Alice*, 134 S. Ct. at 2358) (alteration omitted). Defendants' argument that the minimal novelty of the techniques described in the Claims bears on whether the Claims are directed to a natural phenomenon thus improperly "collapses the inquiry into a single step." *Id.* Regardless, even if such arguments were relevant here, evaluating the inventiveness of a process compared to the prior art is a deeply factual inquiry ill-suited for disposition on a motion to dismiss. *See Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018) ("While patent eligibility is ultimately a question of law, . . . [w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination."); *Natural Alternatives*, 918 F.3d at 1347. Hence, for both reasons, the Court declines Defendants' invitation to scrutinize the novelty of Plaintiff's claimed method at this stage of the litigation. Plaintiff has alleged infringement of patented claims that describe a patent-eligible process for recovering a compound from a certain source material by administering certain steps, and that is all that is required to survive the instant Motion.

**IV.     Conclusion**

    For the Foregoing reasons, the Court DENIES Defendants' Motion.

                                                                Initials of Preparer:  tg