UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. 8:18-cv-02201-JLS-JDE					Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
    et al.

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero/Rolls Royce Paschal | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:

    Not Present                          Not Present

**PROCEEDINGS:   (IN CHAMBERS) ORDER ON CLAIM CONSTRUCTION**

Plaintiff American River Nutrition, LLC and Defendants Beijing Gingko Group Biological Technology Co., Ltd., et al. seek construction of five terms within United States Patent No. 6,350,453 B1 (the "'453 Patent"): "volatilizing a solvent"; "byproduct solution of *Bixa orellana* seed components"; "tocotrienol component"; "geranylgeraniol component"; and "bottoms stream." (Joint Statement at 2, Doc. 79.) On November 5, 2019, the Court held a claim construction hearing. (*See* Doc. 91.) Having heard the arguments of counsel and taken the matter under submission, the Court sets forth below its constructions.

**I.   BACKGROUND**

Plaintiff is the owner of United States Patent No. 6,350,453 B1, the '453 Patent, issued on February 26, 2002, entitled "Tocotrienols and Geranylgeraniol from *Bixa Orellana* Byproducts." (First Am. Compl. ("FAC") ¶ 2, Doc. 42; '453 Patent, Doc. 42-1.) The '453 Patent claims a method for recovering tocotrienol and geranylgeraniol components from byproduct solutions of processing *Bixa orellana* seeds to extract annatto colorant, which byproduct solutions have been discovered to contain high concentrations of tocotrienol and geranylgeraniol. ('453 Patent at 2:8–25, 3:31–43.)

As described in the '453 Patent, tocotrienol and geranylgeraniol compounds have known or suspected therapeutic effects. (*Id.* at 1:11–31, 54–66.) Tocotrienol and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                   Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

geranylgeraniol have been discovered to exist in the seeds of *Bixa orellana Linn* ("*Bixa orellana*"), commonly known as the achiote tree. (*Id.* at 1:34–38, 51–54.) The compounds also exist naturally in other plants. (*Id.* at 1:32–34, 48–51.) In such plant-based occurrences, however, tocotrienol and geranylgeraniol are accompanied by other substances that mitigate the therapeutic effects of the tocotrienol and geranylgeraniol and are difficult to remove. (*Id.* at 1:38–47, 66–67, 2:1–3.) "Therefore, a need exist[ed] to find a method for recovery of [tocotrienol] and of geranylgeraniol, that minimizes or overcomes the [] problems" associated with extracting and isolating tocotrienol and geranylgeraniol directly from plants. (*Id.* at 2:4–6.)

The '453 Patent purports to meet this need by applying certain methods of recovery—namely, solvent volatilization and distillation—to certain source material—namely, byproduct solutions of *Bixa orellana* seeds—to yield high concentrations of tocotrienol and geranylgeraniol free from undesired compounds. (*Id.* at 2:8–58, 3:50–58.) The '453 Patent contemplates that industrial dye-manufacturing processes create source-material byproduct solutions, but it does not claim any process for creating one or more byproduct solutions to serve as the source material for the claimed process. Rather, the '453 Patent comprises a method for processing *any* such byproduct solution, however created, where such method is described by the following claims at issue (collectively, the "Claims"):

> **1.** A method of forming a tocotrienol composition, comprising the step of volatilizing a solvent from a byproduct solution of *Bixa orellana* seed components to form thereby said tocotrienol composition.
>
> **5.** The method of claim **1,** wherein the solvent includes an alcohol.[1]
>
> **7.** The method of claim **1,** further including the step of distilling the geranylgeraniol component to separate thereby at least a portion of said

---
[1] The FAC alleges infringement by practice of claim 6, but the two Joint Claim Construction Statements name claim 5 in place of claim 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:18-cv-02201-JLS-JDE | Date: January 10, 2020 |
| Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al. | |

geranylgeraniol component from said tocotrienol composition to form a geranylgeraniol distillate.

**10.** The method of claim **7**, further including the step of distilling a tocotrienol component of said tocotrienol composition to form a tocotrienol distillate and a bottoms stream.

(*Id.* at 8:35–38, 45–46, 50–54, 59–61.)

