**ATTORNEYS' EYES ONLY**

GARY HNATH *(admitted pro hac vice)*
*ghnath@mayerbrown.com*
BRYAN NESE *(admitted pro hac vice)*
*bnese@mayerbrown.com*
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone:  (202) 263-3000
Facsimile:   (202) 263-3001

DOUGLAS A. SMITH (SBN 290598)
*dougsmith@mayerbrown.com*
MAYER BROWN LLP
350 S. Grand Ave., 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Attorneys for Defendants Beijing Gingko Group Biological
Technology Co., Ltd.; Jiangsu Xixin Vitamin Co., Ltd.; Jinke
Group USA Inc. d/b/a Beijing Gingko Group North America; and
Kyäni, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN RIVER NUTRITION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BEIJING GINGKO GROUP BIOLOGICAL TECHNOLOGY CO., LTD., et al.,<br><br>Defendants. | Case No. 8:18-cv-02201-FLA (JDEx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRESUMPTION OF INFRINGEMENT AND BURDEN SHIFTING TO DEFENDANTS UNDER 35 U.S.C. § 295**<br><br>Date:     May 28, 2021<br>Time:    1:30 p.m.<br>Place:    Courtroom 6B<br>Honorable Fernando L. Aenlle-Rocha<br><br>Am. Complaint Filed: Mar. 4, 2019 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

**ATTORNEYS' EYES ONLY**

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................1

II.  SECTION 295: A RARELY USED PUNITIVE TOOL ...............................2

III.  ARGUMENT.......................................................................................4

    A.  Plaintiff Cannot Credibly Claim that It Has Been Unable to Determine the Process Used by BGG to Manufacture Tocotrienols........................4

        1.  Defendants' Forthcoming Behavior During Discovery Alone Defeats Plaintiff's Motion. ...........................................................5

        2.  Plaintiff's Own Allegations Establish That It Is Fully Capable of Ascertaining the Process Used by BGG. ....................................10

        3.  Plaintiff Has Not Been Diligent During Discovery...................12

    B.  Plaintiff Has Not Shown a Substantial Likelihood that the Accused Tocotrienol Product Was Made by the Patented Process. ...................13

        1.  The "███████████████████████████," the "████████ ████████████████" the "September 2015 SIDI flowchart," and the "March 2018 SIDI flowchart" do not describe any process ever used by BGG to manufacture annatto tocotrienol. .................................................................................14

        2.  For the two processes actually used by BGG, Plaintiff ignores the non-infringement evidence provided by Defendants' expert. .................................................................................................20

    C.  By Failing to Invoke § 295 Until Late Into this Case, Plaintiff Has Waived Its Right to this Provision........................................................23

    D.  Responses to Plaintiff's Irrelevant Arguments ...................................23

IV.  CONCLUSION .................................................................................24

- i -

**ATTORNEYS' EYES ONLY**

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*CNET Networks, Inc. v. Etilize, Inc.*,
  No. C 06-5378 MHP, 2008 U.S. Dist. LEXIS 66737 (N.D. Cal.
  Sept. 2, 2008)............................................................................................3, 7

*Creative Compounds, LLC v. Starmark Labs.*,
  651 F.3d 1303 (Fed. Cir. 2011) ...............................................................2, 3, 20

*Janseen Prods., L.P. v. Lupin Ltd.*,
  No. 2:10-cv-05954 (WHW), 2014 U.S. Dist. LEXIS 1555248
  (D.N.J. Mar. 12, 2014).............................................................................3, 7

*Kowalski v. Mommy Gina Tuna Res.*,
  No. 05-00679 BMK, 2008 U.S. Dist. LEXIS 58357 (D. Hawaii
  Aug. 1, 2008) ...........................................................................................3, 7

*LG Display Co., Ltd. v. AU Optronics Corp.*,
  709 F. Supp. 2d 311 (D. Del. 2010) ........................................................4, 9

*Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l
  Trade Comm'n*,
  224 F.3d 1356 (Fed. Cir. 2000) ...............................................................3, 4, 7

*Revolaze LLC v. J.C. Penney Corp.*,
  No. 2:19-cv-00043-JRG, 2020 WL 2220158 (E.D. Tex. May 6,
  2020)........................................................................................................23

*Syngenta Crop Protection, LLC v. Wildwood, LLC*,
  No. 1:15-CV-274, 2017 WL 1133378 (M.D.N.C. Mar. 24, 2017)...................3, 7

**Statutes**

35 U.S.C. § 295.................................................................................*passim*

**Other Authorities**

Notice and Request ...........................................................................8, 12

Notice of Rule 30(b)(6) .....................................................................12

**ATTORNEYS' EYES ONLY**

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| 1 | Defendants' June 14, 2020 Supplement Responses to Plaintiff's First Set of Interrogatories |
| 2 | BGG China Batch Records (2017 Production Run Batch Record, BGG0014900-990) |
| 3 | Plaintiff's October 21, 2019 First Set of Interrogatories to Defendants |
| 4 | Plaintiff's May 28, 2020 Notice of Rule 30(b)(6) Deposition of BGG China |
| 5 | Plaintiff's September 22, 2020 Notice and Request of In-Person and Remote Inspection of Defendants' Manufacturing Plant |
| 6 | Excerpts from the Deposition Transcript of Dr. Yanmei Li (Vol. III) |
| 7 | Excerpts from the Deposition Transcript of Chunhua Li |
| 8 | Excerpts from the Deposition Transcript of Scott Seedall |
| 9 | Excerpts from the Deposition Transcript of Dr. Yanmei Li (Vol. I) |
| 10 | Supplemental Expert Report of Dr. Sean O'Keefe (served February 14, 2021) |
| 11 | May 3, 2021 Robert Thornburg email to counsel for Defendants Re Meet and Confer on Summary Judgment Briefing Schedule |
| 12 | Excerpts from the Deposition Transcript of Dr. Lixin Ding |
| 13 | Excerpts from the Deposition Transcript of Dr. Barrie Tan |
| 14 | Declaration of Dr. Yanmei Li In Support of Defendants' Opposition to Plaintiff's Motion for Presumption of Infringement and Burden Shifting to Defendants under 35 U.S.C. § 295 |

- 1 -

**ATTORNEYS' EYES ONLY**

## I.  INTRODUCTION

Since the outset of fact discovery, Defendant Beijing Gingko Group Biological Technology Co., Ltd. ("BGG China") has been transparent about the process it uses to produce annatto tocotrienols. BGG China produced detailed documents describing this process on June 18, 2019. It served interrogatory responses referring to those documents and describing the process on November 20, 2019, and again on June 14, 2020. It provided Plaintiff with numerous samples from a variety of points in the process (twice), and even allowed Plaintiff's representatives to conduct an in-person inspection of its manufacturing facility in October 2020 in the midst of a global pandemic. Further, Defendants made available BGG China's Chief Scientific Officer, Dr. Yanmei Li, for three days of deposition questioning regarding (among other things) BGG China's accused manufacturing process.

