1  DOUGLAS A. SMITH (SBN 290598)
2  dougsmith@mayerbrown.com
   MAYER BROWN LLP
3  350 S. Grand Ave., 25th Floor
   Los Angeles, CA  90071-1503
4  Telephone:   (213) 229-9500
5  Facsimile:   (213) 625-0248

6  Attorneys for Defendants Beijing Gingko Group Biological
7  Technology Co., Ltd.; Jiangsu Xixin Vitamin Co., Ltd.; Jinke
   Group USA Inc. d/b/a Beijing Gingko Group North America; and
8  Kyäni, Inc.

9  *Additional Counsel for Defendants on Signature Page(s)*

10

11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| AMERICAN RIVER NUTRITION, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> BEIJING GINGKO GROUP BIOLOGICAL TECHNOLOGY CO., LTD., et al., <br><br> Defendants. | Case No. 8:18-cv-02201-FLA (JDEx) <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION IN SUPPORT OF SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT AND NO INDUCED INFRINGEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:     July 2, 2021 <br> Time:    1:30 p.m. <br> Place:    Courtroom 6B <br> Honorable Fernando L. Aenlle-Rocha <br><br> [*Statement of Uncontroverted Facts, Declaration of Ryan Babcock and [Proposed] Order efiled Concurrently Herewith*] <br><br> Am. Complaint Filed: Mar. 4, 2019 |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## NOTICE OF MOTION AND MOTION

To all parties and their counsel of record, please take notice that on July 2 at 1:30 p.m. in Courtroom 6B of the above-captioned Court, located on the 6th Floor of the First Street Courthouse, 350 West 1st Street, Los Angeles, CA 90012-4565, Defendants Beijing Gingko Group Biological Technology Co., Ltd.; Jiangsu Xixin Vitamin Co., Ltd.; Jinke Group USA Inc. d/b/a Beijing Gingko Group North America; and Kyäni, Inc. ("Defendants") will and hereby do move pursuant to Fed. R. Civ. P. 56 for the Court to enter summary judgment that Defendants have not willfully infringed  U.S. Pat. No. 6,350,453 (the "'453 patent") and that Defendants have not induced infringement of the '453 patent.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Ryan T. Babcock filed concurrently herewith and supporting exhibits, Defendants' Statement of Undisputed Facts ("SOF"), any matters of which this Court may take judicial notice, and such additional evidence or argument as may be presented at or before the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place throughout April 2021.

Dated:  May 14, 2021           **MAYER BROWN LLP**

By:    */s/ Gary M. Hnath*
Douglas A. Smith (SBN 290598)
dougsmith@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave., 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Gary M. Hnath (admitted *pro hac vice*)
ghnath@mayerbrown.com
Bryan Nese (admitted *pro hac vice*)
bnese@mayerbrown.com
Clark S. Bakewell (admitted *pro hac vice*)
cbakewell@mayerbrown.com
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone:  (202) 263-3000
Facsimile:   (202) 263-3001

Graham M. Buccigross (SBN 234558)
gbuccigross@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060

Ryan T. Babcock (admitted *pro hac vice*)
rbabcock@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:  (212) 506-2197
Facsimile:   (212) 262-1910

*Attorneys for Defendants Beijing Gingko Group Biological Technology Co., Ltd.; Jiangsu Xixin Vitamin Co., Ltd.; and Jinke Group USA Inc. d/b/a Beijing Gingko Group North America*

**ATTORNEYS' EYES ONLY**

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ................................................................................1

II.   **APPLICABLE LAW** ..........................................................................2

     A.    Summary Judgment................................................................2

     B.    Willful Infringement .............................................................2

     C.    Induced Infringement – 35 U.S.C. § 271(b) .........................3

III. **ARGUMENT** ........................................................................................5

     A.    Defendants Are Entitled to Summary Judgment of No Willfulness Because There Is No Evidence of Willful Infringement. .......................5

         1.    ARN Cannot Prove That Any of the BGG Defendants Had a Subjective Belief That the Process Infringes the '453 Patent. .....5

             a)    Other Than Dr. Li, None of Defendants' Witnesses in This Case Have Knowledge About BGG's Actual Manufacturing Process. .......................................6

                 (1)    Persons Knowledgeable About the Actual Process Believed That It Does Not Infringe. .......................6

                 (2)    Joe Huff of BGG North America Does Not Know the Details of BGG China's Manufacturing Process and Lacks the Technical Background to Know Whether BGG China's Process Infringed...............9

                 (3)    Chris Holland Did Not Know the Details of BGG China's Manufacturing Process and Lacks the Technical Background to Know Whether the Process Infringed...................................................10

                 (4)    Jon Tafoya Does Not Know the Details of BGG's Manufacturing Process and Lacks the Technical Background to Understand Whether the Process Infringed....................................................10

i

(5)    Lixin Ding Does Not Know the Details of BGG China's Manufacturing Process. ...........................11

(6)    Chairman Chunhua Li Does Not Know the Details of BGG China's Manufacturing Process. .............11

b)    No Documents or Other Evidence Shows a Subjective Intent to Infringe. ..............................................12

c)    The Processes Described In the ▮▮▮▮ And SIDI Documents Do Not Reflect BGG China's Actual Process. ...................................................................12

(1)    The ▮▮▮▮ Documents Do Not Describe BGG China's Actual Process. ........................................13

(2)    The SIDI Documents Do Not Describe BGG China's Actual Process. ........................................14

2.    ARN Cannot Prove that Kyäni Had a Subjective Belief that BGG China's Process Infringed. .....................................................16

a)    ARN's Stated Allegations of Willfulness Do Not Establish a Subjective Intent to Infringe. .........................................16

b)    Kyäni's Actions Fail To Rise To the Level Of Egregious Conduct Necessary For a Finding Of Willful Infringement. ....................................................17

(1)    Pre-Suit Subjective Belief of No Infringement ......17

(2)    Alleged Activities After Filing of the Complaint ..19

B.    ARN Has No Evidence of Induced Infringement by BGG North America, and Therefore Summary Judgment of No Induced Infringement Is Appropriate. ...................................................20

1.    BGG North America Took No Steps to Encourage Infringement. ...................................................................21

2.    BGG North America Lacked the Requisite Knowledge and Intent to Encourage Infringement. ...........................................23

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV. CONCLUSION** ............................................................................................. **25**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrea, LLC v. Barnes & Noble, Inc.*,
   227 F. Supp. 3d 303 (S.D.N.Y. 2017) ..................................................... 3

*Am. River Nutrition, LLC v. Kyäni, Inc.*,
   No. 4:19-cv-00255-WGY (D. Idaho July 8, 2019) ............................. 21

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1985) .............................................................................. 2

*Anhing Corp. v Thuan Phong Co. Ltd.*,
   cv-13-05167-BRO-(MANx), 2015 WL 11018526 (C.D. Cal. Apr.
   23, 2015) ............................................................................................... 2

*Apple Inc. v. Princeps Interface Techs. LLC*,
   No. 19-CV-06352-EMC, 2020 WL 1478350 (N.D. Cal. Mar. 26,
   2020) ................................................................................................... 25

*Asia Vital Components Co. v. Asetek Danmark A/S*,
   377 F. Supp. 3d 990 (N.D. Cal. 2019) ............................................ 1, 23

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021) ....................................................*passim*

*In re Biogen '755 Patent Litig.*,
   335 F. Supp. 3d 688 (D.N.J. 2018) ..................................................... 25

*bioMérieux, S.A. v. Hologic, Inc.*,
   No. 18-21-LPS, 2020 WL 759546 (D. Del. Feb. 7, 2020) .................... 3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................. 2

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015) ................................................................. 4, 21, 23

