Notice has been delivered by First Class U.S. Mail
to all counsel (or parties) at their last known address
of record in this action on this date

Date:  Jan 03 2022, 8:50 am

# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN RIVER NUTRITION, LLC, | Case No. 8:18-cv-02201-FLA (JDEx) |
| Plaintiff, | |
| v. | [Consolidated with Case No. 2:21-cv-02613-FLA (JDEx)] |
| BEIJING GINGKO GROUP BIOLOGICAL TECHNOLOGY CO., LTD, et al., | **ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. 172]; (2) GRANTING SUMMARY JUDGMENT IN DEFENDANTS' FAVOR; AND (3) DEEMING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT AND NO INDUCED INFRINGEMENT MOOT [DKT. 176]** |
| Defendants. | |

Hearing Date:    December 17, 2021
Time:            10:30 a.m.
Courtroom:       6B

1          **RULING**

2          Before the court are the parties' cross-motions for summary judgment.  On May

3   14, 2021, Plaintiff American River Nutrition, LLC ("ARN" or "Plaintiff") filed its

4   Motion for Partial Summary Judgment against Defendants for Infringement of the

5   Patent-in-Suit ("Plaintiff's MSJ").  Dkt. 172 ("Pl. MSJ," redacted); Dkt. 172-1 ("Pl.

6   MSJ Br.," redacted); Dkt. 213 ("Pl. MSJ Br.," unredacted).  Defendants Beijing

7   Gingko Group Biological Technology Co., Ltd. ("BGG China"), Jinke Group USA

8   Inc. ("BGG America"), and Jiangsu Xixin Vitamin Co., Ltd. ("JXVC") (collectively,

9   the "Beijing Gingko Defendants") and Defendant Kyäni, Inc. ("Kyäni") (altogether,

10  "Defendants") filed their opposition on June 4, 2021.  Dkt. 205 ("Opp. to Pl. MSJ,"

11  redacted); Dkt. 236 ("Opp. to Pl. MSJ," unredacted).  Plaintiff filed its reply on June

12  14, 2021.  Dkt. 228 ("Pl. MSJ Reply," redacted); Dkt. 244 ("Pl. MSJ Reply,"

13  unredacted).

14          On May 14, 2021, Defendants filed their Motion for Summary Judgment of No

15  Willful Infringement and No Induced Infringement ("Defendants' MSJ").  Dkt. 176

16  ("Defs. MSJ," redacted); Dkt. 192 ("Defs. MSJ," unredacted).  Plaintiff filed its

17  opposition on June 4, 2021.  Dkts. 202, 252 ("Opp. to Defs. MSJ," redacted); Dkt. 250

18  ("Opp. to Defs. MSJ," unredacted).  Defendants filed their reply on June 18, 2021.

19  Dkt. 225 ("Defs. MSJ Reply," redacted); Dkt. 238 ("Defs. MSJ Reply," unredacted).

20          These Motions came to hearing on December 17, 2021.  For the reasons stated

21  herein, the court DENIES Plaintiff's MSJ in its entirety, GRANTS summary judgment

22  of noninfringement in Defendants' favor, and deems Defendants' MSJ MOOT.

23          **BACKGROUND**

24  **A.     Overview of Plaintiff's Complaints**

25          This action arises in connection with Defendants' alleged infringement of

26  United States Patent No. 6,350,453 B1 (the "Patent-in-Suit" or "'453 Patent"), entitled

27  "Tocotrienols and Geranylgeraniol from *Bixa Orellana* Byproducts," which was

28  issued by the United States Patent & Trademark Office ("USPTO") on February 26,

2002.  Dkt. 42-1.  The USPTO's records show the '453 Patent was assigned by the original Assignee, American River Nutrition, Inc., to Plaintiff on July 11, 2018, and that ARN recorded the assignment with the USPTO on September 14, 2018.

Plaintiff filed the Complaint in the subject action, *American River Nutrition, LLC v. Beijing Gingko Group Biological Technology Co., Ltd., et al.*, Case No. 8:18-cv-02201-FLA (JDEx) (the "*Beijing Gingko* action"), on December 12, 2018 and the operative First Amended Complaint ("FAC") on March 4, 2019.  Dkts. 1, 42.[1]  In the FAC, Plaintiff asserts two causes of action for: (1) infringement of the '453 Patent under 35 U.S.C. § 271(g) ("§ 271(g)") against all Beijing Gingko Defendants; and (2) infringement of the '453 Patent under 35 U.S.C. § 271(b) ("§ 271(b)") against Defendant JXVC.  Dkt. 42. (FAC) ¶¶ 30-55.  The FAC alleges the Beijing Gingko Defendants use, manufacture, prepare, blend, offer to sell, import from China, and sell within the United States a tocotrienol composition formed by practicing Claims 1, 6, 7, and 10 of the '453 Patent.  *Id.* ¶¶ 24-27, 31-33, 35, 44-46, 48.  This action was transferred from District Judge Josephine L. Staton to this court on December 30, 2020.  Dkt. 109.

On July 8, 2019, Plaintiff filed the Complaint in *American River Nutrition, LLC v. Kyäni, Inc.*, Case No. 2:21-cv-02613-FLA (JDEx) (formerly Case No. 4:19-cv-00255-WGY in the District of Idaho) (the "*Kyäni* action" or "Case No. 21-2613"), asserting one cause of action against Kyäni for infringement of Claim 1 of the '453 Patent under § 271(g).  Case No. 21-2613, Dkt. 1 (Compl.) ¶¶ 19-29.  The Complaint alleges "Kyäni uses, offers to sell, imports from China, and sells within the United States a tocotrienol composition formed by practicing the Patented Processes claimed in the Patent-in-Suit."  *Id.* ¶ 21.  The *Kyäni* action was transferred to this court on

---

[1] The court will cite all documents by the page numbers added by the court's CM/ECF system rather than the page numbers listed within the documents themselves.  Citations to docket entries that do not include a case number will be to the docket in the *Beijing Gingko* action.