Plaintiff filed this suit on December 12, 2018. The operative First Amended Complaint brings two causes of action, both for patent infringement under 35 U.S.C. § 271, premised on allegations of Defendants' unauthorized practice of one or more of the Claims. (FAC ¶¶ 30–55.) The Parties set forth the disputed terms in a Joint Claim Construction Statement and a Supplemental Joint Claim Construction Statement. (Joint Statement, Doc. 79; Supp. Joint Statement, Doc. 90.) Plaintiff and Defendants each filed a Claim Construction Brief. (Pl.'s Opening, Doc. 85; Defs.' Opening, Doc. 84.) The parties then each filed a responsive brief. (Pl.'s Resp., Doc. 88; Defs.' Resp., Doc. 89.)

## II.   LEGAL STANDARD

Claim construction is "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). The starting point for the Court's analysis is the available intrinsic evidence relating to the patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005). Intrinsic evidence includes "the patent claims and specifications, along with the patent's prosecution history." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). Additionally, "prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence." *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003). But courts should not "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1322 (Fed. Cir. 2013) (citing *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                                     Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

1340, 1352 (Fed. Cir. 2010); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996)).

Extrinsic evidence, such as "expert and inventor testimony, dictionaries, and learned treatises," *Phillips*, 415 F.3d at 1317, may be considered "*if needed.*" *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) (emphasis added); *see also Sumitomo Dainippon Pharma Co. v. Emcure Pharm. Ltd.*, 887 F.3d 1153, 1160 (Fed. Cir. 2018) ("Extrinsic evidence is, in general, less significant than the intrinsic record in determining the legally operative meaning of claim language.") (internal quotation marks omitted).

"The words of the claim 'are generally given their ordinary and customary meaning,' which 'is the meaning that term would have to a person of ordinary skill in the art in question at the time of the invention.'" *MeadWestVaco Corp. v. Rexam Beauty and Closures, Inc.*, 731 F.3d 1258, 1265 (Fed. Cir. 2013) (quoting *Phillips,* 415 F.3d at 1312–13). "[T]he claims themselves, both asserted and unasserted, provide substantial guidance as to the meaning of particular claim terms." *Kruse Tech. P'ship v. Volkswagen AG*, 544 F. App'x 943, 949 (Fed. Cir. 2013) (internal quotation marks omitted). Also, "[a] claim must be read in accordance with the precepts of English grammar." *Id.* (quoting *In re Hyatt,* 708 F.2d 712, 714 (Fed. Cir. 1983)).

"Idiosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification." *3M Innovative*, 725 F.3d at 1321 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1315–16). But, while courts "construe the claims in light of the specification, limitations discussed in the specification may not be read into the claims." *3M Innovative*, 725 F.3d at 1321 (citing *Intervet Inc. v. Merial Ltd.,* 617 F.3d 1282, 1287 (Fed. Cir. 2010); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009)). "Courts may rely on dictionary definitions when construing claim terms," but only "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *3M Innovative*, 725 F.3d at 1321.

"There are only two exceptions to th[e] general rule [that words of a claim are generally given their ordinary and customary meaning]: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                               Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics*, 90 F.3d at 1580). "To act as a lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term.'" *Sumitomo*, 887 F.3d at 1159 (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). "However, a claim term may be clearly redefined without an explicit statement of redefinition. . . . In other words, the specification may define claim terms 'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent documents.'" *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (quoting *Vitronics*, 90 F.3d at 1582, 1584 n.6).

### III. DISCUSSION

The Court addresses the disputed terms in the order in which they appear in the parties' Joint Claim Construction Statements.

#### A. "volatilizing a solvent"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "Converting a portion of solvent to a gas" | "converting a solvent to a gas" |

The parties both agree that "volatilizing" means converting to gas. They disagree over whether, in context, "volatilizing" has a narrower meaning.

Plaintiff relies on the Patent's specification, which, Plaintiff argues, demonstrates that "the 'volatilizing' step does not convert all solvent present in the byproduct of *Bixa orellana* seed components into gas." (*See* Pl.'s Opening at 7–8, Doc. 85.) In support, Plaintiff points to instances "throughout the specification that the claim term 'volatilizing' suggests that not all solvent is converted into a gas during the volatilization step." (*Id.* at 8.) In one such instance, the specification reads, "[s]olvent, such as water

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                    Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
         et al.

or an organic solvent, such as hexane, acetone or an alcohol, is *volatilized* from byproduct solution in evaporator 16 at a temperature and pressure *sufficient to reduce the solvent content* to a range of between about 0.05 weight percent and about 0.5 weight percent." (*Id.* at 7 (quoting '453 Patent at 4:14–18, Doc. 42-1) (emphasis in Pl.'s Opening).)