Despite these efforts, Plaintiff American River Nutrition, LLC contends that it is "unable to confirm the actual manufacturing process used by BGG," and feigns confusion by relying on other process documents that Defendants have consistently stated do not disclose its true process. Mem. at 22.

This is an incredible claim. Using nearly every means of discovery available under the federal rules, Defendants have provided information about the actual accused process and, in unmistakable terms, have pointed to the precise process used to produce annatto tocotrienols. That Plaintiff has inexplicably refused to accept that evidence is no reason to shift the burden of proving infringement and penalize Defendants under the seldom-invoked provisions of 35 U.S.C. § 295.

No court has ever applied § 295 in circumstances such as these, where Defendants have been forthcoming about the accused process through detailed technical documents, interrogatory responses, production samples, on-site inspections, and deposition testimony. Any one of these efforts individually is enough to reject Plaintiff's bold ask, and these efforts collectively reveal just how dubious that ask really is.

- 1 -

**ATTORNEYS' EYES ONLY**

Plaintiff's feigning ignorance about the accused process is further undermined by its forthcoming motion for summary judgment of infringement.[1] It is disingenuous for Plaintiff, on the one hand, to complain that it is "unable to confirm the actual manufacturing process used by BGG," Mem. at 22, while on the other hand, asking that the Court award it summary judgment that the process infringes.

At bottom, Plaintiff is not at all "unable" to determine what process BGG uses—it is simply unwilling to accept the substantial evidence Defendants have put forth about that actual process, which conclusively demonstrates that it does not infringe Plaintiff's patent. Defendants consistently identified the process documents that disclose their actual annatto tocotrienol manufacturing process, and thus Plaintiff's insistence on relying on other process diagrams is misguided. In reality, there is no confusion as to which documents disclose Defendants' actual process; Plaintiff just does not like the answer. For these reasons, Defendants Beijing Gingko Group Biological Technology Co., Ltd.; Jiangsu Xixin Vitamin Co., Ltd.; Jinke Group USA Inc. d/b/a Beijing Gingko Group North America; and Kyäni, Inc. respectfully request that the Court deny Plaintiff's motion to burden shift under § 295.

Moreover, Defendants should be reimbursed their attorneys' fees for having to respond to such a frivolous motion.

## II.   SECTION 295: A RARELY USED PUNITIVE TOOL

Section 295 is a rarely applied provision that compels an accused infringer to either "reveal [its] process or face the presumption of infringement." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1314-15 (Fed. Cir. 2011).

In *Creative Compounds*, for example, the patentee sought information on the accused infringer's manufacturing process, but the accused infringer refused to

---

[1] Plaintiff made clear its intent to move for summary judgment of infringement during a March 2021 meet and confer, as well as in email correspondence throughout April and May 2021.

- 2 -

**ATTORNEYS' EYES ONLY**

produce any documents describing that process. *Id.* at 1315. In addition, the accused infringer there "offered no argument as to why or how the process employed to create the product does not infringe." *Id.* (quotations/citations removed). Faced with a defendant who plainly refused to be forthcoming about its accused process, the *Creative Compounds* court concluded that § 295 was a proper penalty. *See id.*

As shown by *Creative Compounds*, § 295 has a "significant punitive element" and is therefore reserved for extreme cases involving uncooperative defendants. *Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1360 (Fed. Cir. 2000). For instance, it applies when an accused infringer has "thwarted" a patentee's attempts to take discovery on the accused process. *Syngenta Crop Protection, LLC v. Wildwood, LLC*, No. 1:15-CV-274, 2017 WL 1133378, at *9, *10 (M.D.N.C. Mar. 24, 2017) (noting defendant's failure to make production records available in discovery). It also is used when a party displays a "systematic refusal to cooperate" in discovery. *Janseen Prods., L.P. v. Lupin Ltd.*, No. 2:10-cv-05954 (WHW), 2014 U.S. Dist. LEXIS 1555248, at *113-14 (D.N.J. Mar. 12, 2014).

On the other hand, when an accused infringer is forthcoming and complies with a patentee's discovery requests, courts do not apply § 295. *See id.* at *118 (declining to apply § 295 when "it cannot be said that [defendants] have been non-cooperative defendants thwarting [the patentee's] efforts to discover this information" and when defendants "complied with discovery in this case to the extent they have been able"); *CNET Networks, Inc. v. Etilize, Inc.*, No. C 06-5378 MHP, 2008 U.S. Dist. LEXIS 66737, at *40 (N.D. Cal. Sept. 2, 2008) (denying the application of § 295 when defendant produced source code, which allowed plaintiff "to determine the process actually used in the production of the allegedly infringing product"); *Kowalski v. Mommy Gina Tuna Res.*, No. 05-00679 BMK, 2008 U.S. Dist. LEXIS 58357, at *4 (D. Hawaii Aug. 1, 2008) (declining to apply § 295 because plaintiff had inspected several active production facilities, despite not having access to other, defunct

- 3 -

**ATTORNEYS' EYES ONLY**

1  processing facilities); *see also LG Display Co., Ltd. v. AU Optronics Corp.*, 709 F.

2  Supp. 2d 311, 337 n.2 (D. Del. 2010) (declining to apply § 295, even though accused

3  infringer did not produce documents describing the accused process, because it was

4  not required to do so based on patentee's discovery requests).

5      The statute itself carries two requirements, both of which the patentee must

6  prove by a preponderance of the evidence: "(1) that a substantial likelihood exists that

7  the product was made by the patented process, and (2) that the plaintiff has made a

8  reasonable effort to determine the process actually used in the production of the

9  product and was unable to so determine." 35 U.S.C. § 295.

10      "Whether each of the two prongs of § 295 has been met is not determined

11  subjectively by the plaintiff, but is determined objectively by the court." *Nutrinova*,

12  224 F.3d at 1360.

13  **III.   ARGUMENT**

14      Despite Plaintiff's subjective unwillingness to accept the evidence Defendants

15  have presented about the accused process, an objective view of the facts here readily

16  demonstrates that § 295 does not apply.

17      Indeed, applying § 295 under these facts would drastically expand this statute.

18  One would be hard-pressed to find a situation where the burden-shifting provision

19  would <u>not</u> apply if it were enforced in a situation where, as here, the accused infringer

20  has produced documents describing the process, provided interrogatory responses

21  doing the same, sent numerous production samples to the patentee for testing, opened

22  its facility to an inspection by the patentee's representatives, and offered a

23  knowledgeable witness to sit for a three-day deposition to testify about the process.

24      No court faced with these facts has applied § 295, and Plaintiff's brief fails to

25  offer a single case that comes anywhere close. Its requested relief should be denied.