*Cont'l Circuits LLC v. Intel Corp.*,
   No. cv-16-2026-PHX-DGC, 2017 WL 679116 (D. Ariz. Feb. 21,
   2017) ................................................................................................... 17

iv

*Doc. Sec. Sys., Inc. v. Lite-On, Inc.*,
   No. 17-CV-6050, 2018 WL 2422589 (C.D. Cal. Feb. 5, 2018)............................4

*DSU Med. Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006) ...............................................................4, 23, 25

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009) .........................................................................25

*EcoServices, LLC v. Certified Aviation Services, LLC*,
   312 F. Supp. 3d 830 (C.D. Cal. 2018) .................................................................2

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
   845 F.3d 1357 (Fed. Cir. 2017) .........................................................................24

*Evolved Wireless, LLC v. Apple Inc.*,
   No. 15-542-JFB-SRF, 2019 WL 8128550 (D. Del. Feb. 19, 2019).................3, 6

*Finjan, Inc., v. Cisco Sys. Inc.*,
   No. 17-cv-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ..............3, 8

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) .............................................................................................4

*Grunenthal GMBH v. Alkem Labs. Ltd.*,
   919 F.3d 1333 (Fed. Cir. 2019) ......................................................................1, 22

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016)..................................................................................*passim*

*HZNP Medicines LLC v. Actavis Labs. UT, Inc.*,
   940 F.3d 680 (Fed. Cir. 2019) .............................................................................5

*Idenix Pharms. LLC v. Gilead Sciences, Inc.*,
   271 F. Supp. 3d 694 (D. Del. 2017) .....................................................................7

*Info–Hold, Inc. v. Muzak LLC*,
   783 F.3d 1365 (Fed. Cir. 2015) ....................................................................21, 24

*J&M Indus., Inc. v. Raven Indus., Inc.*,
   457 F. Supp. 3d 1022 (D. Kan. 2020) ................................................................20

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) .........................................................................24

v

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ......................................................................................... 4

*Phigenix, Inc. v. Genentech, Inc.*,
    783 F. App'x 1014 (Fed. Cir. 2019) ................................................................ 23

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*,
    No. 3:18-cv-00373-BEN-MSB, 2021 WL 981123 (S.D. Cal. Mar.
    16, 2021) ................................................................................................... 22, 24

*Radware, Ltd. v. F5 Networks, Inc.*,
    No. 13-CV-2024, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ..................... 2, 3

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    No. 11-820-JRT-HB, 2018 WL 3621206 (D. Minn. July 30, 2018) ..................... 7

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
    No. 13-CV-1161, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) ................. 4, 20

*Takeda Pharm. U.S.A., Inc. v. W. Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015) .......................................................................... 4

*Vaporstream, Inc. v. Snap Inc.*,
    No. 2:17-CV-00220-MLH, 2020 WL 136591 (C.D. Cal. Jan. 13,
    2020) ............................................................................................................... 3

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ........................................................... 5, 22, 25

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003) ........................................................................ 4

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) ........................................................................ 2

**Statutes**

35 U.S.C. § 271(b) .................................................................................... *passim*

35 U.S.C. § 271(g) .......................................................................................... 21

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................................... 2

vi

U.S. Patent No. 6,350,453 ..................................................................................*passim*

**TABLE OF EXHIBITS CORRESPONDING TO THE ACCOMPANYING
DECLARATION OF RYAN T. BABCOCK**

| Exhibit | Description |
|---|---|
| 1 | U.S. Patent No. 6,350,453 (the "'453 patent") |
| 2 | Excerpts of the Deposition Transcript of Dr. Yanmei Li, Vol. III |
| 3 | July 31-August 1, 2013 email (BGG0009716-9718) |
| 4 | August 1, 2013 email (BGG0009698) |
| 5 | Excerpts of the Deposition Transcript of Joe Huff |
| 6 | ARN's Supp. Resp. to Third Set of Interrogatories (Sept. 21, 2020) |
| 7 | Excerpts of the Deposition Transcript of Chris Holland |
| 8 | Excerpts of the Deposition Transcript of Jon Tafoya |
| 9 | Excerpts of the Deposition Transcript of Lixin Ding |
| 10 | Excerpts of the Deposition Transcript of Chunhua Li, Vol. III |
| 11 | ████████████ |
| 12 | ███████████ |
| 13 | September 2015 SIDI for Annatto Tocotrienols 70 (BGG0009518-9552) |
| 14 | Excerpts of the Deposition Transcript of Geoff Belnap |
| 15 | Excerpts of the Deposition Transcript of Scott Seedall |
| 16 | Excerpts of the Deposition Transcript of Eric Myrup |
| 17 | Pl.'s Infringement Contentions in original Kyäni action |
| 18 | Pl.'s Objections and Responses to Kyäni's First Set of Interrogatories (Nos. 1-8) (June 25, 2020) |
| 19 | PL_15574-76 |
| 20 | Excerpts of the Deposition Transcript of Logan Kinghorn |
| 21 | Excerpts of the Deposition Transcript of Michael Breshears |
| 22 | August 1, 2013 email, BGG0016054 |
| 23 | Excerpts of the Deposition Transcript of Jim Dalton |

| 24 | Excerpts of the Deposition Transcript of Y. Li, Vol. I |
|----|---------------------------------------------------------|
| 25 | Infringement Report of Dr. David Rockstraw (BGG case) |
| 26 | American River Nutrition, LLC Amended Complaint, ECF No. 42 |
| 27 | BGG Def's First Set of Interrogatories (Nos. 1-12) (April 18, 2019) |
| 28 | Pl.'s Supplemental Answers to Def's First Set of Interrogatories (Nos. 1-12) (June 28, 2019,) at 4-5 |
| 29 | BGG Def's Third Set of Interrogatories (Nos. 22-25) (August 14, 2020) |
| 30 | Pl.'s Infringement Contentions in original BGG action |
| 31 | Excerpts of the Deposition Transcript of Chunhua Li, Vol. II |
| 32 | Kyäni's First Set of Interrogatories (Nos. 1-8) (May 26, 2020) |
| 33 | Infringement Report of Dr. David Rockstraw (Kyäni case) |

ix

## I.     INTRODUCTION

Willful patent infringement, as well as inducing others to infringe under 35 U.S.C. § 271(b), are not easily sustained allegations. Both issues require a patentee to prove specific intent coupled with culpable activity.

Indeed, determinations of willful infringement "are not to be meted out in a typical infringement case," but instead only "for egregious infringement behavior" that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

Induced infringement is likewise not the norm: it is reserved for a party that "encourages, recommends, or promotes infringement" by another. *Grunenthal GMBH v. Alkem Labs. Ltd.*, 919 F.3d 1333, 1339 (Fed. Cir. 2019).

Plaintiff American River Nutrition, LLC ("ARN") cannot meet its burden to prove either issue here. There are no material facts in dispute, and even accepting ARN's version of the story does not establish the level of "egregious infringement behavior" required for willfulness or the knowing encouragement of infringement required for inducement.

At best, ARN can establish only knowledge of the patent at issue. But simply being aware of a patent falls far short of the proof required for willful infringement or inducement. *Bayer Healthcare LLC v. Baxalta Inc.,* 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness."); *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1016 (N.D. Cal. 2019) ("[Induced infringement] requires not only knowledge of the existence of the patent that is infringed, but that 'the defendant knew the acts were infringing.'")