March 25, 2021, pursuant to a stipulation by the parties.  *Id.*, Dkts. 49, 51.  On April 1, 2021, the court consolidated the *Kyäni* action with the *Beijing Gingko* action pursuant to a stipulation by the parties, and administratively closed the *Kyäni* action.  Dkt. 68.

Judge Staton's February 27, 2019 Order Setting Scheduling Conference stated the court intended generally to follow the Northern District of California Patent Local Rules ("Patent Local Rules"), with a modification to the presumptive schedule established under those rules.  Although the *Kyäni* action was initially governed by the District of Idaho's Local Patent Rules, those rules were adopted from the Northern District of California Patent Local Rules and the two sets of rules are substantively identical for purposes of the consolidated actions and subject motions.  *See Fleming v. Escort, Inc.*, Case No. 1:09-cv-00105-BLW, 2011 WL 1542126, at *2 (D. Idaho Apr. 21, 2011).

Plaintiff now moves for partial summary judgment against Defendants for infringement of Claims 1 and 5 of the '453 Patent.  Dkt. 172-1 (Pl. MSJ Br., redacted) at 24-36; Dkt. 213 (Pl. MSJ Br., unredacted) at 24-36.  Defendants, in turn, request the court award summary judgment of no infringement in their favor, and separately move for summary judgment on the grounds that they have not willfully infringed or induced infringement of the '453 Patent.  Dkt. 205 (Opp. to Pl. MSJ, redacted) at 7; Dkt. 176 (Defs. MSJ, redacted) at 2; Dkt. 192 (Defs. MSJ, unredacted) at 2.

**B.    The '453 Patent and Claim Construction**

The '453 Patent is entitled "Tocotrienols and Geranylgeraniol from *Bixa Orellana Byproducts*," and claims in relevant part:

> **1.** A method of forming a tocotrienol composition, comprising the step of volatilizing a solvent from a byproduct solution of *Bixa Orellana* seed components to form thereby said tocotrienol composition.
>
> **5.** The method of claim **1**, wherein the solvent includes an alcohol.
>
> **6.** The method of claim **1**, therein the byproduct solution of *Bixa Orellana* seed components includes a geranylgeraniol component.

4

**7.** The method of claim **6** further including the step of distilling the geranylgeraniol component to separate thereby at least a portion of said geranylgeraniol component from said tocotrienol composition to form a geranylgeraniol distillate.

**10.** The method of claim **7**, further including the step of distilling a tocotrienol component of said tocotrienol composition to form a tocotrienol distillate and a bottoms stream.

Dkt. 42-1 (the '453 Patent) at 8:35-38, 8:45-54, 8:59-62.[2]

The parties sought construction of five terms within the '453 Patent: (1) "volatilizing a solvent"; (2) "byproduct solution of *Bixa Orellana* seed components"; (3) "tocotrienol component"; (4) "geranylgeraniol component"; and (5) "bottoms stream." Dkt. 79 (Joint Statement) at 2. Judge Staton held a claim construction hearing on November 5, 2019 and issued the Claim Construction Order on January 10, 2020, setting forth the following constructions:

| Term | Court's Construction |
|---|---|
| "volatilizing a solvent" | "converting a solvent to a gas" |
| "a byproduct solution of *Bixa orellana* seed components" | "a solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves and containing a tocotrienol component and a geranylgeraniol component, which solution is obtained as an oily material after removing the bulk of annatto color from the seeds" |
| "tocotrienol component" | plain and ordinary meaning |
| "geranylgeraniol component" | plain and ordinary meaning |

___

[2] Although the '453 Patent, as originally published, states that Claim 7 is a dependent claim of Claim 1, ARN filed a certificate of correction with the USPTO clarifying that Claim 7 is a dependent claim of Claim 6. The certificate of correction was accepted by the USPTO on October 10, 2017.

| Term | Court's Construction |
|------|---------------------|
| "bottoms stream" | no construction necessary |

Dkt. 92 (Claim Constr. Order) at 7, 13, 15, 19.

### C.   Plaintiff's Infringement Contentions, Dr. Rockstraw's Expert Reports, and Defendants' Motions to Strike

On May 17, 2019, Plaintiff served its Infringement Contentions on the Beijing Gingko Defendants, accusing them of infringing Claims 1, 5, 7, and 10 of the '453 Patent.  Dkt. 112-4 (Nese Decl. Ex. B, "Pl. Inf. Cont. re: Beijing Gingko").  On or around December 21, 2020, Plaintiff served the report of its expert, Dr. David A. Rockstraw ("Dr. Rockstraw"), on the Beijing Ginko Defendants (the "Rockstraw Beijing Gingko Expert Report"), stating his opinions regarding Defendants' alleged infringement of Claims 1, 5, 6, 7, and 10 of the '453 Patent under § 271(b) and (g). Dkt. 221-14 (redacted) at 6-7; Dkt. 213-14 (unredacted) at 6-7.

On November 13, 2019, Plaintiff served its Infringement Contentions on Kyäni, accusing it of infringing Claims 1, 5, 7, and 10 of the '453 Patent.  Dkt. 267-2 (Nese Decl. Ex. B, "Pl. Inf. Cont. re: Kyäni").  On or around December 30, 2020, Plaintiff served Dr. Rockstraw's expert report regarding alleged infringement by Kyäni (the "Rockstraw Kyäni Expert Report").  Dkt. 261-1 (unredacted).  In the Rockstraw Kyäni Expert Report, Dr. Rockstraw opines that Kyäni directly infringed at least Claims 1 and 5 of the '453 Patent, and that the Beijing Gingko Defendants infringed Claims 1, 5, 6, 7, and 10 of the '453 Patent.  *Id.* at 5-6, 17, 37, 43.