In response, Defendants argue that (1) Plaintiff wrongly assumes that Defendants' construction *requires* that all of the solvent be volatilized, and—in what is essentially another way to frame (1)—that (2) Plaintiff wrongly assumes that if the specification explains that "'not all' of the solvent is volatilized in each case, the term must be construed to require only 'a portion of' that solvent to be volatilized." (*See* Defs.' Resp. at 2, Doc. 89.)

The Court finds that Plaintiff's proposed construction would describe the *result* of the process of "volatilizing" as applied rather than the process itself, an odd construction for a verb. At the claim construction hearing, Plaintiff expressed concern that, in construing this term as they did, Defendants intended to convey that the process of volatilizing results in the entirety of the solvent getting converted to gas. But the claim construction process is not aimed at assuaging parties' concerns about opposing parties' litigation tactics. Rather, "[a] claim construction order [] dictates how the court will instruct the jury regarding a claim's scope." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008). And, here, the Court finds that nothing in the Patent's specification supports Plaintiff's proposed construction.

In total, including the above-quoted example, Plaintiff offers three instances in which "the specification . . . informs, with reasonable certainty, those skilled in the art that the 'volatilizing' step does not convert all solvent present . . . into gas" (*see* Pl.'s Opening at 7–8, Doc. 85):

- "Solvent, such as water or an organic solvent, such as hexane, acetone, or an alcohol, is *volatilized* from byproduct solution in evaporator 16 at a temperature and pressure *sufficient to reduce the solvent content* to a range of between about 0.05 weight percent and about 0.5 weight percent." (*Id.* at 7 (quoting '453 Patent at 4:14–18, Doc. 42-1) (emphasis in Pl.'s Opening).)

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                               Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

___

- "Byproduct oil is obtained following *the removal of most of the solvent* from the portion of the extract that is largely soluble after the separation of the bulk of the annatto color." (Pl.'s Opening at 7–8 (quoting '453 Patent at 6:1–4) (emphasis in Pl.'s Opening).)
- "Annatto oil byproduct obtained from the commercial solvent extraction of annatto [s]eeds was processed in a manner similar to Example 1. After *the removal of most of the residual solvent* on a rotary evaporator (5 percent), this material was subjected to centrifugal high vacuum distillation as follows. . . ." (Pl.'s Opening at 8 (quoting '453 Patent at 7:65–8:3) (emphasis in Pl.'s Opening).)

None of these examples support Plaintiff's proposed construction. In the first example, the *temperature and pressure* at which the solvent is volatilized—converted to gas— determine the weight percent of the resulting solvent content. The second and third examples again describe the result of the volatilization process: just because "most of the solvent" was removed does not mean that the volatilization process was *ex ante* aimed only at "most of the solvent." Indeed, whatever the result, the process of volatilizing a solvent as described throughout the Patent is aimed at a *whole* rather than a *portion* of solvent. Plaintiff has not shown the Court otherwise.

Accordingly, the Court adopts Defendants' proposed construction: **"converting a solvent to a gas."**

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                              Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

### B. "A byproduct solution of *Bixa orellana* seed components"

| **Plaintiff's Proposed Construction** | **Defendants' Proposed Construction** |
|---|---|
| "A solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves, and can include oil-soluble annatto color or annatto oil." | "the oily phase obtained after removing the bulk of annatto color from *Bixa orellana* seed components, which has a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves, and which can be used as a source for the recovery of tocotrienol and geranylgeraniol." Otherwise, the term is indefinite under pre-AIA 35 U.S.C. § 112, ¶ 2. |

Defendants aptly describe the dispute about this claim term as follows: "[Plaintiff]'s discussion of the 'byproduct solution' term begins with a point on which all parties agree: 'In so defining the claim term [at issue,] the inventor acted as his own lexicographer.' The parties disagree, however, on whether the inventors provided definitional language for this term in just one portion of the patent ([Plaintiff]) or in several ([Defendants])." (Defs.' Resp. at 5, Doc. 89 (internal citation omitted).)