26      **A.   <u>Plaintiff Cannot Credibly Claim that It Has Been Unable to</u>**

27      **<u>Determine the Process Used by BGG to Manufacture Tocotrienols.</u>**

28  Section 295 plainly does not apply here, where Defendants have revealed every

- 4 -

**ATTORNEYS' EYES ONLY**

detail of the accused process through every conceivable form of discovery.

First, through document productions, interrogatory responses, deposition testimony, two productions of samples, and an on-site inspection, Defendants have been entirely cooperative and forthcoming about every aspect of the accused process. Second, Plaintiff's own briefing shows that it actually <u>does</u> know the details of the accused process. And, third, Plaintiff has not made "reasonable efforts" to ascertain the process because it has been dilatory throughout discovery, as this Court has already recognized.

For these reasons, Plaintiff has not satisfied its burden of showing that § 295 applies, and its motion must be denied.

> 1.   <u>Defendants' Forthcoming Behavior During Discovery Alone Defeats Plaintiff's Motion.</u>

Plaintiff does not and cannot dispute the following facts.

- On June 18, 2019, in their very first document production in this litigation, Defendants produced documents describing BGG's process for producing annatto tocotrienol (*i.e.*, BGG0000009-20 (Dkt. 118-1); BGG0000021-37 (Dkt. 118-2)). *See* Dkt. 112-15 (June 18, 2019 service email).

- On November 20, 2019, and again on June 14, 2020, Defendants provided detailed responses to Plaintiff's first set of interrogatories that described BGG China's process for producing annatto tocotrienol. Dkt. 120-2 (Nov. 2019 Interrogatory Resps.) at 11-12, 14-17 (responses to Interrogatory Nos. 6, 7, and 10-13, referring to BGG0000009-37); Ex. 1[2] (June 2020 Supplement Responses) at 9-24 (supplemental response to Interrogatory No. 6,

---

[2] Unless otherwise noted, all references to "Ex. [#]" refer to the Declaration of Ryan Babcock, submitted concurrently with this opposition.

- 5 -

**ATTORNEYS' EYES ONLY**

describing the details of BGG's process).

- In August and September 2020, in response to Plaintiff's later document requests, Defendants produced detailed batch records, totaling nearly 1000 pages, verifying the use of the processes described at BGG0000009-37. Ex. 2 (provided here as an example, are the September 2017 production records for production batch Nos. AN1709016 through AN1709029, which show the same sequence of steps as disclosed in the production process documents).[3]

- On October 20, 2020, pursuant to a protocol agreed to by Plaintiff, BGG China permitted Plaintiff to conduct a four-hour on-site inspection, during a production run, of the mainland-China production facility where it manufactures annatto tocotrienols. Dkt. 101 at 5 (describing inspection protocol); *see also* Mem. at 7-8 (describing inspection), 18 (describing what "ARN's counsel and Dr. Rockstraw observed" during the inspection).

- From November 5-7, 2020, Plaintiff deposed Dr. Yanmei Li, BGG China's Chief Scientific Officer and the individual among all of Defendants' witnesses most knowledgeable about the process BGG China uses. *See* Ex. 14 (Li Decl.) at ¶ 4.

Plaintiff has not provided, and indeed Defendants were unable to find, any case applying § 295 when the accused infringer produced detailed documents describing the process, provided detailed interrogatory responses describing that process, offered a high-ranking corporate witness who testified about the details of the process at

---

[3] Defendants' technical expert, Dr. Sean O'Keefe, explained in detail how these batch records verify the actual process used by BGG. *See* Dkt. 126-4 (O'Keefe Noninfringement Rep.) at ¶¶ 124-32.

- 6 -

**ATTORNEYS' EYES ONLY**

deposition, produced samples taken from the production process (on two separate occasions), and permitted an inspection of the facility during an actual production run. If § 295 applies here, it could well apply to any case involving a process patent.

Fortunately, that is not the law. In reality, § 295's burden-shifting mechanism is reserved for "non-cooperative" defendants, *Nutrinova*, 224 F.3d at 1360, and nothing suggests that Defendants have been uncooperative here. Nor have Defendants "thwarted" any of Plaintiff's efforts to take discovery about the accused process (*see Syngenta Crop Protection*, 2017 WL 1133378, at *9, *10) or shown a "systematic refusal to cooperate in discovery" (*see Janseen Prods.*, 2014 U.S. Dist. LEXIS 1555248, at *113-14).

Here, where "it cannot be said that [Defendants] have been non-cooperative defendants thwarting [Plaintiff's] efforts to discover this information" and where Defendants have "complied with discovery in this case to the extent they have been able," § 295 cannot apply. *See id.* at *118. Like the accused infringer in *CNET Networks*, Defendants here have produced documents and provided more than sufficient information to allow Plaintiff "to determine the process actually used in the production of the allegedly infringing product." *See* 2008 U.S. Dist. LEXIS 66737, at *40. Indeed, it is difficult to imagine what more Defendants could have done. The information provided was sufficient to allow Plaintiff's expert to analyze whether the process infringes. Defendants' production of descriptive documents alone should settle the matter, *see id.*, and Plaintiff's motion must fail under these facts.

Defendants' opening up their manufacturing facility for an on-site inspection is also reason enough to negate § 295. *See Kowalski*, 2008 U.S. Dist. LEXIS 58357, at *4 (declining to apply § 295 because plaintiff had inspected several active production facilities). By its own admission, Plaintiff "conduct[ed] the October 2020 inspection of BGG's manufacturing plant in China" and "collect[ed] and test[ed] samples taken at different steps in BGG's manufacturing process." Mem. at 22.

That COVID-19-related travel restrictions prevented Plaintiff's US attorneys

- 7 -

ATTORNEYS' EYES ONLY

from traveling to China to personally participate in the inspection is of no moment:
Plaintiff obtained the inspection it agreed to and had representatives on the ground
participating on its behalf. *See* Mem. at 7 ("ARN's only option was to conduct a
remote inspection via videoconferencing."). Its US counsel and technical expert were
able to participate in real-time via video, as agreed. Dkt. 101 at 4 ("The Parties have
agreed to conduct an in-person inspection of Defendants' manufacturing plant located
in Jiangsu, China in late October … via videoconferencing with two representatives
of ARN physically present on-site…."), 5 (The inspection shall include "the ability
for remote participation by ARN counsel [sic] and its related technical expert…").