Accordingly, Defendants Beijing Gingko Group Biological Technology Co., Ltd. ("BGG China"); Jiangsu Xixin Vitamin Co., Ltd. ("JXVC"); Jinke Group USA Inc. d/b/a Beijing Gingko Group North America ("BGG North America"); and

Kyäni, Inc. (collectively "Defendants") move for summary judgment on two grounds. <u>First</u>, that Defendants have not willfully infringed any asserted claim of U.S. Patent No. 6,350,453 (the "'453 patent", Ex. 1 (exhibit numbers correspond to the Declaration of Ryan T. Babcock, filed concurrently herewith)); and, <u>second</u>, that Defendants have not induced infringement of any asserted claim of the '453 patent.

## II.   APPLICABLE LAW

### A.   <u>Summary Judgment</u>

Under Rule 56(a), a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To succeed, the moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). A dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). "[S]ummary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Anhing Corp. v Thuan Phong Co. Ltd.*, cv-13-05167-BRO-(MANx), 2015 WL 11018526, *9 (C.D. Cal. Apr. 23, 2015).

### B.   <u>Willful Infringement</u>

Plaintiff bears the burden of proving willful infringement. *See Radware, Ltd. v. F5 Networks, Inc.*, No. 13-CV-2024, 2016 WL 4427490, at *5 (N.D. Cal. Aug. 22, 2016). Knowledge of the asserted patent is a prerequisite to a finding of willfulness. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *see also EcoServices, LLC v. Certified Aviation Services, LLC*, 312 F. Supp. 3d 830, 842 (C.D. Cal. 2018) (granting summary judgement of no willful infringement "[b]ecause Plaintiff has not provided any evidence showing Defendant's knowledge of the [asserted patent] prior to this Action, it has failed to establish a prerequisite of willfulness."); *Radware*, 2016 WL 4427490, at *4-5 (granting summary judgement

- 2 -

of no willfulness where plaintiff failed to provide evidence of knowledge).

But knowledge of the patent alone is not enough. *See Bayer Healthcare*, 989 F.3d at 988. Rather, enhanced damages for willful infringement are reserved "for egregious infringement behavior." *Halo*, 136 S. Ct. at 1932; *see also Vaporstream, Inc. v. Snap Inc.*, No. 2:17-CV-00220-MLH (KSx), 2020 WL 136591, at *21 (C.D. Cal. Jan. 13, 2020) (granting summary judgment when plaintiff "failed to identify any egregious conduct or evidence of behavior beyond typical infringement").

In assessing egregiousness, "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." *Halo*, 136 S. Ct. at 1933. "In other words, what matters is the actor's subjective state of mind at the time of the challenged conduct, not his objective reasonableness." *Finjan, Inc., v. Cisco Sys. Inc.*, No. 17-cv-00072-BLF, 2017 WL 2462423 at *3 (N.D. Cal. June 7, 2017); *see also bioMérieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2020 WL 759546 at *11 (D. Del. Feb. 7, 2020) ("The inquiry is directed to the subjective willfulness of the infringer, not whether the infringement itself was egregious."); *Evolved Wireless, LLC v. Apple Inc.*, No. 15-542-JFB-SRF, 2019 WL 8128550, at *4 (D. Del. Feb. 19, 2019) (finding no evidence showing defendants subjectively believed they were infringing); *Adrea, LLC v. Barnes & Noble, Inc.*, 227 F. Supp. 3d 303, 312-313 (S.D.N.Y. 2017) (ruling subjective willfulness survives *Halo,* and refusing to enhance damages where patentee could not prove by a preponderance of the evidence that the accused infringer engaged in subjectively willful infringement).

That an accused infringer continues to make, use, sell or offer for sale the accused products after knowing of the asserted patents is not enough to support a finding of willfulness. *See, e.g.*, *Doc. Sec. Sys., Inc. v. Lite-On, Inc.*, No. 17-CV-6050, 2018 WL 2422589, at *3 (C.D. Cal. Feb. 5, 2018); *Slot Speaker Techs., Inc. v. Apple, Inc.*, No. 13-CV-1161, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017).

**C.** **Induced Infringement – 35 U.S.C. § 271(b)**

"Whoever actively induces infringement of a patent shall be liable as an

- 3 -

infringer." 35 U.S.C. § 271(b). Induced infringement requires knowledge of the patent-at-issue. *See Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).

Again, however, the inquiry does not end there. Intent is also critical: "[t]he mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Cleveland Clinic Found. v. True Health Diagnostics, LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017).

Accordingly, to prevail on an induced infringement claim, the plaintiff must prove: (1) knowledge of the existence of the patent; (2) direct infringement by another; (3) specific intent to induce the infringement; and (4) culpable conduct directed to encouraging the infringement. *See id.* at 765–66; *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (finding "'knowledge of the acts alleged to constitute infringement' is not enough") (citing *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003)).

"Inducement can be found where there is '[e]vidence of active steps taken to encourage direct infringement,' which can in turn be found in 'advertising an infringing use or instructing how to engage in an infringing use.'" *Takeda Pharm. U.S.A., Inc. v. W. Ward Pharm. Corp.*, 785 F.3d 625, 630–31 (Fed. Cir. 2015) (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). Such infringing instructions, however, "need to evidence intent to encourage infringement." *Id.* at 631 (internal quotations omitted).

The inquiry whether an accused inducer actually induced another to infringe is whether its "instructions teach an infringing use of the device such that [the court is] willing to infer from those instructions an affirmative intent to infringe the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 n.2 (Fed. Cir. 2009); *see also HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 701 (Fed. Cir. 2019) (quoting same); *see also Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 644 (Fed. Cir. 2017) ("[T]he plaintiff must show "that the alleged infringer's actions

- 4 -

induced infringing acts and that he *knew or should have known* his actions would induce actual infringements.") (emphasis added). A reasonable belief that there is no infringement negates the requisite intent. *See Apple Inc. v. Princeps Interface Techs. LLC*, No. 19-CV-06352-EMC, 2020 WL 1478350, at *3 (N.D. Cal. Mar. 26, 2020).

## III.   ARGUMENT

### A.   Defendants Are Entitled to Summary Judgment of No Willfulness Because There Is No Evidence of Willful Infringement.

ARN's allegations of willful infringement by Defendants are insufficient. While Defendants strongly deny that they infringe, even if they did, ARN fails "to identify any egregious conduct or evidence of behavior beyond typical infringement." *See Halo*, 136 S. Ct. at 1932. Ninth Circuit courts have granted summary judgment of no willful infringement in such circumstances. *See Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH (KSx), 2020 WL 136591, *20-21 (C.D. Cal. Jan. 13, 2020); *see also Move, Inc. v. Real Estate Alliance Ltd.*, 221 F. Supp. 3d 1149, 1173 (C.D. Cal. 2016). Summary judgment is appropriate.

#### 1.   *ARN Cannot Prove That Any of the BGG Defendants Had a Subjective Belief That the Process Infringes the '453 Patent.*

The annatto tocotrienol manufacturing process accused here was developed by BGG China, who then contracted with JXVC to carry out the process. BGG North America imports and sells the tocotrienol to customers in the U.S. None of BGG China, BGG North America, and JXVC (the "BGG Defendants") ever believed that BGG China's accused process infringes the '453 patent.

BGG China, for example, always believed its annatto tocotrienol manufacturing process does not infringe the '453 patent. Dr. Yanmei Li, the only witness in this case knowledgeable about the actual manufacturing process, consistently articulated her belief that the process does not infringe. Ex. 2 (Y. Li Dep., Vol. III) at 40:2-41:1. ARN's basis for willfulness is contained in its Supp. Resp. to Third Set of Interrogatories (Sept. 21, 2020) (Ex. 6 at 3-38), alleging

- 5 -

knowledge and intent of various individuals. However, as shown below, the factual record demonstrates that these individuals lacked the requisite knowledge and intent to infringe. None of the witnesses in this case other than Dr. Li are aware of the details of the process BGG China uses to produce annatto tocotrienol, and they therefore could not have had the intent required to willfully infringe the '453 patent.