On January 19, 2021 and February 17, 2021, the Beijing Gingko Defendants and Kyäni separately moved to strike portions of Dr. Rockstraw's expert reports.  Dkt. 112; Case No. 21-2613, Dkt. 42.  The court granted the Beijing Gingko Defendants' motion to strike on November 19, 2021, and struck Dr. Rockstraw's expert testimony regarding the following issues, on the grounds that the expert report improperly asserted new claims and infringement theories and accused products, processes, or

6

instrumentalities that were not disclosed in Plaintiff's Infringement Contentions to the Beijing Gingko Defendants:

    1. Infringement of Claim 6 of the Patent-in-Suit (Dkt. 124 ¶¶ 6-7, 43 (third bullet), 127-28, 174, 178);

    2. Infringement based on inducement under § 271(b) (Dkt. 124 ¶¶ 7, 9-10, 58, 72-73, 84-86, 175-81); and

    3. Infringement based on four documents produced in discovery:

        a. the "September 20, 2013 Form 1294" flowchart, BGG0018635 (Dkt. 124 ¶¶ 70-72, 76-79);

        b. the "February 2015 Form 1294" flowchart, BGG0010166 (Dkt. 124 ¶¶ 80-83);

        c. the "September 2015 SIDI" flowchart, BGG0009528 (Dkt. 124 ¶¶ 87-105); and

        d. the "April 2014 Manufacturing Process" document, BGG0000009 (Dkt. 124 ¶¶ 106-65).

Dkts. 257 (Order, redacted), 258 (Order, unredacted), 265 (Am. Order, unredacted).

Similarly, the court granted Kyäni's motion to strike on December 14, 2021, and struck Dr. Rockstraw's testimony regarding the following issues, on the grounds that the expert report improperly asserted a new claim and new infringement theories and accused products, processes, or instrumentalities that were not disclosed in Plaintiff's Infringement Contentions to Kyäni:

    1. Infringement of Claim 6 of the Patent-in-Suit (Dkt. 261-1 ¶¶ 6-7, 46 (third bullet), 107-08, 134, 159); and

    2. Infringement based on documents produced in discovery:

        a. the "September 2015 SIDI" flowchart, BGG0009528 (*id.* ¶¶ 53, 57-85); and

        b. the "April 2014 Manufacturing Process" document, BGG0000009 (*id.* ¶¶ 53, 86-158).

Dkts. 269 (Order, redacted), 270 (Order, unredacted).

Although the court granted Defendants' motions to strike, the court excluded Dr. Rockstraw's opinions regarding these claims, infringement theories, and products,

processes, or instrumentalities, to the extent these opinions are presented to establish Plaintiff's prima facie case of infringement of the '453 Patent by Defendants.  Dkt. 257 at 18; Dkt. 269 at 17.  The court reserved ruling on whether Plaintiff may use portions of this testimony and expert evidence at summary judgment or trial to rebut Defendants' theories of non-infringement, in the event Defendants presented these documents as evidence of non-infringement.  Dkt. 257 at 18; Dkt. 270 at 17.

## LEGAL STANDARD

### I.    General Standard under Fed. R. Civ. P. 56

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Facts are "material" only if dispute about them may affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Id.*

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion.  *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c), (e).  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The court must decide whether the moving party is entitled to judgment as a matter of law in light of the facts presented by the nonmoving party, along with any undisputed facts.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 & n. 3 (9th Cir. 1987).  "Where the record taken as a whole could not

1  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue
2  for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587
3  (1986).

4      When deciding a motion for summary judgment, "the inferences to be drawn
5  from the underlying facts … must be viewed in the light most favorable to the party
6  opposing the motion." *Id*. "If the nonmoving party produces direct evidence of a
7  material fact, the court may not assess the credibility of this evidence nor weigh
8  against it any conflicting evidence presented by the moving party. … Inferences
9  from the nonmoving party's 'specific facts' as to other material facts, however, may
10 be drawn only if they are reasonable in view of other undisputed background or
11 contextual facts and only if such inferences are otherwise permissible under the
12 governing substantive law." *T.W. Elec.*, 809 F.2d at 631-32. "[S]ummary judgment
13 should not be granted where contradictory inferences may reasonably be drawn from
14 undisputed evidentiary facts…." *Hollingsworth Solderless Terminal Co. v. Turley*,
15 622 F.2d 1324, 1335 (9th Cir. 1980). The nonmoving party, however, must not
16 simply rely on the pleadings and must do more than make "conclusory allegations [in]
17 an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also*
18 *Celotex*, 477 U.S. at 324.

19     "After giving notice and a reasonable time to respond, the court may: (1) grant
20 summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a
21 party; or (3) consider summary judgment on its own after identifying for the parties
22 material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f).

23 **II.    Summary Judgment for Patent Infringement Claims**

24     The standard for summary judgment in a patent case remains the same as in any
25 other. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831,
26 835-36 (Fed. Cir. 1984). "With regard to the parties' cross-motions on infringement,
27 summary judgment is appropriate: 1) where 'only one conclusion as to infringement
28 could be reached by a reasonable jury;' or 2) 'when the patent owner's proof is

1    deficient in meeting an essential part of the legal standard for infringement, because

2    such failure will render all other facts immaterial." *Aqua-Lung Am., Inc. v. Am.*

3    *Underwater Prods.*, 709 F. Supp. 2d 773, 777 (N.D. Cal. 2010) (citing *TechSearch,*

4    *L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002)).