Plaintiff focuses its argument on the specification's most explicit definition of the term: "A 'byproduct solution of *Bixa orellana* seed components' is **defined herein** as a solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves." ('453 Patent at 3:53–58, Doc. 42-1 (bolding added).) In so defining this claim term, Plaintiff argues, Plaintiff has acted as its own lexicographer, meaning that the Court must defer to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                        Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

Plaintiff's above-quoted construction.  (*See* Pl.'s Opening at 9, Doc. 85.)  Plaintiff also argues that the Court has already construed this term in ruling on Defendants' Motion to Dismiss (*see id.* at 10–11), in which ruling the Court *noted*—rather than "found," as Plaintiff puts it—that "A '[b]yproduct solution[] of *Bixa orellana* seed[s]' is defined in the '453 Patent as 'a solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves.'" (Order on Mot. to Dismiss at 2, Doc. 72).  Finally, Plaintiff argues that Defendants' proposed construction is an impermissible attempt "to import limitations from the written description into the claims."  (Pl.'s Resp. at 4, Doc. 88.)

Defendants, for their part, point out that the '453 Patent defines this claim term in more than one place, citing specifically the way the term is defined under the "Summary of the Invention" section of the Patent (*see* Defs.' Opening at 9–10, Doc. 84):

> A source of material known as a byproduct solution of *Bixa orellana* seed components, which is obtained as an oily material after removing the bulk of annatto color, is removed from either the aqueous extract or solvent extract of annatto seeds.  Further, this byproduct contains a tocotrienol component and a geranylgeraniol component and can be used as a source for the recovery of a tocotrienol component and a geranylgeraniol component.

('453 Patent at 2:8–15, Doc. 42-1.)  This additional definition, Defendants argue, "is also 'definitional language' that should be accounted for in the construction."  (Defs.' Opening at 10, Doc. 84.)  In support of their argument, Defendants also point out that the inclusion of this "definitional language" specifically under the "Summary of the Invention" portion of the Patent renders the additional language especially important to heed.  (*Id.* at 11.)  Finally, Defendants turn to (1) language from the Patent's provisional application; (2) international prosecution history; and (3) a deposition of one of the Patent's inventors for additional support.  (*Id.* at 12–16.)

Here, too, the Court finds Defendants' arguments more persuasive.

First, the Court has certainly not already decided this issue.  The language Plaintiff points to in the Court's Order on Defendants' Motion to Dismiss is under the *background*

**CIVIL MINUTES – GENERAL**                                                                                                 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                           Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

section of the Order.  (*See* Order on Mot. to Dismiss at 1–2, Doc. 72.)  Besides, even if that language fell under the analysis portion of the Order, Plaintiff's interpretation of the language is wishful.  The sentence "A '[b]yproduct solution[] of *Bixa orellana* seed[s]' *is defined in the '453 Patent as . . .*" (*id.* at 2 (emphasis added)) merely describes the Patent's explicit definition of the claim term currently at issue.  Indeed, the Court could have instead said, "a byproduct solution of *Bixa orellana* seeds *should be construed as . . .*"  But the Court did not do so.  More importantly, and as Plaintiff points out (*see* Pl.'s Opening at 10, 10 n.1, Doc. 85), the Court in its Order on Defendants' Motion to Dismiss was examining the '453 Patent's subject-matter eligibility under 35 U.S.C. § 101, not construing the Patent's claims.  (*See generally* Order on Mot. to Dismiss, Doc. 72)  A different standard applies at the subject-matter-eligibility determination stage.  At this, the claim construction phase, "[d]istrict courts . . . do not assign terms their broadest reasonable interpretation.  Instead, district courts seek out the correct construction—the construction that most accurately delineates the scope of the claimed invention—under the framework laid out in *Phillips*."  *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 734, 740 (Fed. Cir. 2016).[2]