This inspection did not take place sooner because Plaintiff did not request it
sooner. Plaintiff's representatives were permitted to see the entire process used by
BGG to make annatto tocotrienol, and were even able to ask questions of those
conducting the inspection tour that went far beyond the restrictions on questioning
that Plaintiff itself had agreed to before the inspection.[4] *See* Ex. 14 (Li Decl.) at ¶¶ 14,
17.  Plaintiff's counsel in the U.S. and its expert were able to participate remotely.[5]

───────────────────

[4] In its request to inspect BGG's facility, Plaintiff itself agreed that it would "ask
questions and engage with those conducting the inspection solely for the purpose of
understanding what is being inspected and shall not otherwise engage in questioning
of the employee conducting the inspection or any production personnel." Ex. 5 (Pl.'s
Notice and Request on In-Person and Remote Inspection of Defs.' Manufacturing
Plant) at 4; Dkt. 101 ("ARN Personnel from the IP March Law Firm shall be able to
ask questions and engage with those conducting the inspection solely for the
purpose of understanding what is being inspected and shall not otherwise engage in
questioning of the employee conducting the inspection or any production personnel"
(emphasis added).). Plaintiff blatantly violated this procedure when its
representatives asked deposition-style questions of BGG personnel during the
inspection.

[5]  The parties also stipulated that during the inspection, Plaintiff's representatives
would be permitted to ask questions of the personnel conducting the inspection only
in order to understand what was being inspected. *See* Ex. 5 at 4. This is because, by
law, depositions of witnesses cannot be conducted in China. Moreover, Plaintiff
would have an opportunity to depose BGG personnel after the inspection. In clear

- 8 -

**ATTORNEYS' EYES ONLY**

Further, even though no prior request was made, BGG provided samples taken from its production as identified by Plaintiff's inspection team. At no time during the inspection did Plaintiff's representatives raise any objections whatsoever to the scope of the inspection or the manner in which it was conducted. Of course, certain safety precautions needed to be observed during the inspection, and those were resolved in advance after numerous exchanges between counsel. Plaintiff itself agreed to "observe proper safety protocols during the inspection." Dkt. 100 at 5.

If Plaintiff took issue with the safety measures the production facility put in place during that inspection, Plaintiff could have asked for another inspection or sought relief from the Court. Plaintiff did neither.

From document productions to an on-site inspection to providing samples to deposition testimony, Defendants have fully cooperated with discovery, laid open all aspects of the accused process, and submitted to every one of Plaintiff's demands. If there was something else Defendants could have disclosed about their accused process, Plaintiff's motion does not say. Indeed, Plaintiff <u>never moved to compel</u> additional information, further evidencing that Defendants did all that was required of them (and more) throughout discovery. Section 295 simply cannot apply here. *See LG Display*, 709 F. Supp. 2d at 337 n.2 (D. Del. 2010) (declining to apply § 295, even though accused infringer did not produce documents describing the accused process, because it was not required to do so based on patentee's discovery requests).

In light of Defendants' complete transparency during discovery, Plaintiff

_____

violation of this agreement, Plaintiff's representatives asked questions that went far beyond what was necessary to understand what they were seeing. Worse still, Plaintiff's counsel prepared transcripts of the inspection and attempted to use those transcripts during the deposition of Dr. Li, to which Defendants' counsel appropriately objected. *See* Mem. at 9-10. It even used portions of one of those transcripts in its briefing for this motion. *See id.* The conduct of Plaintiff's counsel was improper; it is a violation of both the parties' agreement and Chinese law. Defendants have preserved their objections to these tactics and intend to address this issue at the proper time.

- 9 -

ATTORNEYS' EYES ONLY

1    cannot credibly contend that it has been unable to ascertain BGG's process. For this

2    reason alone, its motion under § 295 must fail.

3           2.    *Plaintiff's Own Allegations Establish That It Is Fully Capable of*

4                 *Ascertaining the Process Used by BGG.*

5           If Defendants' discovery leaves any doubt about whether Plaintiff should have

6    been able to ascertain the process used, the allegations in Plaintiff's briefing (as well

7    as its expert's report on infringement) show that Plaintiff was fully capable of

8    ascertaining that process.

9           Plaintiff's motion is self-defeating. Its own briefing repeatedly admits that it

10   knows which process BGG uses to produce annatto tocotrienol: "the April 2014

11   Production Process and March 2018 Production Process … are the only production

12   processes which Defendants claim describe their actual production process" (*id.* at

13   17). Thus, Plaintiff's own words make clear that it is aware that the April 2014 and

14   March 2018 Production Process documents are the only documents Defendants state

15   contain the actual process.

16          Plaintiff's technical expert, Dr. Rockstraw, also had no difficulty discerning

17   which process Defendants used. Indeed, he opines at length about whether the "April

18   2014 Production Process" infringes, relying on documents produced by BGG, the

19   samples provided on two separate occasions from BGG's production process, and the

20   inspection that Dr. Rockstraw attended by video. *See* Dkt. 124 (Rockstraw Inf. Rep.)

21   at ¶¶ 108-14, 118-28 (discussing BGG's process using produced documents and

22   deposition testimony), 115-16 (relying on information from the October 2020

23   inspection), 134-40 (opining on samples collected from BGG's process). Clearly, Dr.

24   Rockstraw believed he had sufficient information about BGG's process to perform an

25   infringement analysis. Nowhere in his report did Dr. Rockstraw state that he had

26   insufficient knowledge of Defendants' process in order to opine on infringement.

27   Why Plaintiff believes differently is a mystery.

28          Plaintiff's motion is also internally inconsistent. On the one hand, Plaintiff

- 10 -

**ATTORNEYS' EYES ONLY**

avers that there is a "lack of reliable evidence to pinpoint the actual process used by BGG to manufacture annatto tocotrienols." Mem. at 14. But on the other hand, Plaintiff nevertheless proclaims that "sufficient information is available to demonstrate that a substantial likelihood of infringement exists." *Id.* Plaintiff cannot have it both ways.

Moreover, if Plaintiff somehow believed there were "discrepancies" about the process documents Defendants produced, *id.* at 11, the deposition of Dr. Li and the on-site inspection should have resolved any confusion. That Plaintiff does not like the answer—that the actual, non-infringing process is not what Plaintiff claims it thought it to be when it filed this lawsuit—is no reason to penalize Defendants under § 295.

Indeed, it is unfathomable how Plaintiff can credibly claim to be ignorant of BGG's true process after receiving documents describing that process, being informed in interrogatory responses that those documents describe the process, deposing a witness about the process, and seeing the process in action for itself during an on-site inspection.

Any "contradictions and discrepancies" stem solely from Plaintiff's refusal to accept what Defendants have represented from the outset of this litigation: that BGG's true process is described at BGG0000009-20 (the April 2014 Manufacturing Process) and BGG0000021-37 (the March 2018 Manufacturing Process). From their very first discovery responses until now, Defendants have consistently maintained this position. *See* Dkt. 120-2 at 11-12, 14-17 (BGG's November 2019 responses to Plaintiff's Interrogatory Nos. 6, 7, and 10-13, referring to BGG0000009-37 as the documents describing BGG's process for producing annatto tocotrienol). That process is consistent with the other evidence presented by BGG in this litigation, including detailed batch records, two rounds of sample production and testing, and the on-site inspection conducted by Plaintiff in October 2020.