The undisputed facts lead to one conclusion: ARN cannot meet its burden of demonstrating willful infringement by the BGG Defendants.

### a) Other Than Dr. Li, None of Defendants' Witnesses Have Knowledge About BGG's Actual Process.

As made plain by the more than dozen depositions ARN has taken in this case, only one witness who was deposed has detailed knowledge of BGG China's actual process used to manufacture annatto tocotrienol: Dr. Yanmei Li. Without knowledge of the process actually used, none of the other witnesses can have the subjective intent necessary to show willful infringement. *See Bayer Healthcare,* 989 F.3d at 988 ("[W]illfulness requires deliberate or intentional infringement."); *see also Evolved Wireless*, 2019 WL 8128550, at *4 (no willfulness where no evidence showed defendants subjectively believed they were infringing).

### (1) Those Knowledgeable About the Actual Process Believed That It Does Not Infringe.

Dr. Li, the one witness with knowledge of BGG China's process for manufacturing annatto tocotrienol, has always believed that this process does not infringe the '453 patent. ARN has adduced no evidence of subjective intent.

Instead, based upon her review of the '453 patent and her extensive knowledge of BGG China's actual process, Dr. Li, Chief Scientific Officer at BGG China, believed that the patent "was very clearly defined, and it was very different from our process." Ex. 2 (Y. Li, Vol. III) at 40:2-5. She testified that "the patent was very clear, and we are obviously different [from] it." *Id.* at 40:25-41:1.

Indeed, before this litigation began, BGG China reviewed ARN's patent and confirmed that BGG's unique process did not infringe. For example, in a July 31,

- 6 -

2013 email, Christopher Holland (of BGG North America) told BGG China personnel that "we have the potential to sell annatto tocotrienols to a customer in the US, however, a company name[d] American River Nutrition holds patents." Ex. 3 at BGG0009718. Mr. Holland asked whether BGG China could produce annatto tocotrienol in China and sell it in the US in light of that patent. *Id.* In response, Dr. Li stated that she reviewed the '453 "process patent" and concluded that the BGG's process was "completely different from [ARN's], so, no problem for this one." *Id.* at BGG0009716-17. This evidences BGG China's belief that it did <u>not</u> infringe.

Though not a patent attorney herself, through her position at BGG China, Dr. Li had "a deep understanding of patent laws," including in the US. Ex. 2 (Li Dep., Vol. III) at 29:15-18. With this understanding of patents and her role as the "highest-ranking person of the company in charge of technologies," she "believe[d] [she] can make this judgment by [herself]." *Id.* at 40:2-5. She "was the only person who compared [BGG China's] process—production process because I was the only one who actually kn[ew] of our production process, and I feel that I had the capability to do the comparison and to reach a conclusion." *Id.* at 44:25-45:4. BGG China's process does not infringe at least because it ███████████████████████████ ████████████████████████████. *Id.* at 109:1-5.

It is of no import that BGG China's belief of non-infringement was expressed by a non-attorney. *See Schwendimann v. Arkwright Adv. Coating, Inc.*, No. 11-820-JRT-HB, 2018 WL 3621206, *18 (D. Minn. July 30, 2018) (noting that in 2007 the Federal Circuit "reemphasize[d] that there is no affirmative obligation to obtain opinion of counsel) (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs.*, 136 S. Ct. 1923); *see also Idenix Pharms. LLC v. Gilead Sciences, Inc.*, 271 F. Supp. 3d 694, 699-700 (D. Del. 2017) (finding investigation sufficient where inventor instructed chemists to examine the patents and develop compound that fell outside the patent).

This technical input from BGG China's Chief Scientific Officer demonstrates

- 7 -

that BGG China believed it did not infringe the '453 patent. BGG China shared this belief with its subsidiary, BGG North America, through Dr. Li's email to Mr. Holland (then Vice President of Sales and Marketing for BGG North America). Ex. 3 at BGG0009716-18. Demonstrating that BGG North America subsequently also held the belief that BGG China's process did not infringe the '453 patent, on the same day that he received Dr. Li's input, Mr. Holland informed Logan Kinghorn (of Kyäni) that BGG China had investigated the '453 patent and concluded that its process would not infringe. Ex. 4 at BGG0009698; Ex. 22 at BGG0016054.

In that email, Mr. Holland expressed his unequivocal belief that the process did not infringe: "BGG's production process is different than the process outlined in the patent, so we do not violate the patent by producing our annatto tocotrienols[,]" and that "[i]n short, we do not believe that BGG producing and selling annatto tocotrienols nor Kyäni purchasing, formulating and selling Kyäni sunset using BGG annatto tocotrienols violates ARN's patent[.]" Ex. 22 at BGG0016054. At no point did either BGG China or BGG North America think that they were infringing.

As to JXVC, ARN has adduced no facts suggesting that it was even aware of the '453 patent, much less that it knew that the process it was carrying out on BGG China's behalf would infringe that patent. ARN's interrogatory response related to willfulness nowhere sets forth any facts to establish these elements. Ex. 6 at 3-38.

Accordingly, those most knowledgeable about BGG China's annatto tocotrienol manufacturing process, specifically Dr. Li, held a good-faith belief that BGG did not infringe the '453 patent. BGG North America in turn relied on those representations in forming its own belief of non-infringement. These facts alone plainly establish that there was no subjective intent to infringe and are thus sufficient to defeat a finding of willfulness. *See Finjan*, 2017 WL 2462423 at *3.

Apart from Dr. Li, the remaining witnesses for BGG North America have no knowledge of the actual process BGG China uses, lack the technical training to understand whether there would be infringement of ARN's patent, or both.

- 8 -

(2)   Joe Huff of BGG North America Does Not Know
the Details of BGG China's Manufacturing Process
and Lacks the Technical Background to Know
Whether BGG China's Process Infringed.

Mr. Joe Huff, former Vice President of BGG North America from 2014–15, worked for BGG North America (importer/seller of the accused tocotrienol products), not for BGG China (manufacturer of the accused products). Ex. 5 (Huff Dep.) at 23:13-17. He was not involved in the preparation of technical documents alleged by ARN to describe the manufacturing process. *Id.* at 100:1-6. There is no evidence that Mr. Huff knew how these documents were prepared, that he knew details of BGG China's actual production process, or that he understood the '453 patent's method in order to have an intent to infringe.

Indeed, Mr. Huff testified that he was not aware of BGG's actual annatto tocotrienol process. *Id.* at 79:11-82:5. He had not seen "any written manufacturing processes or any written manufacturing steps for Xixin for annatto tocotrienol." *Id.* at 83:22-84:5. He, like the rest of BGG North America's personnel, were not aware of BGG China's actual process. *Id.* at 398:17-399:3.

Further, Mr. Huff testified he "didn't even know what the ['453] patent covered, what the scope of the patent was." *Id.* at 60:25-61:10. He explained he hadn't even read the patent and he testified he couldn't even remember if he had seen the patent up until the day of his deposition. *Id.* at 61:12-13 and 62:21-22.

Without an understanding of how BGG China was making annatto tocotrienol or what the '453 patent described, ARN cannot show that Mr. Huff willfully infringed that patent as a matter of law. *See Bayer Healthcare,* 989 F.3d at 988.

ARN alleged during discovery that, because Mr. Huff visited one of the facilities BGG used to produce annatto tocotrienol in 2007, he supposedly understood the process. Ex. 6 at 4-5. That is incorrect. Mr. Huff made clear that he say no manufacturing process details during his visits. Ex. 5 (Huff Dep.) at 42:10-45:10. Indeed, Mr. Huff thought BGG China was not even making annatto

- 9 -

tocotrienol in 2007. *Id.* at 45:17-46:6.