5        "Patent infringement analysis involves two steps: 1) claim construction; and 2)

6    application of the properly construed claims to the accused device or method." *Id.* at

7    777-78 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir.

8    1995) (en banc)).  The first step is a question of law, while infringement is a question

9    of fact.  *Id.* at 778.  As the court completed the first step through the January 10, 2020

10   Claim Construction Order, Dkt. 92, the court will now perform the second step and

11   apply the court's constructions to the accused processes.

12       "To prove infringement, a patent holder must show that the accused device or

13   method meets each claim limitation, either literally or under the doctrine of

14   equivalents." *Aqua-Lung*, 709 F. Supp. 2d at 778.  As Plaintiff does not discuss

15   infringement under the doctrine of equivalents in its moving papers or its Infringement

16   Contentions, the court finds Plaintiff accuses Defendants of literal infringement only.[3]

17   *See* Dkt. 213 (Pl. MSJ Br.); Dkt. 112-4 (Pl. Inf. Cont. re: Beijing Gingko); Dkt. 267-2

18   (Pl. Inf. Cont. re: Kyäni).[4]

19       "To establish literal infringement, all of the elements of the claim, as correctly

20   construed, must be present in the accused system." *TechSearch*, 286 F.3d at 1371.

21   "Any deviation from the claim precludes such a finding.  *Telemac Cellular Corp. v.*

22   *Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).  However, "[a] claim is not

23   defective when it states fewer than all of the steps that may be performed in the

24

25   _____

     [3] Plaintiff also admitted at the hearing that it does not accuse Defendant of infringing

26   the '453 Patent under the doctrine of equivalents.

27   [4] Pursuant to Patent Local Rule 3-1(e), a plaintiff's infringement contentions must

     identify "[w]hether each limitation of each asserted claim is alleged to be literally

28   present or present under the doctrine of equivalents in the Accused Instrumentality."

1    practice of an invention." *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311

2    (Fed. Cir. 2001).  "Infringement arises when all of the steps of a claimed method are

3    performed, whether or not the infringer also performs additional steps." *Id.*

4        As infringement is a question of fact, "[t]he court can resolve the issue on

5    summary judgment only if 'no reasonable jury could find that every limitation recited

6    in the properly construed claim either is or is not found in the accused device.'  That

7    said, the absence from the accused product of one limitation in the claim means that,

8    as a matter of law, there is no literal infringement of that claim." *Aqua-Lung*, 709 F.

9    Supp. 2d at 778 (citing *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford*

10    *Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004)*.*

11         **PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

12        Plaintiff moves for partial summary judgment against all Defendants for literal

13    infringement of Claims 1 and 5 of the '453 Patent under § 271(g).[5]  Dkt. 213 (Pl. MSJ

14    Br., unredacted) at 24-36.  According to Plaintiff, the undisputed evidence in the

15    record establishes BGG China and JXVC manufactured annatto tocotrienol using

16    ARN's patented process and imported the product to BGG America, that BGG

17    America offers the annatto tocotrienol for sale, and that Kyäni purchased and used the

18    annatto tocotrienol product. *Id.* at 29.

19        Defendants oppose Plaintiff's MSJ on grounds including that Plaintiff did not

20    disclose its current infringement theories in its Infringement Contentions.  Dkt. 205

21    (Opp. to Pl. MSJ, redacted) at 6-7 & n. 2, 29 n. 4.  As the parties filed their motions

22    before the court issued its rulings on Defendants' motions to strike portions of the

23    Rockstraw Expert reports, the parties have not briefed the effect of those rulings on

24    the subject motions.  Thus, the court will conduct its own evaluation of Plaintiff's

25    ability to establish that Defendants perform every limitation recited in the '453 Patent,

26

27    _____

28    [5] Plaintiff has not pleaded violation of Claim 5 of the '453 Patent by any Defendant in the FAC (Dkt. 42) or the Complaint in the *Kyäni* action (Case No. 21-2613, Dkt. 1).

based on the infringement theory recited in Plaintiff's Infringement Contentions and the undisputed evidence in the record.

## I.  Plaintiff's Ability to Establish a Prima Facie Case of Infringement Based on the Infringement Theory Stated in Its Infringement Contentions

Plaintiff's MSJ and current theories of infringement rely upon Dr. Rockstraw's expert opinions in his Expert Reports.  Dkt. 213 (Pl. MSJ, unredacted) at 25-36; Dkt. 213-14 (Rockstraw Beijing Gingko Expert Report, unredacted) at 19-56; Dkt. 261-1 (Rockstraw Kyäni Expert Report, unredacted) at 17-43.  Dr. Rockstraw's opinions, however, accuse and are centered on apparatuses, devices, processes, methods, acts, or other instrumentalities that were not identified in ARN's Infringement Contentions and that the court has barred Plaintiff from asserting to establish its prima facie case of infringement.[6]  Dkt. 257 (Order, redacted) at 18; Dkt. 269 (Order, redacted) at 17.  In particular, the court precluded Plaintiff from asserting infringement theories based on Dr. Rockstraw's opinions regarding the following four documents Defendants produced in discovery:

---

[6] As discussed in more detail in the court's orders striking portions of the Rockstraw Expert Reports, Patent Local Rule 3-1 requires a party claiming infringement to identify its infringement theory "as specific[ally] as possible" and to "identify[] specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality…."  *See* Patent Local Rule 3-1(b), (c).  Furthermore, infringement contentions must contain, "[f]or each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." *Id*. Rule 3-1(d).  As Plaintiff itself acknowledged, "[e]xpert reports may not introduce new theories of infringement not previously set forth in a party's infringement contentions."  Dkt. 127 at 17 (quoting *Ilife Techs., Inc. v. Nintendo of Am., Inc.*, Case No. 3:13-cv-04987-M, 2017 U.S. Dist. LEXIS 87769, at *62-63 (N.D. Tex. May 30, 2017)).  Both the Ninth Circuit and Federal Circuit have held that "the exclusion of evidence is often an appropriate sanction for a party's failure to comply with the patent local rules."  *Phigenix, Inc. v. Genentech, Inc*., 783 Fed. App'x 1014, 1020 (Fed. Cir. 2019) (citing *O2 Micro Int'l, Ltd. v. Monolithic Power Sys*., 467 F.3d 1355, 1369 (Fed. Cir. 2006), and *Wong v. Regents of Univ. of Cal*., 410 F.3d 1052, 1060 (9th Cir. 2005)).

a. the "September 20, 2013 Form 1294" flowchart, BGG0018635 (Dkt. 124 ¶¶ 70-72, 76-79);

b. the "February 2015 Form 1294" flowchart, BGG0010166 (Dkt. 124 ¶¶ 80-83);

c. the "September 2015 SIDI" flowchart, BGG0009528 (Dkt. 124 ¶¶ 87-105); and

d. the "April 2014 Manufacturing Process" document, BGG0000009 (Dkt. 124 ¶¶ 106-65).

*See* Dkt. 213-14 (Rockstraw Beijing Gingko Expert Report, unredacted) at 22-56; Dkt. 261-1 (Rockstraw Kyäni Expert Report, unredacted) at 17-39.

In contrast, Plaintiff's Infringement Contentions state only an infringement theory based on two documents that were attached to the FAC, entitled: (1) "Standardized Information on Dietary Ingredients (SIDI) Annatto Tocotrienols 70" (the "March 2018 SIDI document"), Dkt. 42-2; and (2) "TheraPrimE™ Tocotrienols Vitamin E for the New Millennium," Dkt. 42-3.  Plaintiff's Infringement Contentions for Claim 1 of the '453 Patent as to the Beijing Gingko Defendants are reproduced below:

| Claim Limitation | Accused Instrumentality |
|---|---|
| Claim 1:<br><br>"a solvent from a byproduct solution of *Bixa orellana* seed components" | Defendants begin [with] a solvent from a byproduct solution of *Bixa orellana* seed components:<br><br>PLANT PART USED:<br>Oil derived from the seed of *Bixa Orellana*<br><br>(Doc. 42-2, p. 3.) |

| Claim Limitation | Accused Instrumentality |
|---|---|
| | • TheraPrimE™ Annatto Tocotrienols 70<br>  o 70% minimum tocotrienol content<br>  o Comprised of 84% - 92% delta-tocotrienol<br>  o Remainder of 8% - 16% gamma-tocotrienol<br>  o Oil form<br><br>(Doc. 42-3, p. 7.)<br><br>**Flow Chart of Annatto Tocotrienols**<br><br>Raw Material<br><br>↓<br><br>Molecule Distillation<br><br>↓<br><br>Collecting<br><br>↓<br><br>Column Chromatography<br><br>(Doc. 42-2, p. 8.) |
| Claim 1:<br><br>"volatilizing a solvent" | Defendants perform the step of volatilizing a solvent, namely ethanol, from a byproduct solution of *Bixa orellana* seed components:<br><br>Evaporation<br><br>(Doc. 42-2, p. 8) |

14

| Claim Limitation | Accused Instrumentality |
|---|---|
| | KNOWN OR POTENTIAL SOURCES OF IMPURITIES AND/OR CONTAMINANTS (*including solvents*):  Organic solvents: ICH guidelines Q3C / 1).No class 1 solvents are used / 2).No class 2 solvents are used / 3).Class 3 solvents are used: / Ethanol(food grade) with concentration limit of 0.05%(w/w)  <br><br>(Doc. 42-2, p. 3.) <br><br> SOLVENTS USED:    Ethanol <br><br>(Doc. 42-2, p. 4) <br><br> to form thereby said tocotrienol composition. |

Dkt. 112-4 (Pl. Inf. Cont. re: Beijing Gingko) at 4-7.  Plaintiff's Infringement Contentions as to Defendant Kyäni are substantially identical, except that they accuse Kyäni of selling, offering to sell, and using annatto-derived tocotrienol provided by the Beijing Gingko Defendants through the accused process, rather than manufacturing the annatto tocotrienol.  Dkt. 267-2 4 (Pl. Inf. Cont. re: Kyäni) at 5-8.

In his Expert Reports, Dr. Rockstraw appears to identify the "Raw Material" step as the "byproduct solution of *Bixa orellana* seed components" and "distillation" as satisfying the "volatilizing a solvent" limitation.  *See* Dkt. 221-14 (Rockstraw Beijing Gingko Expert Report, redacted) at 16-17, ¶ 46; *id.* at 23, ¶ 72 ("First, BGG discloses use of 'annatto' as a Raw Material"); *id.* at 24, ¶ 72 ("The ethanol solvent from a byproduct solution of *Bixa orellana* seed components is then engaged in a process of volatilization (via "molecular distillation").  Plaintiff's Infringement Contentions, however, appear to identify the results of the "Column Chromatography" step of the March 2018 SIDI document process as the "byproduct solution of *Bixa orellana* seed components" and the "Evaporation" step as satisfying the "volatilizing a solvent" limitation.  Dkt. 112-4 (Pl. Inf. Cont. re: Beijing Gingko) at 5-6.