      Second, Plaintiff's counterargument that "Defendants' proposed interpretation . . . improperly limits the scope of the [byproduct solution] term" exclusively to oily byproduct solutions (*see* Pl.'s Opening at 11, Doc. 85) is at odds with evidence Defendants point to from '453's provisional application, which refers to the byproduct solution as a byproduct *oil* (*See* Provisional Patent Appl. at 4–5, Ex. 3 to Defs.' Opening, Doc. 84-4).  *Cf. MPHJ Tech. Investments, LLC v. Ricoh Americas Corp.*, 847 F.3d 1363, 1369 (Fed. Cir. 2017) ("In this case, it is the deletion from the '798 Provisional application that contributes understanding of the intended scope of the final application.").  At the claim construction hearing, Plaintiff argued that Defendants' proposed construction reads out of the Patent embodiments involving aqueous solutions/extracts, like the embodiment captured by claim 2.  But, crucially, Plaintiff was unable to point to a single embodiment in which the byproduct solution is *itself* aqueous

---

[2] Not to mention that the Court's Order on Defendants' Motion to Dismiss does not even employ the "broadest reasonable interpretation" standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                              Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
       et al.

rather than oily.  Relatedly, Plaintiff also attempted at the hearing to frame the first paragraph of the Summary of the Invention section of the Patent, in which "byproduct solution" is defined, as describing a single embodiment.  The Court finds this argument unsupported.  Other paragraphs in the Summary of the Invention section make abundantly clear when they speak of specific embodiments.  (*See, e.g.*, '453 Patent at 2:21, Doc. 42-1 ("In one embodiment . . ."); *id.* at 2:26 ("In another embodiment . . ."); *id.* at 2:37 ("In still another embodiment . . .").)  The first paragraph, by contrast, does not do so, and in fact (naturally) speaks in general terms.

      In guiding courts on how to determine whether a patentee has acted as her own lexicographer, the Federal Circuit has rejected "rigid formalism."  *See Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) ("Astrazeneca seems to suggest that lexicography requires a statement in the form 'I define _____ to mean _____,' but such rigid formalism is not required.").  Here, the Court faces a situation in which the patentee has provided an explicit indication of intent to define "byproduct solution," but that definition does not appear to comport with the way "byproduct solution" is defined elsewhere in the patent.  But "rigid formalism" does not encompass only one form of rigidity.  And, textually speaking, "defined herein" (which precedes the explicit definition of "byproduct solution") means defined within the Patent rather than "defined in the next sentence."  Indeed, disregarding the first sentence of the "Summary of the Invention" portion of the Patent in construing "byproduct solution" would be odd.  Therefore, the proper construction for "byproduct solution" should reconcile the construction Plaintiff has proposed with the way "byproduct solution" is implicitly defined under the "Summary of the Invention" portion of the Patent.

      *Techno View IP, Inc. v. Oculus VR, LLC*, No. CV 17-386-VAC-CJB, 2018 WL 4141032 (D. Del. Aug. 30, 2018), which Defendants cite in support of their arguments, is instructive here.  There, as to the term "videogame," the "Plaintiff's proposed construction [] derived from the definition set out in the 'Background of the Invention' portion of the specification" while "Defendants' proposed construction incorporate[d] this language, but also include[d] additional language found in the 'Detailed Description of the Invention' section of the specification[.]"  *Id.* at *3.  The Magistrate Judge

**CIVIL MINUTES – GENERAL**                                                                                          **11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                        Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

recommended that construction of the claim term at issue include language from both sections of the specification because "it does not make sense to omit definitional language found in the part of the patent that describes, in detail, the disclosed invention." *Id.* at *4.  Although the Court is certainly not bound by the opinion in *Techno View*, the Court finds that the case's logic applies here, too.

Defendants' proposed construction does "embrace both descriptions [of byproduct solution] set forth in the patent[.]" (*See* Defs.' Opening at 10, Doc. 84.)  However, the Court disagrees with the way in which Defendants combine the descriptions in their proposed construction.  According to Defendants, the two descriptions reveal three key aspects of the byproduct solution that should be included in the construction of the term: (1) "the byproduct solution is 'the oily phase obtained after removing the bulk of annatto color from *Bixa orellana* seed components,'" (2) it "has a concentration of annatto colorant significantly reduced from that of *Bixa Orellana* seeds themselves," and (3) it "can be used as a source for the recovery of tocotrienol and geranylgeraniol." (*Id.* at 11 (quoting '453 Patent at 2:9–12, 3:53–58, 2:13–16).)  The Court concludes the third element is not properly part of the term's construction.