Plaintiff knows this. *See* Mem. at 17 (referring to the April 2014 and March 2018 Manufacturing Processes as "the only production processes which Defendants

- 11 -

ATTORNEYS' EYES ONLY

1   claim describe their actual production process"). And that knowledge should defeat

2   Plaintiff's motion under § 295.

3                  *3.   Plaintiff Has Not Been Diligent During Discovery.*

4         Plaintiff has not, as it asserts, "diligently endeavored to ascertain the process

5   actually used by BGG for their production of annatto tocotrienols." Mem. at 4. The

6   prior district judge assigned to this matter throughout fact discovery, as well as the

7   current magistrate judge, both disagreed with that assertion: "Plaintiff did not wisely

8   use all of the pre-pandemic discovery period" (Dkt. 96 at 1); and "[Plaintiff] could

9   have and should have" scheduled depositions earlier (Dkt. 106 at 3).

10        Plaintiff waited to propound its first set of interrogatories on Defendants until

11  October 21, 2019—more than six months into fact discovery and over ten months

12  after the filing of the complaint. *See* Ex. 3 (Pl.'s First Set of Interrogatories to Defs.).

13  It failed to notice any depositions until May 28, 2020—more than a year into fact

14  discovery. *See, e.g.*, Ex. 4 (Pl.'s Notice of Rule 30(b)(6) Deposition of BGG China).

15  And, despite raising the issue of a need for a site inspection in April 2019, *see* Dkt.

16  56 at 7 ("ARN and Defendants … have preliminarily discussed general frameworks

17  regarding inspection(s) of the underlying facilities, laboratories, and/or plants in

18  China…."), Plaintiff did not actually notice an inspection of the facility where the

19  accused process is carried out until September 22, 2020—eight days <u>after</u> the close of

20  fact discovery and more than 21 months into this case. *See* Ex. 5 (Pl.'s Notice and

21  Request of In-Person and Remote Inspection of Defs.' Manufacturing Plant).

22        Indeed, more than two weeks after noticing a May 28 hearing date for its § 295

23  motion without first consulting with Defendants, and before even receiving this

24  opposition, Plaintiff demanded a 10-day extension for its reply brief. *See* Ex. 11.

25  Plaintiff did not articulate a reason for this extra time, nor provided any explanation

26  for what, if anything, changed in the time it filed its brief and noticed the May 28

27  hearing. *See id.* This is the latest in Plaintiff's repeated efforts to delay, extend, and

28  put off adjudication of this case at every available opportunity—even with the

- 12 -

**ATTORNEYS' EYES ONLY**

1    meritless motions it chose to file.

2         Plaintiff's assertions of diligence are thus belied by its actions. Indeed, rather

3    than "diligently endeavor[ing]" to take discovery on BGG's process, Mem. at 4,

4    Plaintiff "did not wisely use all of the pre-pandemic discovery period." Dkt. 96 at 1.

5    Nevertheless, it ultimately got the inspection it requested as a result of Defendants'

6    cooperation. Plaintiff's motion should be denied on this basis as well.

7                                      * * * * *

8         At bottom, Defendants are at a loss for what more they could have done to

9    satisfy Plaintiff's fabricated confusion. Defendants complied with every discovery

10   request from Plaintiff, as evidenced by Plaintiff's never filing a motion to compel and

11   never even raising a discovery dispute that Defendants did not resolve. Plaintiff's

12   § 295 motion does not say what more Defendants could have done.

13        "To allow such a shift [under § 295] where the accused infringers cooperate

14   and comply with discovery requests, but happen to not be in custody or control of the

15   documents sought, is not just or logical, nor does it comport with the aim and purpose

16   of the statute." *Janssen Prods.*, 2014 U.S. Dist. LEXIS 155248, at *119. Given the

17   extensive discovery Defendants provided, it would likewise be neither just nor logical,

18   nor would it "comport with the aim and purpose" of § 295, to shift the burden here.

19   Plaintiff's motion has advanced no legitimate basis for its burden-shifting request,

20   and it must be denied for failing to satisfy § 295's second prong.

21        **B.    Plaintiff Has Not Shown a Substantial Likelihood that the Accused**

22        **Tocotrienol Product Was Made by the Patented Process.**

23        Because Plaintiff has so clearly failed to satisfy the second prong of § 295, this

24   Court need not accept Plaintiff's invitation to consider the merits of its infringement

25   claims in evaluating § 295's first prong. Defendants expect that much of the same

26   arguments will resurface in the parties' summary judgment briefing on the issue of

27   infringement, with opening briefs presently due May 14, 2021.

28        Nevertheless, Plaintiff cannot satisfy the first prong of § 295 either. In an

- 13 -

**ATTORNEYS' EYES ONLY**

attempt to do so, Plaintiff's brief regurgitates much of the analysis from its technical expert's infringement report. *See* Mem. at 13-21. Rather than focus on whether any particular <u>product</u> was likely produced by an infringing process, as the plain language of § 295 requires, Plaintiff instead presents evidence of the <u>process</u> of which it claims to be ignorant. Plaintiff's motion must fail for this reason.

Moreover, much of Plaintiff's analysis can easily be disposed of. Of the six "manufacturing processes" mentioned in Plaintiff's brief, *see id.* at 14, only two are actually used by BGG: the so-called "April 2014 Manufacturing Process" (described at BGG0000009-20/Dkt. 118-1); and the so-called "March 2018 Manufacturing Process" (described at BGG0000021-37/Dkt. 118-2). The remaining four processes have never been used by any of the Defendants to produce annatto tocotrienol. Ex. 6 (Y. Li Dep., Vol. III) at 138:25-146:14; *see also* Ex. 1 (Defs.' June 14, 2020 Supplement Responses to Plaintiff's First Set of Interrogatories) at 9-24. Rather, they are public-facing documents provided to BGG's customers that deliberately do not reveal the highly confidential steps of BGG's actual process.

After establishing below that none of the other "processes" are those used by BGG, Defendants then focus on the two processes they have actually used, which do not infringe any claim of the patent-at-issue.

     *1.*   *The "████████████████████ ████████████████" the "September 2015 SIDI flowchart," and the "March 2018 SIDI flowchart" do not describe any process ever used by BGG to manufacture annatto tocotrienol.*

Plaintiff clings to its incorrect belief that the so-called "███████" and "SIDI" documents accurately depict the actual process used by BGG China to manufacture annatto tocotrienol. Mem. at 5. However, Defendants' witnesses with knowledge of BGG's process have consistently explained under oath that the processes described in these customer-facing documents are not accurate descriptions of BGG's true

- 14 -

**ATTORNEYS' EYES ONLY**

1     manufacturing process.