ARN has failed to present evidence showing that Mr. Huff had an understanding of the actual process used by BGG to manufacture annatto tocotrienol and that he had an understanding of the '453 patent's method. Therefore, Mr. Huff's testimony cannot show that BGG willfully infringed the '453 patent.

> (3)   Chris Holland Did Not Know the Details of BGG
> China's Manufacturing Process and Lacks the
> Technical Background to Know Whether the
> Process Infringed.

Chris Holland worked as Vice President of Sales and Marketing for BGG North America from 2006–2016, not for BGG China. Ex. 7 (Holland Dep.) at 16:11-22, 19:17-20. Mr. Holland was not aware of BGG China's actual process for making annatto tocotrienol: he made clear that he "didn't know what BGG's process was" (*id.* at 275:9-12) and that he "did not have a knowledge of how—or of BGG's—of a production process for annatto tocotrienols from BGG" (*id.* at 277:5-13). He also testified that he "did not have any reason to doubt" Dr. Li when she concluded that BGG's "process is completely different from [ARN's patent]." *Id.* at 544:22-545:21.

Without an understanding of BGG China's process and what the patent described, Mr. Holland's testimony cannot support a finding of willful infringement.

> (4)   Jon Tafoya Does Not Know the Details of BGG's
> Process and Lacks the Technical Background to
> Understand Whether the Process Infringed.

The same holds true for Jon Tafoya, a sales manager and account manager at BGG North America from 2010 to 2017. He too was unaware of BGG China's actual process. He "didn't follow the patent process or the—all the intricacies of manufacturing." Ex. 8 (Tafoya Dep.) at 87:9-15; *see also* Ex. 8 at 83:19-25.

Further, when asked if he was aware of ARN's patent, he responded that he knew "there was a patent somewhere. But I don't know the details of it… I don't have the technical background for it. I'm just the sales guy." *Id.* at 81:14-24.

Without an understanding of how BGG China was making annatto tocotrienol

- 10 -

and what the patent described, Mr. Tafoya's testimony cannot show willfulness.

> (5)   Lixin Ding Does Not Know the Details of BGG China's Manufacturing Process.

Dr. Lixin Ding, a BGG China product manager from 2013-2017, focused on ███████████████████████████—not tocotrienols. Ex. 9 (Ding Dep.) at 16:1-17. During his time at BGG China, he sometimes aided the sales team introduce annatto tocotrienol to customers, but did not supply technical manufacturing information to clients and was not involved in the preparation of manufacturing process technical documents. *Id.* at 16:18-18:11. Thus, while at BGG China, he was not knowledgeable about BGG China's annatto tocotrienol manufacturing process.

In 2017, Dr. Ding transitioned to BGG North America. *Id.* at 21:5-22:7. Like BGG North America's other personnel, Dr. Ding was not aware of BGG China's actual process for making annatto tocotrienol. He testified that he was not given an understanding of the processes used by BGG China or the JXVC plant to make annatto tocotrienol and was not provided with information of how it was made. *Id.* at 211:19-212:3; *see also id.* at 355:3-21 (testifying that he didn't need to know the process "because it's highly confidential information of the company").

Thus, Dr. Ding was not involved in, and not knowledgeable about, BGG China's process for producing annatto tocotrienol. Without understanding how BGG China makes annatto tocotrienol, Dr. Ding cannot support willful infringement.

> (6)   Chairman Chunhua Li Does Not Know the Details of BGG China's Manufacturing Process.

While Mr. Chunhua Li is Chairman of BGG China, he is not familiar with the specifics of BGG China's annatto tocotrienol manufacturing process. He explained that he is "not an engineer," is "not familiar with the entire process." Ex. 31 (C. Li, Vol. 2) at 31:7-32:18. Instead, he explained that he believed BGG China's use of ████████████████████ was "why our process is totally different from other companies' process. This is the process we invented." Ex. 31 (C. Li, Vol. 2) at 27:4-22. Mr. Li further explained that when he had discussed ARN's "molecular

- 11 -

distillation" technology with Dr. Barrie Tan, he was "amazed" ARN "could have received a patent" for that technology because it was a "very common technology" that could ███████████████████████████████████████████████████████████ ███████████████████████████████████████ Ex. 10 (C. Li, Vol. 3) at 22:24-24:5. He explained that BGG's technology is ███████████████████████ ███████████████████ than ARN's technology. *Id*. at 34:10-35:11.

Thus, the subjective intent to infringe the '453 patent, which ARN must prove to show for willfulness, cannot come from Mr. Li. *See Bayer Healthcare,* 989 F.3d at 988 ("[W]illfulness requires deliberate or intentional infringement.")

### b) No Documents or Other Evidence Shows a Subjective Intent to Infringe.

Not only is there no testimony that supports willful infringement, there are also no documents (or any other evidence) that even suggest the necessary intent. The only relevant document shows that, in 2013, Dr. Li clearly stated her belief that BGG China's process was completely different and did not infringe.

Indeed, ARN's detailed interrogatory response setting forth its willfulness theory was last supplemented on September 21, 2020 (Ex. 6), at the tail end of fact discovery. *See* Dkt. 102 at 3 (showing fact discovery cutoff of September 14, 2020). By that time, Defendants had produced more than 7,486 documents totaling more than 41,105 pages. Babcock Decl. at ¶ 28. Yet ARN failed to cite to any documents evidencing a subjective intent to infringe. *See* Ex. 6 at 3-38; Ex. 18 at 2.

Accordingly, despite years of fact discovery, more than a dozen depositions, and tens of thousands of pages of documents, ARN has failed to put forth any evidence of a subjective intent to infringe the '453 patent.

### c) The Processes Described in the ████████ And SIDI Documents Do Not Reflect BGG's Actual Process.

Rather than cite to real proof of subjective intent, ARN's interrogatory responses regarding willfulness (Ex. 6) resorts to unfounded inferences based on other documents that do not even describe BGG's actual process.

- 12 -

For example, ARN clings to its incorrect belief that the so-called "█████ █████" and "SIDI" documents accurately depict the actual process used by BGG China to manufacture annatto tocotrienol. Dkt. 155 at 4-5. As detailed below, while some witnesses in this case assumed that the processes described in these documents were true and accurate descriptions of the real process, these assumptions were made without any knowledge of what the real process is. More importantly, the witnesses who are most knowledgeable about BGG China's actual process have consistently explained that the process flow diagrams contained within these █████ █████ and SIDI documents, relied upon by ARN to allege willful infringement, are not accurate descriptions of the true manufacturing process. However, even if the Court considers whether the SIDI and █████████ documents depict BGG China's actual process to be an open issue of fact (which Defendants respectfully submit it is not), Defendants are still entitled to summary judgment of no willfulness because ARN has failed to demonstrate that Defendants held a subjective intent that the processes depicted within these documents infringe the '453 patent.

(1)   The ██████████ Documents Do Not Describe BGG China's Actual Process.

The ████████████ documents are survey questionnaires required by one of BGG's customers ██████████ Ex. 2 (Y. Li Dep., Vol. III) at 97:20-98:6. As part of these documents, █████████ required BGG China to "provide just one step of the process, the manufacturing process. Therefore, [BGG China] put in the molecular distillation step." *Id.* at 104:1-3. Dr. Li explained that the key aspect of the process ██████████████████ was not included because it "was one of our core trade secrets," and BGG China did not want to disclose this critical information to others outside of BGG China. *Id.* at 104:4-15. Although the ordering of steps in a simplified flow diagram in the ███████████ documents was also rearranged from the actual process, Dr. Li explained that the order of steps was not important: "Our actual manufacturing process was ████████████████████████████████████

- 13 -

████████████████████████████████ … [O]ur customer didn't care about the order of the steps." *Id.* at 109:1-11. Rather, the focus of the documents was on the quality and safety of the annatto tocotrienol product, not detailed information about the process used to make it. *Id.* at 137:18-24.