Dr. Rockstraw does not specifically tie any evidence to the process steps or documents identified in the Infringement Contentions, or explain how any of the evidence in the record demonstrates Defendants' process performs these limitations through the products, apparatuses, processes, or other instrumentalities identified in

the Infringement Contentions.  *See generally* Dkt. 213-14 (Rockstraw Beijing Gingko Expert Report, unredacted).  While Dr. Rockstraw repeatedly states that the documents and processes at the heart of his analysis mirror the illustration in ARN's Infringement Contentions and meet Plaintiff's Infringement Contention theory, Dr. Rockstraw does not specifically address the differences between the process steps set forth in the barred documents and the March 2018 SIDI document.  *See id.* at 22-23, ¶ 71; *id.* at 28, ¶ 80; *id.* at 34-35, ¶¶ 104-05; *id.* at 54-55, ¶¶ 170-73.[7]

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
.  Dr.

---

[7] In discussing the applicable legal standards for patent infringement, Dr. Rockstraw states that he "understand[s] that a patent claim covers anything that is equivalent to the claims – that is, insubstantially different from the claim," under the doctrine of equivalents. Dkt. 213-14 (Rockstraw Beijing Gingko Expert Report, unredacted) at 9, ¶ 26.  However, as Plaintiff did not discuss infringement under the doctrine of equivalents in its Infringement Contentions or moving papers, Plaintiff must demonstrate Defendants' practice all the elements of the accused claims, as correctly construed, with no deviations. *See Telemac*, 247 F.3d at 1330.  Dr. Rockstraw does not explain how the evidence in the record establishes Defendants literally infringed Claim 1 pursuant to the infringement theory stated in Plaintiff's Infringement Contentions.  His expert opinion that the processes described in these additional documents "closely follows ARN's Infringement Contentions" (*e.g.,* Dkt. 213-14 at 35, ¶ 104) is insufficient to establish literal infringement.

Rockstraw's opinions regarding the other documents are similarly deficient.

As Dr. Rockstraw's opinions are based on infringement theories that were not disclosed in Plaintiff's Infringement Contentions and as Plaintiff failed to amend its Infringement Contentions to accuse Defendants of infringement based on these new theories, the court reaffirms its ruling that Plaintiff is barred from using Dr. Rockstraw's expert opinions as to these documents to establish its prima facie case of infringement. *See O2 Micro*, 467 F.3d at 1364, 1366 (recognizing local patent rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction" and that it is appropriate to require the parties to amend their contentions promptly after discovering new information) (quotation marks omitted); *Phigenix*, 783 Fed. App'x at 1019-20 (striking expert infringement opinion is proper where plaintiff failed to timely amend infringement contentions to disclose narrowed infringement theory).  Plaintiff does not separately demonstrate that the evidence in the record shows Defendants practice the process accused in ARN's Infringement Contentions or that the identified process infringes the '453 Patent. *See generally* Dkt. 213 (Pl. MSJ Br., unredacted); Dkt. 244 (Pl. MSJ Reply, unredacted).

1 ███████████████████████████████████████████████████

2 ██████████████████████████ As Plaintiff did not ████████████████

3 ███████████████████████████████████████████, this infringement

4 theory was not disclosed in the Infringement Contentions and cannot establish

5 Plaintiff's prima facie case of infringement.  *See Phigenix*, 783 Fed. App'x at 1020.

6      Accordingly, the court finds Plaintiff fails to prove that the accused process

7 meets every limitation of Claim 1 of the '453 Patent or that Defendants practice the

8 accused process.  *See TechSearch*, 286 F.3d at 1369.  As Claim 5 is dependent on

9 Claim 1, the court likewise finds Plaintiff fails to establish infringement of this claim.

10 The court, therefore, DENIES Plaintiff's MSJ in its entirety.

11      For the sake of completeness, the court will address the parties' arguments

12 regarding the April 2014 Manufacturing Process document, BGG0000009-20 (Dkt.

13 236-3), the 2018 Manufacturing Process document, BG0000021-32 (Dkt. 236-4), and

14 other evidence which the Beijing Gingko Defendants contend detail the actual

15 manufacturing process they used to produce annatto tocotrienol ("Beijing Gingko's

16 process") at all relevant times.[8]  Dkt. 205 (Opp. to Pl. MSJ, redacted) at 4-5.[9]

17 

18 ─────────────

[8] Plaintiff contends BGG China has been infringing the '453 Patent since 2007.  Dkt.
19 213 (Pl. MSJ Br., unredacted) at 13-14, 25.  Plaintiff's Infringement Contentions,
however, state only that "the date of first infringement is at least as early as 2015."
20 Dkt. 112-4 (Pl. Inf. Cont. re: Beijing Gingko) at 3.  Defendants oppose Plaintiff's use
of BGG China's 2007 process records for the same reason stated in their earlier
21 motions to strike.  Dkt. 205 (Opp. to Pl. MSJ, redacted) at 29 n. 4.  Patent Local Rule
3-1(h) requires a party claiming infringement to "[i]dentify the timing of the point of
22 first infringement, the start of claimed damages, and the end of claimed damages[.]"
As Plaintiff did not accuse Defendants of infringing the '453 Patent before 2015 in its
23 Infringement Contentions or amend its Infringement Contentions to identify an earlier
date of first infringement, the court agrees that this evidence is improper and
24 STRIKES Plaintiff's arguments regarding infringement based on BGG China's 2007
25 process records.  *See Phigenix*, 783 Fed. App'x at 1020.
26 

27 [9] The court will not specifically address the parties' arguments regarding (1) the
September 20, 2013 Form 1294 flowchart, BGG0018635, (2) the February 2015 Form
28

## II.   Infringement Based on Defendants' April 2014 and 2018 Manufacturing Process Documents

As stated, the '453 Patent claims in relevant part:

> **1.** A method of forming a tocotrienol composition, comprising the step of volatilizing a solvent from a byproduct solution of *Bixa Orellana* seed components to form thereby said tocotrienol composition.