Although the relevant language contained in the Summary of the Invention portion of the Patent does include information about tocotrienol and geranylgeraniol, Defendants do not explain how they distilled that language into the third key aspect they articulate.  The applicable portion of the Summary of the Invention reads: "Further, this byproduct contains a tocotrienol component and a geranylgeraniol component and can be used as a source for the recovery of a tocotrienol component and a geranylgeraniol component." ('453 Patent at 2:12–15, Doc. 42-1)  Defendants summarize this as "[the byproduct solution] can be used as a source for the recovery of tocotrienol and geranylgeraniol," without explaining their omission of the remaining language. (*See* Defs.' Opening at 11, Doc. 84 (internal quotation marks omitted).)

The Court finds that the first part of the applicable portion ("this byproduct contains a tocotrienol component and a geranylgeraniol component") is definitional while the second part ("can be used as a source for the recovery of a tocotrienol component and a geranylgeraniol component") is not.  Just because the Summary of the Invention section of the Patent contains definitional language about "byproduct solution" does not mean

**CIVIL MINUTES – GENERAL**                                                                                              12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

that every sentence in that section is necessarily definitional. And, while the first part of the above-quoted portion describes a characteristic, or feature, of the byproduct solution, the second part describes the way it is used in the invention, which is not necessary to define what the solution *is*.

Accordingly, the Court adopts its own construction of the term "byproduct solution." Like Defendants' proposed construction, the Court's construction combines both definitions set forth in the Patent. Unlike Defendants' proposed construction, the Court's construction stays true to the Patent's language and does not include language about the way the solution is used. The Court construes "byproduct solution" as follows: **"a solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves and containing a tocotrienol component and a geranylgeraniol component, which solution is obtained as an oily material after removing the bulk of annatto color from the seeds."**

C. "tocotrienol component" and "geranylgeraniol component"

| Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| **"tocotrienol component"** | Plain and ordinary meaning. | This term is indefinite under pre-AIA 35 U.S.C. § 112, ¶ 2. |
| **"geranylgeraniol component"** | Plain and ordinary meaning. | This term is indefinite under pre-AIA 35 U.S.C. § 112, ¶ 2. |

With respect to these two terms, the parties dispute whether, in context, the terms make any sense at all, or so much sense that the Court should construe them based on their "plain and ordinary meaning" to a person of ordinary skill in the art. The Court analyzes both terms together because the dispute turns on the meaning of the word "component."

Plaintiff advances a "common-sense" argument, directing the Court to examine the meaning of these two claim terms in the context of the numerous instances in which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                                            Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
         et al.

they come up in the specification.  According to Plaintiff, the patent makes clear and "logic dictates" that "component"—here and more generally—means part of a whole. (*See* Pl.'s Opening at 16, Doc. 85.)  In other words, to say that, for instance, "both tocotrienols and geranylgeraniol are components of the seed of *Bixa Orellana*," means that "*Bixa orellana* seeds comprise both tocotrienols and geranylgeraniol." (*Id.*)

Defendants argue that a person of ordinary skill in the art would not be able "to determine with reasonable certainty (a) the meaning of 'tocotrienol component' from reading the specification; (b) what the difference is between the confusingly similar terms 'tocotrienol component' and 'tocotrienol composition'; and (c) the chemical makeup of the 'tocotrienol component' as compared to the 'tocotrienol composition' and 'tocotrienol distillate.'" (Defs.' Opening at 17, Doc. 84.)  Defendants make the same arguments with respect to "geranylgeraniol component." (*See id.* at 22.)  Defendants' expert, Dr. Carrier, declares that the "term 'component' as it is used in the '453 Patent is not a term of art." (Carrier Decl. ¶ 44, Doc. 84-16.)[3]  She explains, "in the field of natural products preparation, . . . 'component' is used to describe an overall class of compounds, such as protein or lipids[.]" (*Id.* at ¶ 45.)  Dr. Carrier also declares in support of Defendants' argument that "there are at least four specific tocotrienol compounds (alpha ($\alpha$)-tocotrienol, beta ($\beta$)-tocotrienol, delta ($\delta$)-tocotrienol, and gamma ($\gamma$)-tocotrienol), yet the patent does not make clear which are present in the 'tocotrienol component' and at what concentrations." (Defs.' Opening at 21, Doc. 84 (citing Carrier Decl. ¶¶ 47–49).)