2         This fact should have been made plain to Plaintiff during the deposition of BGG

3     China's Chief Scientific Officer, Dr. Yanmei Li. During her deposition, Dr. Li

4     verified under oath that the only processes BGG has ever used to produce annatto

5     tocotrienol were those described in BGG0000009-37—just as Defendants have told

6     Plaintiff since the outset of this litigation. *See* Ex. 6 (Y. Li Dep., Vol. III) at 108:6-

7     109:11; 117:11-15; 138:21-140:20; 144:11-22; *see also* Ex. 9 (Y. Li Dep., Vol. I) at

8     53:15-22; Dkt. 120-2 (Nov. 2019 Interrogatory Resps.) at 11-12, 14-17 (referring to

9     BGG0000009-37 as the process used).

10        The ████████ and SIDI documents are simply customer-facing documents

11     that do not describe the actual process used. The purpose of those documents, which

12     are provided to BGG's customers and to the public, is to provide information about

13     the characteristics and safety of the <u>product</u>, not details about how it is manufactured.

14     Indeed, Plaintiff was able to obtain one of these SIDI documents, which served as the

15     basis for the infringement allegations in its original and amended complaints. *See* Dkt.

16     1-2 (Compl., Ex. B); Dkt. 42-2 (Am. Compl., Ex. B). This is precisely why BGG does

17     not reveal the details of its process in these documents: they can and apparently do

18     end up in the hands of competitors.

19        One of the many documents in these packets is a single-page simplified process

20     flow chart which, as Dr. Li testified, is not exactly the same as BGG's actual process

21     (as BGG has informed Plaintiff from the outset of this litigation). Rather, BGG China

22     carefully keeps information about its actual process secret to avoid the details falling

23     into the hands of a competitor (like Plaintiff). Ex. 6 (Li Dep., Vol. III) at 104:4-15;

24     Ex. 14 (Li Decl.) at ¶ 5 ("If the details of our process somehow got into the hands of

25     our competitors, it would be disastrous for our company.").

26        Because BGG China has never used any of these other "processes" to produce

27     annatto tocotrienol, they cannot show evidence of a likelihood of infringement.

28

- 15 -

**ATTORNEYS' EYES ONLY**

1
        a)    **The** ██████ **Documents Do Not Describe BGG China's Actual Process.**

2

3
████████ documents are questionnaires required by one of BGG's

customers ██████ *Id.* at 97:20-98:6. The vast majority of the information requested

4
relates to the safety and characteristics of the product. On one of these documents,

5
█████ requested that BGG China simply "provide just one step of the process, the

6
manufacturing process. Therefore, we [BGG China] put in the ████████████

7
█████ *Id.* at 104:1-3. ██████████████████████████

8
████████████████████████████████████

9
████████████████████ and BGG China did not want to disclose

10
this trade secret to anyone outside of the company. *Id.* at 104:4-15; Ex. 14 (Li Decl.)

11
at ¶ 5 ("Our process for producing annatto tocotrienol is a very closely kept trade

12
secret. We do not reveal the details of this process to the public, including to our

13
customers and even individuals within the company who do not need to know the

14
details.").

15
    Nor was an exact description of the process relevant for the purpose of this

16
form. █████ was not looking to learn the details of BGG's proprietary process; it

17
was looking to determine whether BGG's product was safe, and the characteristics of

18
that product. *See, e.g.*, Ex. 8 (Seedall Dep.) at 97:6-20 ("the [contents of customer-

19
facing documents] that matter the most are the C of A's [certificates of analysis] and

20
the specification sheets. Flowcharts, designs, descriptions, verbal outlines, they don't

21
carry a lot of weight because they're subject to a lot of interpretation."). The process

22
is only relevant to the extent any process steps used chemicals that could be harmful

23
to consumers, and the exact order of steps is irrelevant to that inquiry. Those in the

24
dietary supplement industry understand that these types of simplified flow diagrams

25
are not meant to be an accurate description of the manufacturer's process. *See id.*

26
    Contrary to Plaintiff's assertion that the process flow diagrams contained

27
within ████ ██████ were "certified" (Mem. at 7), the diagrams themselves

28

- 16 -

**ATTORNEYS' EYES ONLY**

were not signed by BGG China's Quality Assurance Manager, nor were they specifically certified as being accurate representations of the actual process. *See* Mem., Ex. C (██████████████████) at BGG0018635; Mem., Ex. D (████ ██████████) at BGG0010118. Dr. Li explained that the blanket "certified by BGG China as true and correct" statement meant that the "document included the above-listed attachments" was true and correct—not that each attachment itself was certified. Ex. 6 (Y. Li Dep., Vol. III) at 110:7-16.

Where these ████████ documents intend to make specific certifications as to certain aspects of the product, the forms use unambiguous language (for example, "We Certify That"), such as when certifying that the annatto tocotrienol product is Kosher, Halal, and GMO/BSE free. *See* Mem., Ex. C (████████████████████) at BGG0018638-BGG0018645; Mem., Ex. D (████████████████) at BGG0010105-BGG0010115. No such certification statements accompany the process flow diagrams.

Accordingly, no witness with knowledge of BGG's actual manufacturing process has testified that the ████████ Forms accurately describe that process, and the sole witness with first-hand knowledge of the process provided unrebutted, sworn testimony to the contrary. Ex. 6 (Y. Li Dep., Vol. III) at 138:25-146:14.

**b)     The SIDI Documents Do Not Describe BGG China's Actual Process.**

"SIDI" stands for Standardized Information on Dietary Ingredients. Mem., Ex. E (September 2015 SIDI for Annatto Tocotrienols 70) at BGG0009518. As explained by Dr. Li, the purpose of a "SIDI document is for supplier qualification," and they contain "many quality and safety statements, which is the main focus of our customers." Ex. 6 (Y. Li Dep., Vol. III) at 142:1-21. She went on to explain that the order of steps in the process flow charts contained in these documents "is not important" because "customers mainly want to know what kind of solvent was used and what [the] effects [are] on food safety and operation. Therefore, the order is not

- 17 -

**ATTORNEYS' EYES ONLY**

1   important." *Id.* at 143:1-18.

2        Additional witnesses verified that the purpose of SIDI documents is to present

3   information on the final <u>product</u>, not to disclose the confidential manufacturing

4   <u>process</u>. For example,  Chunhua Li, the chairman of BGG China, explained that he

5   understood that "the SIDI is a safety document. It's a document for quality … when

6   the customer wants to buy a product." Ex. 7 (C. Li Dep., Vol. III) at 73:4-6; *see also*

7   Ex. 8 (Seedall Dep.) at 97:6-20 ("the [contents of SIDI documents] that matter the

8   most are the C of A's [certificates of analysis] and the specification sheets.