Contrary to ARN's assertion that the process flow diagrams contained within the ██████ documents were "certified by BGG China as true and correct" (Ex. 6 at 26), the diagrams themselves were <u>not</u> signed by BGG China's Quality Assurance Manager, nor were they specifically certified as being accurate representations of the actual process. Ex. 11 (████████████████████ at BGG0018635; Ex. 12 ██████████████████████ at BGG0010118. Dr. Li explained that the blanket "certified by BGG China as true and correct" statement meant the "document included the above-listed attachments," not that each attachment itself was certified as true and correct. Ex. 2 (Y. Li Dep., Vol. III) at 110: 7-16.

Where these ██████ documents intended to make specific certifications as to certain aspects of the product, the forms used unambiguous language (such as "We Certify That"), such as certifying that the annatto tocotrienol product is ████ ████████████████████████████████████████████ ████████████████████████████████ at BGG0018638- BGG0018645; Ex. 12 ██████████████ at BGG0010105-BGG0010115. No such certification statements accompany the process flow diagrams.

(2)   The SIDI Documents Do Not Describe BGG China's Actual Process.

"SIDI" stands for Standardized Information on Dietary Ingredients. Ex. 13 (September 2015 SIDI) at BGG0009518. As explained by Dr. Li, a "SIDI document is for supplier qualification," and they contain "many quality and safety statements, which is the main focus of our customers." Ex. 2 (Y. Li Dep., Vol. III) at 142:1-21. This document is "provided to customers and—and also to potential customers" and because BGG does "not require a confidentiality agreement" when it shares this

- 14 -

document with qualified customers "it can easily get into the hands of [BGG's] competitors." *Id.* at 145:23-146:14. She explained that the order of steps in the process flow charts contained in these documents "is not important" because "customers mainly want to know what kind of solvent was used and what effects on food safety and operation." *Id.* at 143:1-18; *see also* Ex. 9 (Ding Dep.) at 356:12-14 ("[C]ustomers never ask specifically the steps of the manufacturing process[.]"). BGG does not disclose its highly confidential process in these public documents.

Additional witnesses verify that the purpose of SIDI documents is to present information on the overall product, not to disclose details of BGG's confidential manufacturing processes. For example,  Chunhua Li, the Chairman of BGG China, explained that he understood that "the SIDI is a safety document. It's a document for quality when client- when the customer wants to buy a product." Ex. 10 (C. Li Dep., Vol. III) at 73:4-6; *see also* Ex. 14 (Belnap Dep.) at 202:7-203:6 (SIDI documents contain "a whole list of different information besides the flowchart" and Kyäni would view the MSDS, the allergen information, and the certificates lists as important aspects); Ex. 15 (Seedall Dep.) at 97:6-20 ("the [contents of SIDI documents] that matter the most are the C of A's and the specification sheets. Flowcharts, designs, descriptions, verbal outlines, they don't carry a lot of weight because they're subject to a lot of interpretation."); Ex. 16 (Myrup Dep.) at 332:21-333:3 (it is not important to know whether certain process steps come before others).

Just as with the ███████ documents, SIDI documents do not contain certification statements that the process diagrams disclosed are true and correct recitations of BGG's actual process. Ex. 2 (Li Dep., Vol. III) at 147:10-17.

At bottom, SIDI documents provide information about the product itself, not details of the manufacturing process. For product quality and safety, the order of steps is completely irrelevant. Thus, these witnesses' understanding of the flow diagrams in the ██████ and SIDI documents cannot serve as the basis of willful infringement: these processes do not accurately depict the actual process used by

- 15 -

BGG China. Moreover, there is no evidence that any witness believed that the processes disclosed in these documents infringed ARN's patent.

2.  *ARN Cannot Prove that Kyäni Had a Subjective Belief that BGG China's Process Infringed.*

There is no evidence of willful infringement by Kyäni. While "[k]nowledge of the asserted patent" is necessary, "willfulness requires deliberate or intentional infringement." *Bayer Healthcare,* 989 F.3d at 988.

No such evidence exists here. Kyäni has always believed that the process utilized by its tocotrienol supplier (BGG China) does not infringe the '453 patent. It reasonably relied on Dr. Li's and BGG's representation that BGG's process did not infringe and had no reason to believe otherwise. Thus, ARN cannot prevail as a matter of law on its claim of willful infringement against Kyäni.

**a)   ARN's Stated Allegations of Willfulness Do Not Establish a Subjective Intent to Infringe.**

ARN's infringement contentions allege willfulness as follows:

> ARN contends Kyani's infringement in this action is willful. As a result of the prior business relationship between ARN and Kyani, Kyani was on notice of the '453 patent and rather than continuing to purchase from ARN, Kyani ceased its purchases of annatto-derived tocotrienol from ARN and instead acquired the source materials for its products with tocotrienols from BGG.

Ex. 17 (Pl.'s Infringement Cont. to Kyäni) at 3.

ARN never amended these contentions. ARN did, however, in its Response to Interrogatory No. 1 concerning ARN's contention that Kyäni had knowledge of the '453 patent, state that "ARN referenced the '453 patent in correspondence with Kyäni in May and August 2005. ARN disclosed the '453 patent to Kyäni on multiple occasions, including June 13, 2017, as shown at PL_15571." Ex. 18 at 2.

These allegations do not establish that Kyäni had an understanding of the contents of the '453 patent, or that Kyäni understood BGG China's manufacturing

- 16 -

process, in order to formulate a subjective belief that BGG's manufacturing process would infringe the patent. For example, the document specifically referenced by ARN (PL_15571) is contained within a chain of email communications between Kyäni and ARN in which Kyäni requested information in order ███████████ ████████████████████████████████████████ PL_15574-76. Ex. 19.

As part of this request, Kyäni asked ARN for a "flow-chart" of its annatto tocotrienol production method. Ex. 19 at PL_15574. Ultimately ARN provided Kyäni with a "flow chart which lists the extraction method as molecular distillation" and then provided the '453 patent as an attachment since "the details of the distillation process are contained in our patent." Ex. 19 at PL_15571.

This evidence alone is insufficient to prove willfulness. It merely shows that someone at Kyäni was provided a copy of the '453 patent and told that it contained details of a "distillation process." It does not establish that Kyäni had a subjective belief of infringement. *See Cont'l Circuits LLC v. Intel Corp.*, No. cv-16-2026-PHX-DGC, 2017 WL 679116, at *11 (D. Ariz. Feb. 21, 2017) ("[A]fter *Halo*, [] awareness of the patent and continued use of the infringing product despite an objectively high likelihood of infringement or reckless disregard of that risk no longer compel a finding of willfulness.").

Moreover, as explained below, Kyäni could not have had the requisite intent to infringe when it had no idea how BGG China makes annatto tocotrienol.

### b) Kyäni's Actions Fail To Rise To the Level of Egregious Conduct Necessary For Willful Infringement.

There is no evidence of Kyäni's subjective intent to willfully infringe the '453 patent because Kyäni had no such intent. Instead, the factual record reveals that Kyäni has always held a good-faith belief that its supplier's process for making annatto tocotrienol does <u>not</u> infringe the '453 patent.

### (1) Pre-Suit Subjective Belief of No Infringement

Kyäni is unaware of the specific details of BGG's annatto tocotrienol

- 17 -

manufacturing process. This is not unusual or surprising. The record shows that suppliers do not typically disclose specific process information to their customers, and instead that customers rely on representations from their suppliers, who are in the best position to assess whether or not the process infringes. Thus, based upon representations made by BGG China to Kyäni about the process, Kyäni has consistently believed that that process does not infringe.