> **5.** The method of claim **1**, wherein the solvent includes an alcohol.

Dkt. 42-1 at 8:35-38, 8:45-46.

The court will address the parties' arguments regarding whether Beijing Gingko's process satisfies each limitation, as construed by the court. *See TechSearch*, 286 F.3d at 1371.

### A.   Byproduct Solution of *Bixa Orellana* Seed Components

The court construed the term "a byproduct solution of *Bixa orellana* seed components" to mean "a solution derived from *Bixa orellana* seed components having a concentration of annatto colorant significantly reduced from that of *Bixa orellana* seeds themselves and containing a tocotrienol component and a geranylgeraniol component, which solution is obtained as an oily material after removing the bulk of annatto color from the seeds." Dkt. 92 at 7.

Plaintiff contends Beijing Gingko's process meets this limitation because the undisputed evidence in the record demonstrates ███████████████████ ████████████████████████████████████████████████

---

1294 flowchart, or the September 2015 SIDI flowchart, BGG0009528, as Defendants have not asserted these documents as evidence of noninfringement and argue only that they have never produced annatto tocotrienol using the processes described in these documents. *See* Dkt. 205 (Opp. to Pl. MSJ, redacted) at 31-33. As stated in the court's orders striking portions of the Rockstraw Expert Reports, Plaintiff is precluded from using these documents to establish its prima facie case of infringement for failure to disclose these theories of infringement in its Infringement Contentions. Dkt. 265 at 18; Dkt. 270 at 17.

1     ████████████████████████████████████████████████████

2     ██████████████████████████████████████ Plaintiff further

3     demonstrates the raw material is derived from *Bixa orellana* seed components and

4     ████████████████████████████████████████████████. *Id.* (citing

5     Dkt. 196-2 (PSUF, unredacted) ¶¶ 335-36, 340; *see also* Dkt. 236-1 (Def. State.

6     Genuine Disputes of Material Fact, "DSDF," unredacted) ¶¶ 330, 336.  Finally, the

7     evidence in the record establishes that the raw material is an oil that contains a

8     tocotrienol component and a geranylgeraniol component.  Dkt. 196-2 (PSUF,

9     unredacted) ¶¶ 335, 344; Dkt. 236-1 (DSDF, unredacted) ¶¶ 330, 346.  For purposes

10    of the subject motion for summary judgment, this evidence is sufficient to

11    demonstrate that the raw material meets the court's construction of this limitation.

12         Defendants contend the raw material does not meet the court's construction of

13    the term because ████████████████████████████████████████████

14    ████████████████████████████████████████████████████████

15    ████████████████████████████████████████████████████████

16    ████████████████████████████████████████████████████████

17    ████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████

20    ████████████████████████████████████

21    ████████████████████████████████████████████████

22    ████████████████████████████████████████████████████████

23    ████████████████████████████████████████████████████████

24    ████████████████████████████████████████████████████

25    ██████████████████████████████████████████████

26    ████████████████████████████████████████████████████

27    ████████████████████████████████████████████████████████

28

1       ████████████████████████  The court, therefore, will not deny

2   Plaintiff's MSJ on this basis.

3       **B.**    **Volatilizing a Solvent**

4       The court construed the term "volatilizing a solvent" to mean "converting a

5   solvent to a gas." Dkt. 92 at 13. Plaintiff argues this limitation is met in two separate

6   stages of Beijing Gingko's process.

7       **1.**    **The** ████████████ **Stages**

8 ████████████████████████████████

9 ██████████████████████████████

10 ████████████████████████████████

11 ██████████████████████████████

12 ███████████████████████████████

13 ████████████████████████████████

14 █████████████████████████████

15 █████████████

16–24 ████████████████████████████

25 █████████████████████████████

26 ██████████████████████████████

27 ███████████████████████████

28 ███████████████████████████

1
2
3
4
5      Claim 1 discloses "[a] method of forming a tocotrienol composition, comprising
6  the step of volatizing a solvent … to form thereby said tocotrienol composition."  Dkt.
7  42-1 at 8:35-38.  At its heart, the claimed invention is a method to recover tocotrienols
8  by separating out the solvent present in the source byproduct solution by
9  volatilization.  *See id.* at 2:4-6, 2:8-20, 2:41-58.
10
11
12
13
14
15
16
17
18
19
20
21
22
23[10]
24 _____
25[10]
26
27
28

1    Similarly, incidental volatilization of solvent in the byproduct solution does not

2    infringe the '453 Patent, as that is not part of the claimed method of forming a

3    tocotrienol composition.  In other words, volatilizing the solvent must be the method

4    by which the tocotrienol composition is formed, and a process does not infringe

5    the '453 Patent if incidental volatilization of the solvent occurs while the byproduct

6    solution is otherwise being processed.  *See generally* Dkt. 42-1.  If incidental

7    volatilization were enough to constitute infringement, that would mean that the mere

8    possession of a byproduct solution of *Bixa orellana* seed components would

9    inherently infringe the '453 Patent, as basic science teaches that some volatilization of

10   the solvent will occur naturally as a portion of the solvent evaporates into the

11   surrounding air or vacuum—even if the byproduct solution were stored in a closed

12   container.

13   As explained in Judge Staton's Claim Construction Order, the process of

14   volatilizing a solvent as described throughout the '453 Patent is aimed at a whole,

15   rather than a portion of the solvent contained in the byproduct solution.  Dkt. 92 at 7.