The Court finds that Plaintiff has the better argument.  "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood

---

[3] Plaintiff and Defendants disagree on what level of skill in the art is ordinary in the context of this patent (in Plaintiff's view, Dr. Carrier would be "overly" skilled).  (*See* Pl.'s Resp. at 1, Doc. 88.)  But Plaintiff does not proffer its own expert declaration, leaving the Court without a point of reference as to what other individuals with ordinary skill in the art—whether under Plaintiff's or Defendants' definition of ordinary—think about the claim terms at issue here.  Still, the Court finds that the terms on which Dr. Carrier opines—"tocotrienol component," "geranylgeraniol component," and "bottoms stream"—can be construed based on the intrinsic evidence before the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE　　　　　　　　　　　　　Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

words." *Phillips*, 415 F.3d at 1314. That is precisely the case here. Plaintiff is right that Defendants' arguments strain credulity.[4] (*See* Pl.'s Resp. at 8, Doc. 88.) And both of Defendants' expert's arguments make sense theoretically, but not in context. Even if Dr. Carrier is right about the meaning of "component" in the field of chemical engineering (or "natural products preparation"), a sophisticated chemical engineer—like a lay judge—is unlikely to be confused by the term "component" as used in the claims at issue. An "overall class of compounds" is simply not present in the process this Patent describes—and certainly not in the individual stages of the process covered by the Patent's claims. As for Dr. Carrier's second argument: even though the Patent may not describe which specific tocotrienol compounds "are present in the 'tocotrienol component' and at what concentrations" (Defs.' Opening at 21, Doc. 84 (citing Carrier Decl. ¶¶ 47–49, Doc. 84-16)), one does not need to know that to follow the "instructions" set forth in the claims.

The Court therefore adopts Plaintiff's proposed construction for both terms: **no construction necessary, plain and ordinary meaning.**

D. "bottoms stream"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| The residue that remains after distillation of the tocotrienol component from the tocotrienol composition. | This term is indefinite under pre-AIA 35 U.S.C. § 112, ¶ 2. |

---

[4] For this reason, the Court does not rely on the inventor deposition Defendants proffer in support of their arguments. A more important reason is that the Federal Circuit "has often repeated that inventor testimony is of little probative value for purposes of claim construction." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 n.5 (Fed. Cir. 2003) (citing *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                          Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
       et al.

In disagreeing over whether the term "bottoms stream" is indefinite, Plaintiff and Defendants disagree over the role of the word "stream" in the term—whether it serves an independent purpose and, if not, whether its inclusion renders "bottoms stream" indefinite as a whole.

In its papers, Plaintiff points to the specification's use of "bottoms" and the figure accompanying the patent[5] (copied and marked up below) to argue that the term "bottoms stream" makes intuitive sense. With respect to the figure, Plaintiff argues, "a person of ordinary skill in the art would interpret the claim term 'bottoms stream' as 'the residue that remains after distillation of the tocotrienol component from the tocotrienol composition' collected from evaporator 50 which travels through line 70, as a bottoms stream, and reaches receiver 72 as described in the specification." (Pl.'s Opening at 18–19, Doc. 85.)



---

[5] The figure shows "a schematic representation of apparatus that can be employed to conduct the method of the invention." ('453 Patent at 2:60–62, Doc. 42-1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDEDate: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd et al.

Defendants point out that Plaintiff's "proposed construction and accompanying support ignore the term's inclusion of the word 'stream,' essentially reading that word out of the claim." (Defs.' Opening at 23, Doc. 84.) And, they argue, "it is this word ('stream') that renders the term indefinite" because "bottoms *stream*," as opposed to just "bottoms," fails to provide any guidance on how to determine "whether a 'bottoms stream' has been formed." (*See id.* at 23–24.) In support of their argument, Defendants highlight the fact that "bottoms stream" is neither used nor defined anywhere in the specification. (*Id.*)

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty. The definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). The Federal Circuit has held that "a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, i.e., it is not insolubly ambiguous, it is not invalid for indefiniteness." *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004). While Defendants are right that the inclusion of the word "stream" does not make much sense, finding indefiniteness here would be quite drastic. *Cf. Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 113 (holding that invalidity defenses must be proven by clear and convincing evidence). Defendants admitted at the hearing that they understand the meaning of "bottoms." Defendants do not show the Court, much less by clear and convincing evidence, why the addition of a single modifier to "bottoms"—and a self-explanatory modifier like "stream" at that—renders the entire term indefinite.