9   Flowcharts, designs, descriptions, verbal outlines, they don't carry a lot of weight

10  because they're subject to a lot of interpretation.").

11       Just as with the ███████████████        the SIDI documents do not contain

12  certification statements that the process diagrams there are true and correct reflections

13  of BGG China's actual process. Ex. 6 (Li Dep., Vol. III) at 147:10-17. And, again,

14  when these SIDI documents sought to make certain certifications related to the

15  product, they used unambiguous language, such as "We Certify That." *E.g.*, Mem.,

16  Ex. E (September 2015 SIDI for Annatto Tocotrienols 70) at BGG0009527,

17  BGG0009535-BGG0009545;  Mem.,  Ex. F  (March  2018  SIDI  for  Annatto

18  Tocotrienols 70) at 17-27.

19       BGG has good reason to keep details of its process confidential. ██████

20  ████████████████████████████████████████████████████

21  ███████████████████████████████████████  BGG does not

22  disclose its confidential trade secrets to others; even BGG North America employees

23  are not privy to this information. Ex. 12 (Ding Dep.) at 211:19-212:3; *see also id.* at

24  355:3-21 (testifying that he didn't need to know about the process "because it's highly

25  confidential information of the company"); Ex. 14 (Li Decl.) at ¶ 5 ("We do not reveal

26  the details of this process to the public, including to our customers and even

27  individuals within the company who do not need to know the details."). The lead

28  inventor of the '453 patent himself did not believe it possible to make annatto

- 18 -

**ATTORNEYS' EYES ONLY**

tocotrienol using ███████████████. Ex. 13 (Tan Dep., Vol. 1) at 139:1-140:15.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

and SIDI documents are provided to BGG's customers, potential customers, and sales staff in North America. To reveal confidential information in those documents about the process used would be "disastrous" for BGG. *Id.*

For this reason, and consistent with industry custom, the simplified flow charts included in these documents do not reflect the exact order of steps in BGG's process, nor do customers need to know (nor do they even care about) the exact order of steps used by BGG. Plaintiff's counsel was informed when this litigation began that the SIDI document attached to its original complaint was not an accurate description of BGG's process, and they were provided with much more detailed information that describes the true process. Yet Plaintiff's counsel, in deposition after deposition, asked witnesses without any knowledge about BGG's process whether they assumed the SIDI documents were true and accurate descriptions of that process. Some assumed they were, others said they didn't know, but this "evidence" is completely irrelevant because those witnesses have no knowledge about BGG's actual process.

What *is* relevant is the mountain of information produced by BGG that describes its true process, as well as the on-site inspection of BGG's facility and the production of samples from that process. Not a shred of evidence in the case supports Plaintiff's position that the SIDI flow chart is an accurate description of BGG's process. For Plaintiff to harp on this issue after knowing about BGG's real process is at best a misguided quest and at worst pure harassment.

Accordingly, the SIDI documents merely provide information about the product itself, not details of the process used to make that product. They describe a process that BGG China has never used and therefore cannot show a likelihood of infringement under the first prong of § 295.

ATTORNEYS' EYES ONLY

2.   *For the two processes actually used by BGG, Plaintiff ignores the non-infringement evidence provided by Defendants' expert.*

Plaintiff is correct that "BGG has maintained that they have at all times used essentially the same process for their production of annatto tocotrienol." Mem. at 5. That "process," as Plaintiff's recognizes, is actually two processes: the so-called April 2014 Manufacturing Process and the so-called March 2018 Manufacturing Process. *Id.* at 17.

Unlike the accused infringer in *Creative Compounds*, who "offered no argument as to why or how the process employed to create the product does not infringe," 651 F.3d at 1315, Defendants here have provided detailed explanations for why the accused process does <u>not</u> infringe based on this Court's claim construction.

For example, Dr. O'Keefe explained in detail the reasons why Plaintiff's expert is mistaken about infringement. In particular, he explained that BGG's process fails to form a "tocotrienol composition" by "volatilizing a solvent" from a "byproduct solution of *Bixa orellana* seed components," as required by the patent's claims. Dkt. 126-4 (O'Keefe Noninfringement Rep.) at ¶¶ 133, 281-346. As he explained, rather than volatilizing (removing via evaporation) solvent from the starting material in the BGG process, ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████

Dr. O'Keefe also explained how Plaintiff and its expert failed to show how the actual BGG process satisfies the Court's construction for the term "byproduct solution of *Bixa orellana* seed components." *Id.* at ¶¶ 287, 298. He detailed the following:

- that the starting material used in BGG's process is not a "solution" within the meaning of the '453 patent and the Court's constructions (*id.* at ¶¶ 289-91);

- that no "volatilizing" of solvent (that is, converting a solvent to a gas)

- 20 -

**ATTORNEYS' EYES ONLY**

from a "byproduct solution" occurs in the process (*id.* at ¶¶ 293-97);

- that the starting material in BGG's process is not "derived from *Bixa orellana* seed components," along with the other requirements of the Court's construction for "byproduct solution" (*id.* at ¶¶ 298, 312-13); and

- ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

For at least these reasons, Plaintiff and its technical expert have not shown a likelihood of infringement by the actual BGG process. Quite the opposite: undisputed evidence relating to BGG's process shows that it does <u>not</u> infringe this patent.

Plaintiff attempts to downplay a rebuttal experiment conducted by Defendants' expert, Dr. O'Keefe, and instead focuses on a faulty, untimely experiment conducted by Plaintiff's expert, Dr. Rockstraw. *See* Mem. at 19-20. Dr. O'Keefe described these experiments in detail in his Supplemental Rebuttal Expert Report, served on February 14, 2021. *See* Ex. 10. For example, Dr. O'Keefe explained that he conducted these experiments to show that Dr. Rockstraw's supplemental experiment (offered for the first time at his deposition) contained numerous flaws, resulting in an inaccurate model of the actual BGG process. Ex. 10 at ¶¶ 18-27.

For instance, Dr. O'Keefe explained that Dr. Rockstraw's experiments were not at all representative of BGG's actual process because those experiments used different temperatures, far more aggressive mixing conditions, different reagents, a different elevation, and an entirely different type of system (████████████ than BGG's own process. *Id*. at ¶¶ 19-27.

Dr. O'Keefe's experiment, on the other hand, mimicked BGG's ████████, contained key reagents missing from Dr. Rockstraw's experiment, was maintained at the appropriate temperature range and mixing speed, utilized properly calibrated equipment, and was performed at an elevation that matched that of BGG's production facility. *Id*. at ¶¶ 28-33. Based upon his experiments, Dr. O'Keefe concluded that no "solvent" is not being volatilized in BGG's process, as required by asserted claim 1

- 21 -

ATTORNEYS' EYES ONLY

1  of the patent-at-issue. *Id.* at ¶¶ 34-37. But however this dispute between the experts is

2  resolved, it has nothing to do with whether § 295 applies here.