For example, the deposition of Logan Kinghorn, a prior global supply chain manager at Kyäni, shows suppliers do not typically provide confidential process information to Kyäni: "if there was a proprietary process then they were going to keep it—they were going to keep it close to the vest." Ex. 20 (Kinghorn Dep.) at 366:13-367:4. He testified that it wasn't his place "to know in great detail" how BGG made the annatto tocotrienol it sold to Kyäni. *Id.* at 365:14-366:12.

Other witnesses corroborated that Kyäni was not aware of the actual manufacturing process. For example, Michael Breshears, Kyäni's former CEO, explained that, aside from what was contained in marketing materials, he was unaware of BGG China's actual manufacturing process. Ex. 21 (Breshears Dep.) at 113:17-114:3. Likewise, Eric Myrup had "not seen a detailed document" describing the process. Ex. 16 (Myrup Dep.) at 130:1-8.

Because Kyäni was not aware of the exact details of BGG China's manufacturing process, it relied upon representations made by BGG China about that process. Based upon the representations in Chris Holland's email to Kyäni personnel stating that BGG China had investigated the '453 patent and concluded that its process would not infringe, Kyäni held a clear subjective belief that BGG China's annatto tocotrienol manufacturing process did not infringe the '453 patent. III.A.1.a)(2), *supra*; *see also* Ex. 4 at BGG0009698; Ex. 22 at BGG0016054.

For example, Mr. Kinghorn believed BGG China was "trying to show that they have researched it … [and] that it doesn't infringe on the patent." Ex. 20 (Kinghorn Dep.) at 171:20-172:3. He found this communication "pretty

- 18 -

straightforward" and led him "to believe that the [BGG] process was different." *Id.*
at 175:12-176:14. He believed BGG China "did their homework. And then their
final—their final conclusion is [the processes are] different." *Id.* at 178:4-15.

Likewise, Mr. Breshears explained that he tried "to determine if [he] thought
there was a concern there, … because yes, we didn't want to violate any kind of—
any kind of patents[.]" Ex. 21 (Breshears Dep.) at 112:20-113:5. From what BGG
told Kyäni in Chris Holland's August 1, 2013 email, he "didn't think there was a
patent violation." *Id.* at 112:1-14. In short, Mr. Breshears had no intent to infringe.

Kyäni's general counsel, Jim Dalton, confirmed this belief: "we asked [BGG]
what their process is, is it different [from ARN's patent], and they said that it was
different." Ex. 23 (Dalton Dep.) at 203:7-10. He testified that, in addition to Dr. Li's
August 2013 non-infringement conclusion, Kyäni also discussed the differences
between BGG China's process and ARN's patent with BGG on two other occasions.

For example, in June 2016, Mr. Dalton explained that there was a discussion
with BGG "not specifically about the patent but about the process and the
differences between BGG's process and the other supplier, which is American
River." *Id.* at 196:9-14. He also explained that, after becoming aware of ARN's
litigation against BGG, Kyäni again asked for confirmation that the process does not
infringe the '453 patent, "and the assurance was: No, we've looked at this. We've
had our people look at it again. It's a totally different process." *Id.* at 194:6-195:7.

Thus, Kyäni consistently held a good–faith, subjective belief that BGG
China's process differs from the process claimed by the '453 patent and that its
process does not infringe. ARN cites no evidence to the contrary.

(2)    Alleged Activities After Filing of the Complaint

ARN has not alleged specific allegations of willfulness as to the actions of
Kyäni after the filing of this lawsuit, but if ARN alleges evidence of "egregious"
conduct based on Kyäni's continued selling of its accused products after being sued,
there is simply no evidence to support that allegation.

- 19 -

It is well-settled that the continued sale of accused products after receiving notice of an asserted patent is insufficient to prove willful infringement. *See Slot Speaker*, 2017 WL 4354999, at *2 ("Defendant's ongoing manufacturing and sales, on their own, are equally consistent with a defendant who subjectively believes the plaintiff's patent infringement action has no merit."); *see also J&M Indus., Inc. v. Raven Indus., Inc.*, 457 F. Supp. 3d 1022, 1071 (D. Kan. 2020) ("The decision to continue sales of its product and to litigate an allegation made by Plaintiff is hardly evidence of subjective bad faith.").

If continuing to sell accused products after learning of a patent infringement claim was sufficient to support a finding of willful infringement, then willful infringement would be found in every case where an alleged infringer does not stop all accused commercial activities in response to a lawsuit. That is not the law. *See Halo*, 136 S. Ct. at 1932 (explaining that enhanced damages are not appropriate in a typical infringement case, but are instead reserved for egregious behavior).

Instead, Kyäni has consistently operated, and continues to operate, under a good-faith belief that BGG China's annatto tocotrienol manufacturing process does not infringe the '453 patent. *See* Ex. 22 (BGG0016054). Accordingly, ARN cannot show that Kyäni's alleged infringement of the patent-in-suit was willful.

## B.   ARN Has No Evidence of Induced Infringement by BGG North America,[1] and Summary Judgment Is Appropriate.

To prove induced infringement under 35 U.S.C. § 271(b), ARN must show more than just knowledge of the '453 patent. ARN must also prove (1) that BGG North America took some affirmative acts to induce infringement and (2) that BGG North America "knew the acts were infringing." *See Commil*, 575 U.S. at 642.

---

[1] ARN's accuses only BGG North America of inducement. *See* Dkt. 42 (Am. Compl.) at ¶¶ 44, 48 ("BGG America is actively inducing at least BGG China and JXVC…."); *see also* Compl., *Am. River Nutrition, LLC v. Kyäni, Inc.*, No. 4:19-cv-00255-WGY (D. Idaho July 8, 2019) (accusing Kyäni of infringement only under 35 U.S.C. § 271(g), not inducement under § 271(b)).

ARN can prove neither. Indeed, ARN has yet to identify any "affirmative act" by BGG North America that induced another to infringe, nor are there any facts establishing that BGG North America knew that its acts were encouraging others to infringe. There are no material facts in dispute regarding what acts BGG North America took or what knowledge it had of whether those acts were infringing. Under these facts, courts in the Ninth Circuit have granted summary judgment of no induced infringement. *See Pulse Elec., Inc. v. U.D. Elec. Corp.*, No. 3:18-cv-00373-BEN-MSB, 2021 WL 981123, at *39 (S.D. Cal. Mar. 16, 2021).

## 1. *BGG North America Took No Steps to Encourage Infringement.*

To prevail on its claim for inducement, ARN must prove that BGG North America "took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *See Info–Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 (Fed. Cir. 2015); *see also Grunenthal*, 919 F.3d at 1339 ("[W]e ask whether the [accused] encourages, recommends, or promotes infringement.").

ARN cannot meet this burden. It has no evidence of any "affirmative act" by BGG North America that encouraged either BGG China or JXVC to infringe. At best, the facts show only that certain employees of BGG North America knew about ARN's patent, but "the mere knowledge of possible infringement will not suffice." *See Vita-Mix*, 581 F.3d at 1328.

BGG North America could not have induced infringement by BGG China or JXVC as a matter of law because there is no evidence that BGG North America provided any instructions, recommendations, or similar guidance to BGG China or JXVC as to how to produce annatto tocotrienol. There are no facts suggesting that BGG North America was at all involved in the decision of which process to use to produce annatto tocotrienols; rather, that decision was made entirely by BGG China. Ex. 24 (Y. Li. Dep. Vol. I) at 36:2-38:21. Indeed, in order to protect its trade secrets, BGG China did not even share details of its manufacturing process even with BGG North America employees. *See* Sections III.A.1.a)(2) – III.A.1.a)(5), *supra*.