16   Here, as during claim construction, Plaintiff's arguments regarding the term

17   "volatilizing" attempt to find infringement based on the result—i.e., the conversion of

18   any portion of solvent from a liquid to a gas (no matter how incidental or whether

19   volatilization occurs in an additional process step that performs the inverse of the

20   claimed invention)—rather than the "volatilizing" process as it is disclosed in the

21   patent.  *See id*. at 6.  Nothing in the specification supports Plaintiff's contention that

1 incidental volatilization of solvent ███████████████ practices the

2 claimed invention.  *See generally* Dkt. 42-1.



1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████ [11] The court,

3 therefore, agrees with Defendants that the removal of solvent from the byproduct

4 solution by volatilization must be the aim or purpose of a process, step, or other

5 instrumentality for infringement of the '453 Patent to exist—rather than an incidental

6 result that occurs during additional steps in Defendants' process.  *See* Dkt. 205 (Opp.

7 to Pl. MSJ, redacted) at 18; *see also* Dkt. 92 (Claim Construction Order) at 6.

8 ██████████████████████████████████████████████

9 ████████████████████████████████████████████

10 ██████████████████████████████████████

11 ████████████████████████████████████████████

12 ██████████████████████████████████████████████

13 ██████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████  Accordingly, the evidence in

16 the record establishes that these stages of Beijing Gingko's process do not form a

17 tocotrienol composition from the byproduct solution of *Bixa orellana* seed

18 components through the removal of solvent by volatilization, as taught by Claim 1 of

19 the '453 Patent, but that any volatilization that may occur is incidental to an

20 intermediary step in Beijing Gingko's process.

21      In contrast, Plaintiff does not present any credible evidence to demonstrate that

22 these stages of Beijing Gingko's process are aimed at removing solvent from the

23 byproduct solution by volatilization.  ████████████████████████████████

24

25 ─────────────────

26 [11] The court also notes that Plaintiff's Infringement Contentions did not identify ██ ████████████████████████████████████████████████ as

27 comprising the "tocotrienol composition" formed by volatilizing a solvent.  *See* Dkt. 112-4 at 7.  This deficiency constitutes an additional reason to find that Plaintiff

28 cannot establish its prima facie case.  *See Phigenix*, 783 Fed. App'x at 1020.

1 ████████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 █████████████████████████████████████████████████

4 ██████████████████████████████████████████████████

5 █████████████████████████████████████████████████

6 ████████████████████████████████

7 ███████████████████████████████████████████

8 ███████████████████████████████████████████

9 █████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ████████████████████████████████████████████

12 ██████████████████████████████████████████████████

13 █████████████████████████████████████████████

14 █████████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ██████████████████████████████████████████████████

17 ███████████████████████████████████████████████████

18 ███████████████████ ████████████████████████████

19 ██████████████████████████████████████████████████

20 █████████████████████████████████████████████████

21 ███████████████████

22      Accordingly, Plaintiff fails to demonstrate a genuine dispute exists that the

23 █████████████ stages of Beijing Gingko's process infringe the '453 Patent.

24

25

─────────────────

26 [12] ████

27 █████████████████████████████████████████████████

28 █████████████████████████████████████

2.     The ███████████████ **Stage** █████████





The relevant question, however, is not whether the solution at a specific step in Beijing Gingko's process meets the court's construction of a byproduct solution of *Bixa orellana* seed components, but whether Beijing Gingko's process, a whole, performs all the steps of the claimed method on the byproduct solution. *See Smith*, 276 F.3d at 1311. Based on the evidence in the record, the court finds Beijing Ginkgo's process does not.





---

[13] The '453 Patent recognizes that other solvents including water, hexane, and acetone
may be used to separate the colorant from the *Bixa orellana* seed components to form
the byproduct solution. *See* Dkt. 42-1 at 8:39-44.

1  ████████████████████████████████████████████████████████

2  ██████████████████████████████████████████

3       The court, therefore, finds that the ████████████████ step of the Beijing

4  Gingko Defendants' 2014 and 2018 Production Process does not literally infringe

5  the '453 Patent.

6       **C.    Conclusion Regarding Infringement Based on Beijing Gingko's**

7            **Production Process**

8       In sum, based on the evidence in the record, the court finds that no reasonable

9  jury could conclude that Defendants literally infringe Claim 1 of the '453 Patent, even

10 if the court were to consider the parties' arguments and evidence regarding Beijing

11 Gingko's 2014 and 2018 Production Process for creating annatto tocotrienol.  As

12 Claims 5, 6, 7, and 10 are dependent on Claim 1, Plaintiff fails to demonstrate a triable

13 issue exists regarding infringement of these claims, and Defendants are entitled to

14 summary judgment of noninfringement as a matter of law.  *See Aqua-Lung*, 709 F.

15 Supp. 2d at 778.  Having held Beijing Gingko's process does not literally infringe

16 Claim 1 on these grounds, the court need not address the parties' remaining arguments

17 regarding this process.

18 / / /

19 / / /

20 / / /

31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the aforementioned reasons, the court DENIES Plaintiff's Motion for
Partial Summary Judgment against Defendants for Infringement of the Patent-in-Suit
(Dkt. 172) in its entirety.  As the undisputed facts and controlling principles of law
clearly establish that the Beijing Gingko Defendants are entitled to summary judgment
on Plaintiff's claims, the court GRANTS summary judgment in Defendants' favor.
*See* Fed. R. Civ. P. 56(f).  Defendants' Motion for Summary Judgment of No Willful
Infringement and No Induced Infringement (Dkts. 176, 192) is MOOT.

IT IS SO ORDERED.

Dated: January 3, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge

32