Defendants do cite two cases in support of their indefiniteness argument. Both, however, are distinguishable. In *Kaavo Inc. v. Amazon.com Inc.*, No. CV 14-353-LPS-CJB, 2018 WL 3025040 (D. Del. June 18, 2018), the court agreed with the defendants that "[needs analysis algorithm] [wa]s indefinite because the only two places it [was] mentioned in the specification d[id] not provide any guidance on what the term mean[t]." *Id.* at *3. Here, too, the term "bottoms stream" is defined nowhere in the Patent's specification. But in *Kaavo*, the court also reasoned that (1) the term had "no plain and ordinary meaning in the relevant art" and (2) the two uses of the term in the patent's specification offered "insufficient guidance to allow a POSA to assess what 'needs' or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                      Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
       et al.

'analysis' is covered by the claimed 'algorithm,' or what specific algorithm could be used to determine the user defined provisioning information" in some embodiments.  *See id.* Here, the term "stream," standing alone, requires no construction because it has a common-sense definition.  Additionally, in the patent at issue in *Kaavo*, the "needs analysis algorithm" was necessary to *determine* something, namely "user defined provisioning information."  *Id.*  Here, by contrast, "bottoms stream" determines nothing. Rather, the claim at issue that contains the disputed term, claim 10, describes "[t]he method of claim **7**, further including the step of distilling a tocotrienol component of said tocotrienol composition *to form a tocotrienol distillate and a bottoms stream*."  ('453 Patent at 8:59–61, Doc. 42-1 (formatting in original, emphasis added).)  In other words, "bottoms stream" is a result—a residue—which, paired with the definition of "bottoms" in the Patent, should "inform those skilled in the art about the scope of the invention with *reasonable certainty*."  *Nautilus*, 572 U.S. at 910 (emphasis added).

In *Checkpoint Sys., Inc. v. Hangzhou Century Co.*, No. 5:11CV1199, 2014 WL 4930686 (N.D. Ohio Oct. 1, 2014), contrary to Defendants' characterization of the holding, the court found the claim term "first structure" indefinite not only because "first structure" was not mentioned in the specification.  Rather, the court also found determinatively problematic that "[i]ndividual elements of the 'first structure' only appear[ed] in dependent claims, which are presumed [based on the doctrine of claim differentiation] not to include all of the elements, and no argument ha[d] been made to rebut that presumption."  *Id.* at *6.  "Even where dependent claims mention[ed] individual elements of the 'first structure,' the specification contradict[ed] their components."  *Id.*  The Court is not faced with the same problem here.

According to the McGraw-Hill Dictionary of Scientific and Technical Terms, "bottoms" means "[r]esidual fractions that remain at the bottom of a fractionating tower following distillation of the lighter components."  Plaintiff's proposed construction would therefore make sense if the Court were tasked with construing "bottoms" rather than "bottoms stream."  *Cf. Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored[.]").  At the claim construction hearing, Plaintiff clarified and confirmed to the Court that the process the Patent captures is continuous in nature, which is where the inspiration for "stream" came from—liquid is "streaming out" throughout

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-02201-JLS-JDE                                      Date: January 10, 2020
Title: American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd
       et al.

the process. Indeed, as Plaintiff points out in its papers, the figure accompanying the '453 Patent, copied above, and the description that goes along with the figure capture this movement. (*See* '453 Patent at 5:43–46 ("Bottoms are collected from evaporator **50** through line **70** in receiver **72**. . .") (formatting in original).)

      Therefore, because the parties agree on the construction of the word "bottoms" and the Court finds that "stream" requires no construction, the Court finds that, combined, **"bottoms stream" requires no construction**.

      Initials of Preparer:  rrp