3  Thus, Plaintiff's case law regarding the first prong of § 295 is inapposite. For

4  example, in *West v. Jewelry Innovations, Inc.*, the accused infringer presented no

5  rebuttal expert testimony to refute the patentee's assertions of infringement. No. C

6  07-1812 JF (HRL), 2009 WL 1010848, at *9 (N.D. Cal. Apr. 14, 2009). In addition,

7  in *West*, the accused infringer "had not produced any evidence regarding the

8  manufacturing process." *Id.*

9  This case is not even remotely similar to *West*. As shown by Dr. O'Keefe's

10 non-infringement expert report (Dkt. 126-4), Defendants' technical expert provided

11 over 150 pages of opinions explaining why Defendants do not infringe. And, as

12 explained numerous times, Defendants offered substantial evidence on every detail of

13 the accused process.

14 Accordingly, Plaintiff has not met the first prong of § 295 either.  Indeed, the

15 fact that Plaintiff is able to make arguments about whether BGG's process infringes,

16 based on information derived from BGG documents, testing of its samples, and

17 information learned during the inspection of BGG's process in China, is fatal to

18 Plaintiff's assertion that it was unable to obtain information relating to that process

19 (the second prong of § 295).

20 The presumption of infringement is a rarely used tool to address situations

21 where a plaintiff is unable to get information about a defendant's process and can

22 show it is likely that the defendant is using a patented process. It simply does not

23 apply where extensive information has been produced about a defendant's process,

24 and where the opposing experts disagree on the issue of infringement while citing the

25 very evidence in support of their infringement allegations that Plaintiff claims was

26 never provided. This is not a close case by a long shot.

27 Section 295 is clearly inapplicable here, and Plaintiff's motion must be denied.

28

ATTORNEYS' EYES ONLY

**C.**     **By Failing to Invoke § 295 Until Late Into this Case, Plaintiff Has
Waived Its Right to this Provision.**

Consistent with its trend of concocting new arguments at the latest possible moment, Plaintiff waited to invoke § 295 until well after the close of fact and expert discovery. Its infringement contentions make no mention of § 295 or any presumption of infringement. By failing to amend its pleadings to include this issue, Plaintiff cannot raise it now, just prior to summary judgment briefing.

"By waiting as it did, [Plaintiff] effectively prevented [Defendants] from defending against § 295 and its considerable burden shifting impact." *See Revolaze LLC v. J.C. Penney Corp.*, No. 2:19-cv-00043-JRG, 2020 WL 2220158, at *3 (E.D. Tex. May 6, 2020) (refusing to allow patentee to amend infringement contentions to include § 295 theory just before the close of fact discovery).

Defendants have litigated this entire case and prepared a strategy and discovery carefully tailored to address Plaintiff's complete failure to meet its burden on infringement. To shift that burden now would severely prejudice Defendants and leave them with little ability to alter the record to accommodate a shift.

Plaintiff's request should be rejected for this additional reason.

**D.**     **Responses to Plaintiff's Irrelevant Arguments**

In keeping with what appears to be its standard practice, Plaintiff begins its opening brief with a meandering, ten-page discussion of points entirely unrelated to the § 295 issue before this Court. *See* Mem. at 1-11. For example, Plaintiff discusses the supposed "novel process" described in its '453 patent, *id.* at 2, Plaintiff's history of manufacturing tocotrienol, *id.* at 3, the evidence Plaintiff's expert "reviewed and analyzed" for his infringement report, *id.* at 5, various gripes about the need for Plaintiff's US counsel and technical expert to conduct the inspection of Defendants' production facility remotely due to COVID-19-related travel restrictions, *id.* at 7-9, and Dr. Li's speaking Mandarin to Plaintiff's on-site representatives during the inspection but using English in providing a subsequent tour to Defendants' expert, *id.*

- 23 -

**ATTORNEYS' EYES ONLY**

1  at 10-11. Dr. Li's native language is Mandarin, and the participants attending the tour
2  in person were also Mandarin-speakers. Ex. 14 (Li Decl.) at ¶¶ 3, 10. There was
3  nothing improper about Dr. Li's use of her native tongue.

4          Regardless, none of this relates to the issue at hand. Rather than bog down this
5  opposition with detailed responses to the misstatements, half-truths, and complaints
6  scattershot throughout Plaintiff's "Background" section, Defendants instead remind
7  the Court of what actually matters here: that Defendants have been fully cooperative
8  throughout discovery, including permitting Plaintiff the inspection it wanted
9  according to a protocol agreed upon by both sides. To be sure, Defendants' strongly
10  disagree with all of Plaintiff's characterizations in its "Background" section, but now
11  is not the time to address those matters.

12          At bottom, none of the whining and irrelevant assertions contained in the
13  "Background" of Plaintiff's brief change the facts that matter (*see* Section III.A.1,
14  *supra*), and none of Plaintiff's irrelevant discussion shows that § 295 applies here.

## IV.  CONCLUSION

16          For the foregoing reasons, Plaintiff's request to use § 295 to dispense with its
17  burden to prove infringement should be denied, and Defendants should be reimbursed
18  their attorneys' fees for having to respond to Plaintiff's baseless motion, which is
19  plainly meant to harass, delay, or otherwise obstruct Defendants' attempts to litigate
20  the merits of this case.

21  Respectfully submitted,                    */s/ Gary M Hnath*
22                                             _____
23  Date: May 7, 2021                          Gary M. Hnath (Admitted *pro hac vice*)
                                               ghnath@mayerbrown.com
24                                             Bryan Nese (Admitted *pro hac vice*)
                                               bnese@mayerbrown.com
25                                             Clark S. Bakewell (Admitted *pro hac vice*)
26                                             cbakewell@mayerbrown.com
                                               MAYER BROWN LLP
27                                             1999 K Street NW
28

- 24 -

**ATTORNEYS' EYES ONLY**

Washington, DC 20006
Telephone:   (202) 263-3000
Facsimile:    (202) 263-3001

Douglas A. Smith (SBN 290598)
dougsmith@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave., 25th Floor
Los Angeles, CA 90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

Graham M. Buccigross (SBN 234558)
gbuccigross@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:   (650) 331-2000
Facsimile:    (650) 331-2060

Ryan T. Babcock (Admitted *pro hac vice*)
rbabcock@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:   (212) 506-2197
Facsimile:    (212) 262-1910

*Attorneys for Defendants Beijing Gingko
Group Biological Technology Co., Ltd.;
Jiangsu Xixin Vitamin Co., Ltd.; Jinke Group
USA Inc. d/b/a Beijing Gingko Group North
America; and Kyäni, Inc.*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S  § 295 MOTION
CASE NO. 8:18-CV-02201-FLA (JDEX)