- 21 -

Accordingly, BGG North America could not have induced another to infringe when it provided no suggestions, instructions, or other guidance on how to carry out the accused process. *See Pulse Elecs., Inc. v. U.D. Elec. Corp.*, No. 3:18-cv-00373-BEN-MSB, 2021 WL 981123, at *37 (S.D. Cal. Mar. 16, 2021) (finding plaintiff must "provide evidence of affirmative steps to bring about infringement").

Both ARN's complaint and its expert's infringement report are devoid of any facts suggesting that BGG North America took any steps whatsoever to encourage BGG China or JXVC to use any particular process for producing annatto tocotrienol, much less the process claimed by the '453 patent. *See* Dkt. 42 (Am. Compl.) at ¶¶ 43-55; Ex. 25 (Rockstraw Inf. Rep.) at ¶¶ 175-81. Indeed, ARN's infringement contentions do not refer to induced infringement at all.[2]

The allegations in Dr. Rockstraw's report, even if true (and not stricken), are insufficient to prove inducement. For example, paragraphs 176 and 177 of Dr. Rockstraw's infringement report aver that BGG North America was aware of the '453 patent. Ex. 25 (Rockstraw Inf. Rep.) at ¶¶ 176-77. But mere awareness of the patent is insufficient to prove inducement. *See Asia Vital*, 377 F. Supp. 3d at 1016.

Paragraphs 178 and 179 of the Rockstraw Report simply allege that BGG North America knew which process BGG China used to produce annatto tocotrienol. Ex. 25 (Rockstraw Inf. Rep.) at ¶¶ 178-79. As explained earlier, that is not true: no one at BGG North America knew of the <u>actual</u> process BGG China used to make annatto tocotrienol. *See* Ex. 5 (Huff Dep.) at 79:11-82:5; Ex. 7 (Holland Dep.) at 275:9-12; Ex. 8 (Tafoya Dep.) at 88:23-89:2.

In any event, this fact is immaterial: merely knowing about the accused

---

[2] For this reason, ARN's § 271(b) theory should be stricken from its expert report and from this case entirely. *See* Dkt. 112-1 at 12-13 (Defendants' motion to strike induced infringement opinions in Dr. Rockstraw's report); *see also Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019) ("Without its expert report, [plaintiff's] direct infringement case fails, so we affirm the district court's grant of summary judgment of noninfringement on that basis.").

process is not an affirmative act, nor is it sufficient to show the intent required for induced infringement. *See DSU*, 471 F.3d at 1306 ("[I]nducement requires evidence of culpable conduct, directed to encourage another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.").

Paragraph 180 of Dr. Rockstraw's report simply alleges how BGG North America's purchase orders were received and paid, and paragraphs 175 and 181 simply provide Dr. Rockstraw's conclusions on inducement. Ex. 25 (Rockstraw Inf. Rep.) at ¶¶ 175, 180, 181. None of these allegations establish the affirmative acts required for induced infringement.

Indeed, the sole "affirmative act" by BGG North America that ARN points to is "accepting purchase orders" for tocotrienol. *Id.* at ¶ 179. But merely "accepting purchase orders" is insufficient as a matter of law to induce infringement. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (holding that purchase order for accused product that included indemnity provision was insufficient to establish intent to induce infringement); *see also Pulse Elecs.*, 2021 WL 981123, at *32 (finding defendant not liable for induced infringement, even though it "worked with its customers to design products according to their needs, visited the U.S. offices of customers, and knew that some of its customers sold products in the U.S.").

Because no facts establish that BGG North America "took an affirmative act to encourage infringement," ARN's claim for induced infringement must fail. *See Info–Hold*, 783 F.3d at 1372. Summary judgment is proper for this reason alone.

### 2.   BGG North America Lacked the Requisite Knowledge and Intent to Encourage Infringement.

Not only did BGG North America not take any affirmative steps to encourage another to infringe, it also lacked the required knowledge and intent that it was causing another to infringe. "The patentee must also show that the alleged infringer possessed the requisite intent to induce infringement, which we have held requires

that the alleged infringer knew or should have known his actions would induce actual infringements." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) (internal quotation marks omitted).

Because BGG North America did not know (and could not have known) that placing orders for tocotrienol from BGG China would infringe ARN's method patent, summary judgment is appropriate for this additional reason. ARN cannot prove this element as a matter of law for at least two reasons.

First, as explained previously, BGG North America had no knowledge of the actual process used by BGG China to manufacture annatto tocotrienol. *See* Sections III.A.1.a)(2) – III.A.1.a)(5), *supra*. Without knowledge of BGG China's actual process, BGG North America could not have had the requisite intent to induce infringement. *See Vita-Mix*, 581 F.3d at 1329 n.2 (patentee must prove an "intent to encourage infringement"). Even if the Court considers whether the SIDI and ███ ███ documents depict BGG China's actual process to be an open issue of fact (which it is not), BGG North America is still entitled to summary judgment of no inducement because ARN has failed to demonstrate that BGG North America intended for the processes depicted within these documents to infringe the patent.

Second, as discussed above, BGG North America had a reasonable, good-faith belief that BGG China's process did not infringe the '453 patent. That belief "can negate the specific intent required for induced infringement." *See Apple Inc. v. Princeps Interface Techs. LLC*, No. 19-CV-06352-EMC, 2020 WL 1478350, at *3 (N.D. Cal. Mar. 26, 2020) (quoting *In re Biogen '755 Patent Litig.*, 335 F. Supp. 3d 688, 714 (D.N.J. 2018)); *see also DSU*, 471 F.3d at 1307 (finding reasonable belief of non-infringement sufficient to support a jury verdict of no induced infringement); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009) (same).

Indeed, BGG North America relied on the assessment of Dr. Li—the sole witness in this case with knowledge of the true BGG process—and her team that the process did not infringe the '453 patent. *See* Section III.A.1.a)(1), *supra*. BGG

- 24 -

North America's reasonable belief that the process did not infringe also compels a finding of no inducement. *See Apple*, 2020 WL 1478350, at *3.

* * * * *

Because BGG North America took no affirmative acts to induce BGG China or JXVC to infringe the '453 patent, and because BGG North America lacked the knowledge and intent required for inducement, ARN's infringement claim under § 271(b) must fail.

## IV.   CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant summary judgment of no willful infringement and no induced infringement.

Respectfully submitted,     */s/ Gary M Hnath*

Date: May 14, 2021

Gary M. Hnath (Admitted *pro hac vice*)
ghnath@mayerbrown.com
Bryan Nese (Admitted *pro hac vice*)
bnese@mayerbrown.com
Clark S. Bakewell (Admitted *pro hac vice*)
cbakewell@mayerbrown.com
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone:   (202) 263-3000
Facsimile:   (202) 263-3001

Douglas A. Smith (SBN 290598)
dougsmith@mayerbrown.com
MAYER BROWN LLP
350 S. Grand Ave., 25th Floor
Los Angeles, CA 90071-1503
Telephone:   (213) 229-9500
Facsimile:   (213) 625-0248

Graham M. Buccigross (SBN 234558)
gbuccigross@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real

- 25 -

Palo Alto, CA 94306-2112
Telephone:   (650) 331-2000
Facsimile:    (650) 331-2060

Ryan T. Babcock (Admitted *pro hac vice*)
rbabcock@mayerbrown.com
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:   (212) 506-2197
Facsimile:    (212) 262-1910

*Attorneys for Defendants Beijing Gingko
Group Biological Technology Co., Ltd.;
Jiangsu Xixin Vitamin Co., Ltd.; and Jinke
Group USA Inc. d/b/a Beijing Gingko Group
North America*